BLAKE J. LINDEMANN (SBN 255747)
DONNA R. DISHBAK (SBN 259311)
LINDEMANN LAW FIRM
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile:  (310) 300-0267
E-mail: blake@lawbl.com

*Attorneys for Plaintiffs and the
Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ALVARO NAVARRO, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> SKI DATA, INC., a Delaware Corporation, *et al*., <br><br> Defendants. | Case No.: 2:20-cv-07370-SVW-SK <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> **(1) VIOLATION OF CAL. CIV. CODE § 1798;** <br> **(2) VIOLATION OF CONSUMER LEGAL REMEDIES ACT (CLRA);** <br> **(3) VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (UCL);** <br> **(4) NEGLIGENCE AND NEGLIGENCE *PER SE*;** <br> **(5) VIOLATION OF RIGHT OF PRIVACY PURSUANT TO CALIFORNIA CONSTITUTION** <br><br> [Demand for Jury Trial] |

Plaintiffs Alvaro Navarro, Areliz Navarro, Jina Howell, Sevindzh Gasanova, Cristian Rodriguez, and Leilani Ross (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, bring their class action complaint (the "Complaint") against Ski Data, Inc., Stefan Schafner, Westfield, LLC, Westfield Property Management, LLC, Sentry Control Systems, LLC, Park Assist, LLC, Federal Realty Investment Trust, Brookfield Properties Retail, Inc. dba Brookfield Properties Retail Group, Brookfield Property Reit, Inc., Glendale I Mall Associates, LP, and GGP-Glendale, LLC, Taubman Centers, Inc., Taubman Realty Group Limited Partnership, Taubman Company, LLC, Park Assist, LLC, Federal Realty Investment Trust, Caruso Affiliated Holdings, LLC, does 1-100 (collectively the "Defendants"), and allege as follows based on investigation of counsel and information and belief:

## NATURE OF THE CASE

1. This class action seeks redress for Defendants' violations of Plaintiffs' and class members' rights to privacy and protection of personally identifiable information under California Civ. Code § 1798 ("§ 1798") and other related consumer protection statutes and constitutional provisions. Without authorization, the Defendants capture the license plate images of Plaintiffs and the class members as they enter, and exit the Century City Westfield Mall, the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, Beverly Center Mall, San Diego Westfield (Mission Valley and UTC), in direct violation of § 1798 and further, provide that data to vendors, companies, and other unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, data harvesting, and other unauthorized purposes entitling Plaintiffs to damages and injunctive relief. The information is further provided by Defendants to third parties with whom the Defendants are in privity and who do not have proper data collection, sharing, and transmission policies that are compliant with consumers' privacy rights, and in fact are directly violative of

Plaintiffs' and the Class' privacy rights. Automated license plate readers are a sophisticated way of tracking drivers' locations, and when their data is aggregated over time they can paint detailed pictures of people's lives.

2. In light of the COVID-19 epidemic, it is essential that the unauthorized tracking of consumers' locations, data modeling, data harvesting, unauthorized credit inquiries, travel patterns, spending habits, political interests, unauthorized targeted marketing, and careless misuse of information, be brought to an end now, and more comprehensively when society resumes normal functionality. Even with COVID-19, the unauthorized capturing of ALPR license plate images can ultimately be used to obtain one's home address from driver registration records, thereby violating the privacy rights and personal safety of consumers seeking to remain at home during the COVID-19 epidemic, and otherwise impede or implicate personal liberties during times of crisis and stability.

## **THE PARTIES**

3. The case involves the collection, storage, transmission, processing, retention, and deletion policies of consumer data obtain through automatic number plate recognition ("ALPR" or "ALPR data") devices at the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, Beverly Center Mall, San Diego Westfield (Mission Valley and UTC) (collectively, the "Malls").

4. Plaintiff Alvaro Navarro is an individual residing in the County of Los Angeles. Several times between April 16, 2019 and April 16, 2020, Mr. Navarro entered the parking facilities for Glendale Galleria Mall at 100 W. Broadway Suite 100, Glendale, CA 91210 ("Glendale Galleria Mall") and obtained a parking ticket. Unknown to him at all times, upon parking at the facility and upon leaving the facility, a license plate image was taken of Mr. Navarro's vehicle that was then transferred into a database, and could be searched by any person from several kiosks, or even a web based application that could be

downloaded on a smart phone or computer, and accessed by any person in the world. In other words, the tracking service could be used by any person for any purpose. Mr. Navarro did not provide authorization to any of the Defendants at any time. As an employee of the United Postal Service, Mr. Navarro was the victim of an attempted murder, and was harmed upon information, by the use of his data. Mr. Navarro was harmed in that he faced future identity theft by virtue of the widespread unauthorized collection and sharing of his ALPR data, there was a loss of value of his ALPR data, the ALPR data has already been misused and collected without authorization, Mr. Navarro has incurred out of pocket mitigation expenses concerning collection at the Glendale Galleria Mall (and other malls) including the need to credit monitor and obtain credit reports, and he lost the benefit of the bargain by virtue of having his ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target him without his consent.

5. Plaintiff Areliz Navarro is an individual residing in the County of Los Angeles. Several times between April 16, 2019 and April 16, 2020, Ms. Navarro entered the parking facilities for Beverly Center Mall at 8500 Beverly Blvd., Los Angeles, CA 90048 ("Beverly Center Mall") and obtained a parking ticket. When Ms. Navarro approached the exit point of the mall parking, she did not have to place the redeemed ticket in the machine, and the parking arm automatically went up. Ms. Navarro did not know that her license plate image was being photographed upon entry and exit. Ms. Navarro has been advertised and marketed to without her authorization, and has had her personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. Ms. Navarro did not provide authorization to any of the Defendants at any time. Ms. Navarro was harmed in that she faced future identity theft by virtue of the widespread unauthorized

collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Navarro has incurred out of pocket mitigation expenses concerning collection at the Beverly Center Mall (and other malls) including the need to credit monitor and obtain credit reports, and she lost the benefit of the bargain by virtue of having her ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without consent.

6. Plaintiff Jina Howell is an individual residing in the County of Los Angeles. Several times between April 16, 2019 and April 16, 2020, Ms. Howell entered the parking facilities for Westfield Century City Mall at 1025 Santa Monica Blvd., Los Angeles CA ("Century City Mall") and obtained a parking invoice. When Ms. Howell approached the exit point of the mall parking, she did not have to place the redeemed ticket in the machine, and the parking arm automatically went up. Ms. Howell has been advertised and marketed to without her authorization, and has had had her personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. When Ms. Howell entered the facilities, the license plate number of her vehicle is printed on the ticket in large bold, upper case letters. Since parking tickets are often not cared for, unsuspecting drivers are leaving their receipt tickets where anybody could see them, and could do further damage if such ticket were to arrive in the hands of the wrong person. Ms. Howell did not provide authorization to any of the Defendants at any time. Ms. Howell was harmed in that she faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Howell has incurred out of pocket mitigation expenses concerning collection at the Century City Mall (and other malls) including the need

to credit monitor and obtain credit reports, and she lost the benefit of the bargain by virtue of having her ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without consent.

7. Plaintiff Sevindzh Gasanova is an individual residing in the County of Los Angeles at the time of removal, but who has since moved to Orlando, Florida. Several times between April 16, 2019 and April 16, 2020, Ms. Gasanova entered the parking facilities for Westfield Century City Mall at 1025 Santa Monica Blvd., Los Angeles CA ("Century City Mall") and obtained a parking invoice. When Ms. Gasanova approached the exit point of the mall parking, she did not have to place the redeemed ticket in the machine, and the parking arm automatically went up. Ms. Gasanova has been advertised and marketed to without her authorization, and had her personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. Ms. Gasanova did not provide authorization to any of the Defendants at any time. Ms. Gasanova was harmed in that she faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Navarro has incurred out of pocket mitigation expenses concerning collection at the Century City Mall (and other malls) including the need to credit monitor and obtain credit reports, and she lost the benefit of the bargain by virtue of having her ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without consent.

8. Several times between April 16, 2019 and April 16, 2020, Ms. Gasanova also entered the parking facilities at the Santa Monica Third Street Promenade Mall located at 1351 3rd Street Promenade, Santa Monica, CA 90401

("Third Street Promenade Mall"). Upon entering the facility, a license plate image was taken of Ms. Gasanova's vehicle that was then transferred into a database, and could be searched by any person from several kiosks, or even an application that could be downloaded on a smart phone or computer, and accessed by any person in the world. In other words, the tracking service could be used by any person for any purpose.

9. Several times between April 16, 2019 and April 16, 2020, Cristian Rodriguez entered the parking facilities at Fig at 7th located at 735 S. Figueroa St., Los Angeles ("Fig at 7th Mall"). Upon entering and exiting the facility, a license plate image was taken of Mr. Rodriguez's vehicle that was then transferred into a database, and could be searched by any person from several kiosks. Mr. Rodriguez has been advertised and marketed to without his authorization, and has had his personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. Mr. Rodriguez did not provide authorization to any of the Defendants at any time. Mr. Rodriguez was harmed in that he faced future identity theft by virtue of the widespread unauthorized collection and sharing of his ALPR data, there was a loss of value of his ALPR data, the ALPR data has already been misused and collected without authorization, Mr. Navarro has incurred out of pocket mitigation expenses concerning collection at the Fig at 7th Mall (and other malls including the Grove at Farmer's Market) including the need to credit monitor and obtain credit reports, and he lost the benefit of the bargain by virtue of having his ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target him without his consent.

10. Several times between April 16, 2019 and April 16, 2020, Cristian Rodriguez entered the parking facilities at the Grove at Farmer's Market, located at 6333 W 3rd St., Los Angeles, CA 90036 ("the Grove at Farmer's Market").

Upon entering and exiting the facility, a license plate image was taken of Mr. Rodriguez's vehicle that was then transferred into a database, and could be searched by any person from several kiosks. Mr. Rodriguez has been advertised and marketed to without his authorization, and has had his personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. The ALPR images taken of Plaintiffs' vehicles have been sent to federal and state law enforcement authorities without a search warrant. As late as June 8, 2019, the ALPR policy was not available on the Grove Mall's internet homepage.

11.    Several times between April 16, 2019 and April 16, 2020, Leilani Ross entered the parking facilities at Westfield UTC located at 445 La Jolla Village Drive, Suite E-2, San Diego, CA 92122 and WestField Mission Valley located at 1640 Camino del Rio N., San Diego CA. Upon entering and exiting the facilities, a license plate image was taken of Ms. Ross' vehicle that was then transferred into a database, and could be searched by any person from several kiosks. Ms. Ross has been advertised and marketed to without her authorization, and has had her personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. Ms. Ross was harmed in that she faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Navarro has incurred out of pocket mitigation expenses concerning collection at the Westfield UTC (and other malls) including the need to credit monitor and obtain credit reports, and she lost the benefit of the bargain by virtue of having her ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without consent.

12.     The ALPR images/ALPR data taken of Plaintiffs' vehicles have been transmitted to state federal and state law enforcement authorities without a search warrant, and other entities that sell ALPR images/ALPR data.

13.     Defendant Ski Data, Inc. ("Ski Data") is a privately organized Delaware Corporation authorized to conduct business in California, and upon information whose principal place of business is in California. Since 2017, Ski Data has been operator of certain functions at the Century City Westfield Mall. Specifically, Ski Data owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers, and owned and/or operated computer equipment that interfaces with the camera. Aside from being directly liable under applicable statutes below, Ski Data is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Ski Data is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

14.     Defendants Westfield Property Management, LLC, a Delaware Limited Liability Company and Westfield, LLC, a Delaware Limited Liability Company dba as Westfield Corporation, Westfield Retail Solutions, Inc., a Delaware Corporation (collectively, "Westfield") are each privately organized Delaware Limited Liability Companies authorized to conduct business in California except retail solutions, which is surrendered. Since 2017, Westfield owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers in Century City and in Westfield UTC and Westfield Mission Valley, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment. Aside from being directly liable under the applicable statutes below, Westfield is secondarily liable

based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Westfield is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

15.     Defendant Stefan Schafner is a natural person who resides and is a citizen of California. Since 2017, Schafter owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment. Aside from being directly liable under the applicable statutes below, Schafner is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Schafner is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.  https://www.youtube.com/watch?v=7PRSK9BMZlg.\

16.     Defendant Sentry Control Systems, LLC is a Delaware Limited Liability Company dba as Westfield Corporation (collectively, "Sentry") is a privately organized Delaware Limited Liability Company authorized to conduct business in California, fdba as Sentry Control Systems, Inc. a California Corporation.  Since 2017, Sentry owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment. Aside from being directly liable under the applicable statutes below, Sentry is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior,

and alter ego. Sentry is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

17.    Defendant Park Assist, LLC is a Delaware Limited Liability Company (collectively, "Park Assist") is a privately organized Delaware Limited Liability Company authorized to conduct business in California. Since on or about 2017, Park Assist owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers at the Third Street Promenade Mall, Galleria Mall, and owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment. Aside from being directly liable under the applicable statutes below, Park Assist is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Park Assist is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

18.    Defendant Federal Realty Investment Trust is a privately organized California Trust authorized to conduct business in California. Since at least 2017, Federal owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers at the Third Street Promenade Mall, owned and/or operated the physical machines and equipment at the same facility, owned and/or operated the software at the same facility, and owned and/or operated computer equipment that interfaces with the camera equipment, and upon information, owns the Santa Monica Third Street Promenade. Aside from being directly liable under the applicable statutes below, Federal is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Federal is a knowing and

1  willful participant in a joint action, along with the other Defendants, in the various
2  acts and omissions set forth in this complaint, which caused injury to Plaintiffs and
3  the Class Members.

4      19.    Defendants' Brookfield Properties Retail, Inc. dba Brookfield
5  Properties Retail Group, Brookfield Property Reit, Inc., Glendale I Mall
6  Associates, LP (which include California partners upon information and belief),
7  and GGP-Glendale, LLC (collectively, "Brookfield") are each privately organized
8  Delaware Limited Liability Companies or Delaware Limited Partnerships
9  authorized to conduct business in California. For purposes of jurisdiction, because
10  the identity of Glendale I Mall Associates, Limited Partnership includes partners
11  who are citizens of California, the entity is considered a California entity for
12  purposes of jurisdiction. Since 2017, Brookfield owned and/or operated camera
13  equipment that has photographed Plaintiffs and Class Members' license plate
14  numbers at the Galleria Mall and 7th and Fig, owned and/or operated the physical
15  machines and equipment, owned and/or operated the software, and owned and/or
16  operated computer equipment that interfaces with the camera equipment. Aside
17  from being directly liable under the applicable statutes below, Brookfield is
18  secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing
19  the means" for another's violations, respondeat superior, and alter ego. Brookfield
20  is a knowing and willful participant in a joint action, along with the other
21  Defendants, in the various acts and omissions set forth in this complaint, which
22  caused injury to Plaintiffs and the Class Members. The purported display of the
23  policy is not conspicuous either in person or on Brookfield's webpage, as required.

24      20.    Defendants' Caruso Affiliated Holdings, LLC and its subsidiaries
25  (collectively, "Caruso Entities") are each privately organized California Limited
26  Liability Companies whose principal place of business is in California. Since
27  2017, Caruso owned and/or operated camera equipment that has photographed
28  Plaintiffs and Class Members' license plate numbers at the Grove at Farmer's

Market, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment. Aside from being directly liable under the applicable statutes below, Brookfield is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Brookfield is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

21.    Plaintiffs are unaware of the true identities and capacities of fictitiously named defendants designated as Does 1-100, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, every Doe defendant is in some manner responsible for the acts and conduct of the other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred by Plaintiffs. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all the named defendants and those unknown parties sued under fictitious names.

22.    Plaintiffs are informed and believe and thereon allege that, at all times relevant hereto, all the defendants together were members of a single unincorporated association, with each member exercising control over the operations of the association. Plaintiffs are informed and believe and thereon allege that, at all times relevant hereto, each of the defendants was the agent, associate, employee and or representative of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the authorized course and scope of this agency, association and employment with the full knowledge and consent of the remaining defendants. Plaintiffs are further informed and believe and thereon allege that each and all the acts herein alleged as to each defendant

was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

23. Plaintiffs are informed and believe and thereon allege that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this complaint. The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiffs of their constitutionally protected rights to property and privacy, and of their rights under other laws as set forth herein. Each of the defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiffs by the defendants as a consequence.

## JURISDICTION AND VENUE

24. The Court has personal jurisdiction over Defendants because they are residents and/or doing business in the State of California and/or their principal places of business are in California and/or they own property at issue in California.

25. The Century City Westfield Mall, the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, and Beverly Center Mall are all located in Los Angeles County, California. Westfield (UTC and Mission Valley) is located in San Diego County. The Defendants have employees working at each facility who are located in Los Angeles County. Any complaints are directed to be addressed to employees of the above-defendants in Los Angeles County.

26. Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction in Los Angeles County.

27. This is a local controversy in that the unauthorized capturing and dissemination of class members' information predominately affects local residents

in the County of Los Angeles specifically, and generally in the State of California. The actual capturing and transmission of the data is primarily performed locally in Los Angeles County, and exclusively on a local basis in Southern California.

28. Specifically, more than two-thirds of the proposed class members are citizens of California (and if fact 100% percent of the proposed class members are citizens of California), the principal injuries resulting from the alleged conduct were incurred in California, no class action asserting similar factual allegations has been filed against any of the defendants in the preceding three years, and at least one defendant is a forum-state citizen from whom significant relief is sought and whose alleged conduct is a significant basis of the claims.[1]

## PRESENTMENT

29. Plaintiffs have complied with all administrative and substantive requirements for filing suit under the CLRA including by serving a letter via certified mail on each of the Defendants pursuant to the California Civil Code on April 17, 2020.

## FACTUAL BACKGROUND

30. Shopping malls and retailers, slow to catch up to the needs of consumers to be given free parking as an incentive to forgo making purchasing decisions from home, charge parking fees in some instances, even if consumers make significant purchases in shopping malls.

31. The Westfield Century City shopping center has 20 million customers annually.

32. In 2017, the defendants operating Westfield Century City Mall embarked on a project called "smart parking," which had not been utilized by any mall in the United States to date.

---

[1] Another class action was filed after this case was filed. The Court has entered an Order denying Plaintiffs' motion to Remand.

33.     To carry out smart parking, Ski Data, Westfield, and other persons, installed cameras that photograph and capture the license plate number of all drivers at the entrance and exit at Westfield Century City Mall, and in some instances, the software automatically debits the amount to be paid when leaving and sends the invoice.

FIGURE NO. 1 (license plate redacted)



34.     Plaintiffs and the Class Members do not provide authorization to have their license plates photographed when they enter Westfield Mall Century City, nor is any meaningful notice even given.  *See* Figure No. 1.

35.     Plaintiffs and the Class Members do not provide authorization to have their license plates photographed when they exit Westfield Mall Century City.  *See* Figure No. 2.

36.     The Defendants connect the various cameras located at the entry and exit to their back-office computer systems.  *See* Figure No. 3.

FIGURE NO. 2



FIGURE NO. 3



37. From the computer systems, Class Members' information is prepared, and sent to retailers and other unauthorized persons for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes.

38. From the moment one enters, the driver receives a ticket with the license plate of their vehicle printed in bold. Such tickets can be found at kiosks or floating around in the public with drivers' license plate numbers unknowingly being disseminated in this additional manner.

39. The Defendants proclaim through Mr. Louis Schillace, employee of Westfield, that smart parking "enables business operators to use other tools to improve their marketing activities…". *See* https://www.parking-net.com/parking-showcases/skidata-ag/skidata-make-parking-smarter-at-westfield-century-city.

40. Further, Mr. Louis Schillace claims that smart parking enables visitors to be part of "targeted groups" and "targeted geo marketing."

41. Those operating the Beverly Center Mall and the Galleria Mall installed M4 camera-based system.

42. In addition to the M4 camera-based system, the Defendants utilize the full Software Suite offered by Defendant Park Assist, that includes Park Finder™, SelectRate, Surveillance, Alerts, Insights, and Reserve.

43. To carry out smart parking at the Galleria, cameras were installed that photograph and capture the license plate number of all drivers at the entrance and exit, and in some instances, the software automatically debits the amount to be paid when leaving and sends the invoice.

44. On or about February of 2020, the California State Auditor issued a report that state law enforcement agencies are using license plate readers without legally required oversight procedures, which could leave drivers vulnerable to a host of privacy concerns including data breaches and even blackmail. See https://www.10news.com/news/audit-police-license-plate-readers-at-risk-for-data-breaches-misuse. (ABC News, February 13, 2020).

FIGURE NO. 4 (redacted)



FIRST AMENDED CLASS ACTION COMPLAINT

1    45.    Some of Defendants' camera systems photograph cars at each parking

2    stall such as the Glendale Galleria Mall, and Beverly Center Mall.

3    46.    Plaintiffs and the Class Members do not provide authorization to have

4    their license plates photographed when they enter the Malls, nor when they enter

5    the applicable parking stall, nor when the exit the Malls.

6    47.    Plaintiffs and the Class Members do not provide authorization to have

7    their license plates photographed when they exit the Malls.

8    48.    As for the Defendants that utilized technology of stall based

9    photography, the Defendants connect the various cameras located at each stall

10   and/or the entry and exit point to their computer systems.  (*See* Figure No. 5 and

11   6).

12   FIGURE NO. 5



FIRST AMENDED CLASS ACTION COMPLAINT

FIGURE NO. 6



49. The particularly shocking and alarming aspect of the Park Assist application featured at Third Street Promenade (at some times during the class period), and the Glendale Galleria is that any time of day, any person in the public from any location can determine whether somebody is parking at the Glendale Galleria, the Third Street Promenade and the following locations at the push of a button: Portland, Oregon airport; Nashville airport; Austin, Texas airport; Fort Lauderdale airport.

50. Further posing problems, the visual images do not just pick up license plates, but images of vehicles, minors, adults, and other personal property. The possible harms are endless.

51. Figure Nos. 7 through 10 depict vehicles and locations of vehicles at the Glendale Galleria, which is available to any person utilizing the world wide web or a smart phone.

FIGURE NO. 7 (redacted-continued on next page)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17 FIGURE NO. 8 (randomly chosen license plate)

18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED CLASS ACTION COMPLAINT

1    FIGURE NO. 9



Your car location

Glendale Galleria
Garage A Level 2

21

1    FIGURE NO. 10

52.     From the computer systems, Class Members' information is processed, prepared, and sent to Defendants, their retailers and other unauthorized third persons.

53.     Defendant Park Assist claims that it and its affiliates "…provide parking operators with tools to improve customer satisfaction, create new revenue opportunities, realize greater operational control, capture parker analytics and expand CCTV capabilities." https://www.parking-net.com/parking-industry/park-assist.

54.     Further, upon information, this parking enables visitors to be part of "targeted groups" and "targeted geo marketing" and law enforcement agencies both state, local and federal, without their knowledge.

55.     From 2017 to the present, each of the named Defendants are responsible for providing some or all the following functions to persons visiting the Century City Westfield Mall, the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, Beverly Center Mall, and Westfield (UTC and Mission Valley):

        a) Customer service (staff to handle collection and use of tickets, respond to calls, complaints, payment processing);

        b) Account maintenance;

        c) Mail room;

        d) Payment processing;

        e) Reports;

        f) Special projects;

        g) SOP's configuration;

        h) System integration and maintenance;

        i) Program Management (a) through (h), are collectively referred to as the "Functions.")

56.    From April 17, 2016 to present date, Defendants actually provided information of Class Members to Unauthorized Parties.

## CLASS ACTION ALLEGATIONS

57.    Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to pursuant to Fed. R. Civ. Proc. 23(a), 23(b), 23(c)(4), and 23(c)(5).

58.    The proposed class consists of the following:

• All California residents who had their license plate photographed by any of the Defendants between April 17, 2016 to present date;

• All California residents who had their license plate, or any of their data, sent by the Defendants to any of the Defendants' retailers from April 17, 2016 to present date;

• All California residents who had their license plate, or any of their data, sent by the Defendants to any other person from April 17, 2016 to present date;

59.    This action is properly brought as a class action for the following reasons:

    a)  The proposed class is so numerous that the joinder of all Class Members is impracticable. While Plaintiffs do not know the exact number and identity of all Class Members, Plaintiffs are informed and believe that there are hundreds of thousands (if not millions) of Class Members. The precise number of Class Members can be ascertained through discovery, which will include Defendants' business records;

    b)  The disposition of Plaintiffs' and the Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

c) The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

d) There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

1) Whether Defendants captured images of Plaintiffs and Class Members without authorization;

2) Whether Defendants transmitted or sold personally identifiable information as a practice, policy, or pattern including, but not limited to, as part and parcel of their functions for individuals parking at the mall;

3) Whether Defendants violated California's Unfair Competition Law, Business & Professions Code §§17200, *et seq*. ("UCL");

4) Whether Defendants violated California's Consumer Legal Remedies Act, Civil Code §§1750, *et seq*. ("CLRA");

5) Whether Defendants have received funds from Plaintiffs and Class Members that they unjustly received;

6) Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

7) Whether Plaintiffs and Class Members are entitled to an award of punitive damages, attorneys' fees, and expenses against Defendants; and

8) Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to equitable relief, and if so, the nature of such relief.

e) Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

f) Plaintiffs will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed Class Members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel;

g) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

1) Given the size of Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

2) This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, and economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

3) Absent class certification of Plaintiffs' claims, Class Members will continue to suffer damages, and Defendants'

violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of its wrongful conduct; and

4) Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

60. Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

61. Plaintiffs seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

**CAUSES OF ACTION**

**CAUSE OF ACTION I**

**VIOLATION OF CALIFORNIA CIVIL CODE § 1798.90.54**

(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants, Including Does 1-100)

62. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

63. Plaintiff Alvaro Navarro is a natural person.

64. Plaintiff Areliz Navarro is a natural person.

65. Plaintiff Howell is a natural person.

66. Plaintiff Gasanova is a natural person.

67. Plaintiff Rodriguez is a natural person.

68. Plaintiff Ross is a natural person.

69. Defendant Westfield Property Management, LLC is a "person" pursuant to §1798.90.5(e) because it is a "corporation."

70. Defendant SkiData, Inc. is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

71. Defendant Sentry is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

72. Stefan Schafner is a "natural person" pursuant to §1798.90.5(e) because he is an individual who lists an address in Thousand Oaks, California.

73. Westfield, LLC is a "person" pursuant to §1798.90.5(e) because it is a "corporation."

74. Defendant Park Assist is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

75. Defendant Federal is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

76. Defendant Brookfield is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

77. Defendant Taubman is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

78. Defendant Caruso is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

79. Retailers of the Defendants and other unauthorized persons given access to computer systems or who have access to the data and/or are sent the data have "access" and/or "use" an ALPR system pursuant to §1798.90.5(a), and not "law enforcement," "transportation agencies," or those who received data "pursuant to Section 2721 of Title 18." §1798.90.5(a)(1), (a)(2), and (a)(3).

80. The Defendants each collect "data or information" from the use of an ALPR system pursuant to §1798.90.5(b).

81. Defendants are each "ALPR operators" because they operate an ALPR system, and are not "transportation agencies." §1798.90.5(c). Specifically, Westfield, Westfield Property Management, SkiData, Sentry, Schafner, Westfield LLC, Park Assist, Federal Brookfield, Taubman, and Caruso each maintain an integrated ALPR system and/or are the principals for others who maintain an

integrated ALPR system. SkiData is an ALPR operator at the Beverly Center Mall, the Century City Mall, and other areas. Park Assist is an ALPR operator at the Glendale Galleria. Park Assist also was an ALPR operator at the 3rd Street Promenade.

82. Each of the Defendants either utilize an ALPR system within the meaning of §1798.90.5(d) or own a property that utilizes an ALPR system because each defendant and/or their agents, have a "searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data."

*Violating Act No. 1*:

83. Defendants as "ALPR operators" and "persons" did not obtain authorization to "access" Plaintiffs' ALPR information (including their license plate numbers and information obtained concerning Plaintiffs obtained from the use of the ALPR system) at the Malls.

84. Defendants as "ALPR operators" and "persons" did not obtain authorization to "use" Plaintiffs ALPR information (including using their license plate numbers and information obtained from the use of the ALPR system including amount of time spent and other information about the visit).

85. Instead, Defendants (a) sent and/or gave access of Plaintiffs' ALPR information to Defendants' retailers and (b) sent and/or gave access of Plaintiffs' ALPR information to other third persons, including without limitation Federal, local, and state law enforcement.

86. Defendants did not have appropriate policies in place for the collection, storage, transmission, retention, and deletion of Plaintiffs' and Class Members as it pertains to themselves and all third parties with whom each of the Defendants are in privity.

87. Plaintiffs' ALPR information has been sent to send marketing and advertising materials to Plaintiffs without their authorization, to perform other data harvesting and modeling, to use Plaintiffs' information for other marketing and data purposes, for tracking purposes, for geo tracking, for other consumer habits, and to law enforcement.

88. An individual who does not give authorization to "access or use" ALPR information is *de facto* considered to have been "harmed." §1798.90.53(a) ("an individual who has been harmed by a violation of this title, including but not limited to, unauthorized access or use…").

89. Defendants' conduct was knowing in that they knew that they did not obtain Plaintiffs' or Class Members' authorization to "access or use" Plaintiffs' or Class Members ALPR information before Plaintiffs entered the Malls (and adjoining facilities).

90. Plaintiffs, on behalf of themselves and all others situated, each seek "…liquidated damages in the amount of two thousand five hundred dollars," punitive damages, reasonable attorney's fees and other litigation costs, and other preliminary and equitable relief as the Court deems is appropriate.

*Violating Act No. 2*:

91. The Defendants have not implemented a proper "usage and privacy policy in order to ensure that the collection, use maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals "privacy and civil liberties" in violation of §1798.90.51(b)(1).

92. In fact, a no privacy policy was posted or reasonably made available to Plaintiffs that discloses exactly what is being done with the ALPR information that is being collected, the authorized purposes for using ALPR system and collecting ALPR information, a description of the job title or other designation or those authorized to sue or access the ALPR system, and the training requirement of the foregoing, a description of how the ALPR systems will be monitored to

ensure security of information and compliance with applicable privacy laws, process for restrictions on sharing of ALPR information, a description of the measures that will be used to ensure the accuracy of ALPR information, the length of time ALPR information will be retained, how information is being used to gain other ALPR information, and what third parties the ALPR information is being sent to. §1798.90.51(b)(1), (b)(2).

93. Defendants' conduct was knowing because they knew they did not obtain Plaintiffs' or Class Members' authorization to "access or use" Plaintiffs' or Class Members ALPR information before doing so. Specifically, no authorization was obtained before images of Plaintiffs' and the Class' license plates were captured.

94. Plaintiffs each seek "…liquidated damages in the amount of two thousand five hundred dollars," punitive damages, reasonable attorney's fees and other litigation costs, and other preliminary and equitable relief as the Court deems is appropriate.

*Violating Act No. 3*:

95. Pursuant to §1798.90.52(b), the Defendants do not require that the ALPR information only be used for the authorized purposes described in any reasonably available or posted usage and privacy policy.

96. Upon information and belief, pursuant to §1798.90.52(a), the Defendants do not maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure. In fact, the policies in place to store, collect, maintain, transmit, delete, and purge data are violative of Plaintiffs' privacy rights.

97. Defendants' conduct was knowing in that they knew they did not obtain Plaintiffs' or Class Members' authorization to "access or use" Plaintiffs' or

Class Members ALPR information at each Mall location before doing so. In fact, no authorization was obtained to "access or use" the data whatsoever.

98. Plaintiffs, on behalf of themselves and those similarly situated, each seek "…liquidated damages in the amount of two thousand five hundred dollars," punitive damages, reasonable attorney's fees and other litigation costs, and other preliminary and equitable relief as the Court deems is appropriate.

*Violating Act No. 4*:

99. Pursuant to §1798.90.53(a), the Doe Defendants, ALPR end-users, do not maintain reasonable security procedures, and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use modification, or disclosure.

100. Pursuant to §1798.90.53(b), the Doe Defendants, ALPR end-users, have not established a privacy policy that complies with this statute.

101. Defendants' conduct was knowing in that they knew they did not obtain Plaintiffs' or Class Members' authorization to "access or use" Plaintiffs' or Class Members ALPR information before doing so.

102. Plaintiffs, on behalf of themselves and those similarly situated, each seek "…liquidated damages in the amount of two thousand five hundred dollars," punitive damages, reasonable attorney's fees and other litigation costs, and other preliminary and equitable relief as the Court deems is appropriate.

103. The fact that Defendant Park Assist's application makes data publicly available as depicted by example in figures 7, 8, 9, and 10 above, creates an additional violating act in that Park Assist has failed to "maintain reasonable security procedures and practices…to protect ALPR information from unauthorized access," and failed to implement a policy which "ensure[s] that the … maintenance … of ALPR information is consistent with individual's privacy and civil liberties." Cal Civ. Code § 1798.90.51.

104. All Violating Acts occur at the Malls identified in this Complaint.

# CAUSE OF ACTION II

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,

### CIVIL CODE §§1750, *ET SEQ.*

(Asserted by Plaintiffs and the Class against all Defendants, including DOES 1-100)

105.  Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

106.  Plaintiff Alvaro Navarro is a natural person and a consumer of parking services at the Malls.

107.  Plaintiff Areliz Navarro is a natural person and a consumer of parking services at the Malls.

108.  Plaintiff Howell is a natural person and a consumer of parking services at the Malls.

109.  Plaintiff Gasanova is a natural person and a consumer of parking services at the Malls.

110.  Plaintiff Rodriguez is a natural person and a consumer of parking services at the Malls.

111.  Plaintiff Ross is a natural person and a consumer of parking services at the Malls.

112.  Defendants Ski Data, Inc., Stefan Schafner, Westfield, LLC, Westfield Property Management, LLC, Sentry Control Systems, LLC, Park Assist, LLC, Federal Realty Investment Trust, Brookfield Properties Retail, Inc. dba Brookfield Properties Retail Group, Brookfield Property Reit, Inc., Glendale I Mall Associates, LP, and GGP-Glendale, LLC, Taubman Centers, Inc., Taubman Realty Group Limited Partnership, Taubman Company, LLC, Park Assist, LLC, Federal Realty Investment Trust, Caruso Affiliated Holdings, LLC, are each a

"person" as defined by Civil Code §1761(c). Plaintiffs and the Class Members are each a consumer within the meaning of Civil Code §1761(d).

113. The CLRA applies to Defendants' conduct because it extends to transactions that are intended to result in the sale or lease of goods or services to consumers or do result in such sales or leases. The use of the parking places is a service in that a ticket is issued giving a person a right to use a space which will be credited when money is placed in the account.

114. The harm and injury to Plaintiffs is of a personal nature because privacy is an inherently personal right, and impacts personal liberty and has a measurable value.

115. Defendants had a duty to truthfully disclose to parking users how they truly intended to operate the smart parking: by improperly disclosing personally identifiable information of Plaintiffs and the Class Members to others. Defendants failed to disclose this fact to parking users and subscribers including Plaintiffs. Defendants had a duty to not send ALPR information to third parties for the purposes of sending marketing and advertising materials to Plaintiffs without their authorization, to perform other data harvesting and modeling, and to use Plaintiffs' information for other marketing and data purposes. Defendants had a duty to not capture photographs of the Plaintiffs' and Class members' license plate images without consent.

116. Defendants had exclusive knowledge of material facts not known to Plaintiffs and the Class Members. Specifically, the Defendants operate the Malls in a manner that unjustly enriches Defendants by using and discloses ALPR information of Plaintiffs and the Class Members contrary to law and for improper purposes. Defendants, however, actively concealed these material facts and did not provide Plaintiffs or the Class Members proper notice of their actual intentions for use and disclosure of Plaintiffs' or Class Members' ALPR information.

117. The facts, which Defendants misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiffs' and the Class Members' decisions about whether to use the parking facilities (when such use was known) and pay invoices rendered by or for Defendants. Defendant are liable under the CLRA for these material misrepresentations and omissions.

118. Additionally, by their conduct described in this Complaint, Defendants have violated Civil Code §1770(a)(5), (7), (9), (14), (16) and (19).

119. Defendants had a duty to disclose the omitted facts because they had exclusive knowledge of material facts not known to Plaintiffs and the Class Members (that they were sharing ALPR in violation of the law), because they actively concealed material facts, and because they did not provide Plaintiffs and the Class Members proper notice of the illegal and improper sharing of ALPR information, and because they otherwise suppressed true material facts.

120. Under Civil Code §1780, Plaintiffs and the Class Members seek appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages, and any other relief the Court deems proper.

121. Here, in addition to the statutory obligation creating a duty not to improperly share PII, Plaintiffs as drivers who parked in the parking facilities, and who entrusted their movements and information to the Defendants, were in a special relationship with the Defendants. Therefore, the economic loss rule does not bar Plaintiffs' negligence claim.

122. Additionally, any of the Plaintiffs or Class Members that are senior citizens or disabled persons, as defined in Civil Code §§ 1780(b)(1) and 1781(f) and (g), may seek and be awarded up to an additional $5,000 for physical, emotional, or economic damage.

**CAUSE OF ACTION III**

**VIOLATION OF THE UNFAIR COMPETITION LAW,**

**BUS. & PROF. CODE §§17200, *ET SEQ*.**

(Asserted by Plaintiffs and the Class against all Defendants and DOES 1-100)

123.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

124.   Defendants have engaged in a pattern and practice of acts of unfair competition in violation of the California's UCL, including the practices alleged herein.

125.   By capturing license plate images without authorization and improperly providing the Plaintiffs' and other Class Members' ALPR information to third parties in violation of California Consumer Legal Remedies Act, Civil Code §§1750, the Defendants engaged in "unlawful, unfair or fraudulent business acts or practices."   Such acts were done and performed in order to collect information for the purpose of sending marketing and advertising materials to Plaintiffs without their authorization, to perform other data harvesting and modeling, and to use Plaintiffs' information for other marketing, tracking, and data purposes. Defendants committed and continues to commit and engage in "unlawful, unfair or fraudulent business acts or practices" as defined in Bus. & Prof. Code §§17200, *et seq*.

126.   Business & Professions Code §17200 provides:

> As used in this chapter, unfair competition shall mean and include any unlawful or fraudulent business act or practice and unfair, deceptive, untrue or misleading
>
> advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

127.   Business & Professions Code §17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such unfair competition, and Bus. & Prof. Code §17203 provides that a court may grant injunctive and equitable relief to such persons.  Specifically, there is a market for ALPR data from which several large corporations' profit and trade.  Defendants' unlawful collection and use of the ALPR data has diluted the value of the ALPR data.

128.   The unlawful conduct of Defendants, alleged herein, are acts of unfair competition under Bus. & Prof. Code §§17200, et seq., for which Defendants are liable and for which this Court should issue equitable and injunctive relief, including restitution, pursuant to Bus. & Prof. Code §17203.

129.   Through their conduct, Defendants have engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendants' use of such unfair business practices constitute unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

130.   Defendants' conduct as alleged herein is unlawful, unfair, and fraudulent.

131.   Defendants' conduct as alleged herein is "unlawful" in that, among other things, it violates the duties they owe to Plaintiffs and the Class Members under California Consumer Legal Remedies Act, Civil Code §§1750 and the CLRA.

132.   Defendants' conduct as alleged herein is also "unfair" because, among other things, it was designed to deprive Plaintiffs and the Class Members of their constitutionally protected rights and their property for less than adequate consideration.

1    133.  Defendants' scheme, as alleged herein, is also "fraudulent," in that it
2  is knowingly calculated and likely to mislead. Defendants had actual knowledge
3  of the illicit and reckless plans they possessed and concealed from Plaintiffs and
4  the Class Members to obtain and misuse their personal and private information.
5  Defendant Conduent has continued to take steps to perpetuate these deceitful
6  practices against the Plaintiffs and the Class Members, and other members of the
7  public at large.

8    134.  Unless enjoined, Defendants will continue to harm the Plaintiffs, the
9  other Class Members, and the general public. Plaintiffs and the Class Members
10  have suffered injuries in fact as a result of Defendants' conduct, as more
11  specifically alleged above.

12    135.  The capture and use of a person's private information invades
13  concrete interests" and thus, confers injury in fact standing.  In addition, here there
14  was (1) risk of future identity theft in the manner by which the information was
15  used and how license plate images were printed on each invoice, (2) there was a
16  loss of value of PII, (3) the PII has already been misused, (4) that Plaintiffs have
17  paid out of pocket mitigation expenses in credit monitoring, and (5) each of the
18  Plaintiffs lost the benefit of the bargain.

19    136.  Each of the Plaintiffs were injured by Defendants' improper
20  dissemination of his/her ALPR information. The unlawful disclosure of protected
21  information pursuant to Section 1798, and the statutory damages attendant thereto,
22  constitutes a clear de facto injury.  Plaintiffs were injured in that their ALPR
23  information was provided in a host of scenarios. Finally, Plaintiffs were injured in
24  that, sooner or later, their ALPR information will be misused in that other third
25  parties will use such ALPR to market to him, data mine, model, sell to him/her or
26  others, or track his/her locations, or misuse his/her ALPR in other ways.

27    137.  As a result of Defendants' unfair business practices, they have reaped
28  unfair benefits and illegal profits at the expense of the Plaintiffs and the Class

Members. Defendants should be made to disgorge its ill-gotten gains and restore such monies to Plaintiff and the Class Members. Defendants' unfair business practices furthermore entitle Plaintiff and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendants cease its complained-of practices and account for, disgorge, and restore to Plaintiffs and the Class Members the compensation unlawfully obtained from them.

138. The Defendants' improper collection, use, and dissemination of the ALPR data forms the basis for restitutionary disgorgement of any sales revenues and/or profit derived from sale/access/rental/sharing of the data, and/or disgorgement of revenues shared, or equipment consulting fees, or fees from the parking based on sharing or profiting from the ALPR data.

**CAUSE OF ACTION IV**

**NEGLIGENCE, INCLUDING NEGLIGENCE *PER SE***

(By Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants, and DOES 1-100)

139. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

140. Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable and ordinary care in their own actions so as not to create an unreasonable risk of injury to them. That duty arose generally, as well as from, among other things, state, and local laws, ordinances and regulations that require Defendants to operate the parking facilities in a manner that does not damage the public. These laws include, but are not limited to the above cited privacy and consumer protection statutes.

141. Defendants have engaged in a pattern and practice of acts of unfair competition in violation of California's UCL, including the practices alleged herein.

142.   Defendants breached their duty to Plaintiffs and the Class, by among other things, failing to collect, maintain, and disseminate ALPR information in accordance with the above-reference statutes.

143.   Defendants also owed a duty to Plaintiffs and the Class Members to not share their ALPR information in violation of California Consumer Legal Remedies Act, Civil Code §§1750. Nevertheless, Defendants did share ALPR information of Plaintiffs and the Class in a myriad of ways in violation of California Consumer Legal Remedies Act, Civil Code §§1750 as described above. That violation was a substantial factor in bringing about harm to Plaintiffs and the Class.

144.   Defendants in the exercise of reasonable care, knew, or should have known, the transmissions of ALPR information would damage Plaintiffs and the Class.

145.   In addition, Defendants' violations of the above-cited statutes, ordinances, and/or regulations resulted in precisely the harm to Plaintiffs and the Class that the laws listed above were signed to prevent, and Plaintiffs and the Class are members of the class of persons for whose protection those laws were adopted.

146.   As a foreseeable and proximate result of Defendants' negligent acts, Plaintiffs and the Class Members were injured, including by having their ALPR information disseminated to unauthorized parties.

147.   This injury was directly and substantially caused by Defendants' negligence, as alleged above.

148.   Plaintiffs were damaged as a direct result of Defendants' transmissions of ALPR information, and based on Defendants' violations and conduct, Defendants are responsible for statutory damages in the amount of no less than $2,500 per provision of each of Plaintiffs' and Class Members' PII to each of the Unauthorized Parties.

149.   The statutory damages that Defendants are liable for pursuant to the preceding paragraph, are not "purely economic losses," in that the California Legislature has devised a measure of statutory damages pursuant to California Consumer Legal Remedies Act, Civil Code §§1750 that measures a reasonable remedy based on the property interest and protection of personally identifiable information, and an individual's privacy.

150.   Plaintiffs have asserted independent torts under the CLRA (cause of action II), the Unfair Competition Law (cause of action III), and California Civil Code § 1798.90.54 (cause of action I), which render a claim for negligence wholly independent of any economic loss suffered.

151.   As for any non-statutory/non-injunctive relief remedies, there is a special relationship between Plaintiffs on the one hand, and Defendants, on the other hand, in that:

- The parking transactions and policies concerning ALPR were intended to affect the Plaintiffs, and specifically, the "end and aim" of the operation of the parking facilities is for the benefit of Plaintiffs, the Class, and the public;

- It was foreseeable that Plaintiffs and the Class could be harmed based on the improper collection, maintenance, and transmission of ALPR to third parties and the other conduct described by Plaintiffs in this Complaint;

- There is a high degree of certainty that Plaintiffs and the class suffered injury as specified in the Complaint;

- There is a causal connection and closeness between the Defendants' conduct and the injury suffered by Plaintiffs and the Class, in that but for the Defendants' transmission of ALPR information there would have been no injury suffered;

- Blame should be attached to the Defendants' conduct because Defendants knowingly transmitted ALPR information in violation of state privacy laws, and further, Defendants knew the practices were unlawful.
- Future harm can be prevented as a policy matter by operating the parking facilities in a manner that protects ALPR information and discloses how ALPR information is to be used going forward.

152. As a result of Defendants' unfair business practices, they have reaped unfair benefits and illegal profits at the expense of the Plaintiffs and the Class Members. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiffs and the Class Members. Defendants' unfair business practices furthermore entitle Plaintiffs and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendants cease their complained-of practices and account for, disgorge, and restore to Plaintiffs and the Class Members the compensation unlawfully obtained from them. Pursuant to the California Constitution only, and not the United States Constitution, Plaintiffs seek for themselves, and on behalf of the Class disgorgement of profits obtained by the unlawful transmissions of ALPR information, and declaratory relief and injunctive relief that Defendants be prohibited from further unlawful transmissions of ALPR information.

## CAUSE OF ACTION V

## VIOLATION OF ARTICLE I, § 1 OF THE CALIFORNIA CONSTITUTION (RIGHT TO PRIVACY)

(By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)

153. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

154. Article I, § 1 of the California Constitution ensures individuals' inalienable rights to privacy.

155. Plaintiffs and Class Members had a reasonable expectation of privacy. For one, *California Civ. Code § 1798* was enacted to ensure it. Other privacy statutes too, in California, were enacted to ensure it. Moreover, the Defendants' policies manifest an intent to maintain the privacy of those who park, at a bare minimum, does not reduce from the reasonable expectation of privacy of vehicle owners and operators who do not expect those visiting a shopping mall to expose their PII to dissemination. A reasonable expectation of privacy implies notice of that one's photograph will not be taken and authorization at the point of entry, that the comings and goings, and precise locations of Plaintiffs will not be tracked and recorded. The tracking of Plaintiffs and the Class' precise entry time and locations is tracked, repeatedly.

156. In any event, Plaintiffs and Class Members had a reasonable expectation of privacy that, when a vehicle parks in places of public gathering, its owner's PII will not be captured for broad dissemination without authorization, and then broadly disseminated, to third parties, including but not limited to unauthorized parties, for advertising, to locate persons, and to further a conglomeration of big data.

157. The privacy rights of Plaintiffs and Class Members, in and to their PII, are serious, underscored by statute, the active participation in relevant Legislative proceedings by the Electronic Frontier Foundation, and the enactment of laws to reflect such concerns. By their conduct described above, these established, serious privacy rights were seriously invaded by the Defendants.

158. By the aforementioned acts and omissions, Defendants have violated the privacy rights of Plaintiffs and other Class Members. As a consequence, Plaintiffs and the Class Members have suffered, and seek hereby from Defendants, damages, injunctive relief, and reasonable notice that they are being photographed.

Plaintiffs and Class Members additionally seek attorneys' fees, and costs, as may be allowed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each Class Member, pray for judgment against Defendants as follows:

A.     That this action and the proposed class be certified and maintained as a class action, appointing Plaintiffs as representatives of the Class, and appointing firm representing Plaintiffs as counsel for the Class;

B.     For actual damages, restitution, and all other appropriate legal and equitable and injunctive relief;

C.     For declaratory relief;

D.     For pre-judgment and post-judgment interest;

E.     For punitive and exemplary damages;

F.     For attorneys' fees and costs pursuant, *inter alia*, Code of Civil Procedure §1021.5, Civil Code §§1788.17 and 1788.30(c), and California Civ. Code § 1798.

G.     For appropriate injunctive relief (including equitable and preliminary relief);

H.     For statutory damages in the amount of no less than $2,500 for each violation of California Civ. Code § 1798; and

I.     For such other and further relief as this Court may deem just and proper.

FIRST AMENDED CLASS ACTION COMPLAINT

Respectfully submitted,

Dated: June 1, 2021                LINDEMANN LAW FIRM

                          By:    */s/ Blake J. Lindemann*
                                 BLAKE J. LINDEMANN, SBN 255747
                                 DONNA R. DISHBAK, SBN 259311
                                 433 N. Camden Drive, 4th Floor
                                 Beverly Hills, CA 90210
                                 Telephone: (310) 279-5269
                                 Facsimile:  (310) 300-0267

                                 ***Attorneys for Plaintiffs and the Proposed
                                 Class***

**DEMAND FOR JURY TRIAL**

Plaintiffs and the Class Members hereby demand a trial by jury on all causes

of action so triable.

Dated:   June 1, 2021                    LINDEMANN LAW FIRM

By:    */s/ Blake J. Lindemann*

BLAKE J. LINDEMANN, SBN 255747
DONNA R. DISHBAK, SBN 259311

433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210

Telephone: (310) 279-5269
Facsimile:  (310) 300-0267

***Attorneys for Plaintiffs and the Proposed***

***Class***

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, declare: I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210.

On June 1, 2021, I served the foregoing document as follows:

**FIRST AMENDED CLASS ACTION COMPLAINT**

[X] by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such electronic filing to counsel of record for all parties by operation of the Court's CM/ECF System.

[ ] by U.S. Mail in the ordinary course of business to the non-CM/ECF participants indicated on the attached Manual Notice List. I am readily familiar with the Firm's practice for the collection and processing of correspondence for mailing with the Postal Service and that the correspondence would be deposited with same that same day in the ordinary course of business.

[ ] by electronically serving the foregoing by electronic mail to the e-mail addresses agreed by the parties for service, pursuant to Fed. R. Civ. Proc. 5 and the parties' agreement.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on June 1, 2021, at Beverly Hills, California.


*/s/ Nataly Grande*

_____

NATALY GRANDE