**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
DONNA R. DISHBAK, SBN 259311
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile:  (310) 300-0267
E-Mail:      blake@lawbl.com

*Attorneys for Plaintiffs and the*
*Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ALVARO NAVARRO, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>SKI DATA, INC., a Delaware Corporation, *et al.*,<br><br>      Defendants. | Case No.: 2:20-cv-07370-SVW-SK<br><br>**<u>CLASS ACTION</u>**<br><br>**CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>[Demand for Jury Trial] |

Plaintiffs Alvaro Navarro, Areliz Navarro, Jina Howell, Sevindzh Gasanova, Cristian Rodriguez, and Leilani Ross (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, bring their second amended class action complaint (the "Complaint") against Ski Data, Inc., Stefan Schafner, Westfield, LLC, Westfield Property Management, LLC, Sentry Control Systems, LLC, Park Assist, LLC, Federal Realty Investment Trust, Brookfield Properties Retail, Inc. dba Brookfield Properties Retail Group, Brookfield Property Reit, Inc., Glendale I Mall Associates, LP, and GGP-Glendale, LLC, Taubman Centers, Inc., Taubman Realty Group Limited Partnership, Taubman Company, LLC, Park Assist, LLC, Federal Realty Investment Trust, Caruso Affiliated Holdings, LLC, DOES 1-10 (collectively the "Defendants"), and allege as follows based on investigation of counsel and information and belief:

## **NATURE OF THE CASE**

1. This class action seeks redress for Defendants' violations of Plaintiffs' and class members' rights to privacy and protection of personally identifiable information under California Civ. Code § 1798 ("§ 1798") and other related consumer protection statutes and constitutional provisions. Without authorization, the Defendants capture the license plate images of Plaintiffs and the class members as they enter, and exit the Century City Westfield Mall, the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, Beverly Center Mall, San Diego Westfield (Mission Valley and UTC), in direct violation of § 1798 and further, provide that data to vendors, companies, and other unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, data harvesting, and other unauthorized purposes entitling Plaintiffs to damages and injunctive relief. The information is further provided by Defendants to third parties with whom the Defendants are in privity and who do not have proper data collection, sharing, and transmission policies that are compliant with consumers' privacy rights, and in fact are directly violative of

1

Plaintiffs' and the Class' privacy rights. Automated license plate readers are a sophisticated way of tracking drivers' locations, and when their data is aggregated over time, they can paint detailed pictures of people's lives.

2. "The provision of these systems and related database systems are also big business." Legislative History of SB34, Civil Code §1798. Automated license plate readers have the ability to collect license plate numbers, locations and time stamps to track "a person's exact whereabouts" and their "pattern of movements." Responding to a legitimate concern for consumers not "aware when their ALPR data is being collected" the California legislature passed California Civil Code § 1798 ("§1798") to limit the collection, use, and dissemination of ALPR data that "constitutes a significant invasion of privacy," and which can reveal "many things about a person's life" such as "what friends, doctors, protests, political events, or churches a person may visit." (*Id*.)

## JURISDICTION AND VENUE

3. The Court has personal jurisdiction over each of the Defendants because they are residents and/or doing business in the State of California and/or their principal places of business are in California and/or they own property at issue in California.

4. The Century City Westfield Mall, the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, and Beverly Center Mall are all located in Los Angeles County, California. Westfield (UTC and Mission Valley) is in San Diego County.

5. Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction in Los Angeles County.

6. This is a local controversy in that the unauthorized capturing and dissemination of class members' information predominately affects local residents

2
CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

in the County of Los Angeles specifically, and generally in the State of California. The actual capturing and transmission of the data is primarily performed locally in Los Angeles County, and exclusively on a local basis in Southern California.

7. Federal subject matter jurisdiction may be lacking over this privacy class action, based on recent Supreme Court authority. As the United States Supreme Court held in *Transunion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021): "Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. *Id*., at 340–341. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion. *See, e.g.*, *Meese v. Keene*, 481 U. S. 465, 473 (1987) (reputational harms); *Davis v. Federal Election Comm'n*, 554 U. S. 724, 733 (2008) (disclosure of private information); *see also Gadelhak v. AT&T Services, Inc.*, 950 F. 3d 458, 462 (CA7 2020) (Barrett, J.) (intrusion upon seclusion). And those traditional harms may also include harms specified by the Constitution itself. *See, e.g., Spokeo*, 578 U. S., at 340 (*citing Pleasant Grove City v. Summum*, 555 U. S. 460 (2009) (abridgment of free speech), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (infringement of free exercise)).  In determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court in *Spokeo* said that Congress's views may be "instructive." 578 U.S., at 341. Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation. *See id*., at 340–341. In that way, Congress may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id*., at 341 (alterations and internal quotation marks omitted); *see Lujan*, 504 U. S., at 562–563, 578; *cf., e.g., Allen v. Wright*, 468 U. S. 737, 757, n. 22 (1984) (discriminatory treatment)."  While Plaintiffs believe they have pled adequate "harm" herein as

defined by the California legislature, and independently otherwise, should that not be so, the appropriate remedy is dismissal without prejudice for lack of subject matter jurisdiction.  Subject matter jurisdiction may be determined at "any time." Fed. R. Civ. Proc. 12(h)(3).

8.    Subject matter jurisdiction may be lacking independently based on CAFA because more than two-thirds of the proposed class members are citizens of California (and if fact 100% percent of the proposed class members are citizens of California), the principal injuries resulting from the alleged conduct were incurred in California, no class action asserting similar factual allegations has been filed against any of the defendants in the preceding three years, and at least one defendant is a forum-state citizen from whom significant relief is sought and whose alleged conduct is a significant basis of the claims.[1]

## THE PARTIES

9.    Plaintiff Alvaro Navarro is a resident and citizen of Los Angeles County, California.

10.    Plaintiff Areliz Navarro is a resident and citizen of Los Angeles County, California.

11.    Plaintiff Jina Howell is a resident and citizen of California

12.    Plaintiff Sevindzh Gasanova is currently a resident and citizen of Florida, although when the Case was filed, she was a resident and citizen of Los Angeles County, California.

13.    Plaintiff Cristian Rodriguez is a resident and citizen of Los Angeles County, California.

13.    Plaintiff Leilani Ross is a resident and citizen of California.

14.    The case involves the collection, storage, transmission, processing, retention, and deletion policies of consumer data obtain through automatic number

---

[1] The Court has entered an Order denying Plaintiffs' motion to Remand based on challenges Plaintiff raised as to CAFA jurisdiction. [Dkt. No. 73.]

plate recognition ("ALPR" or "ALPR data") devices at the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, Beverly Center Mall, San Diego Westfield (Mission Valley and UTC) (collectively, the "Malls")

15.    Defendant Ski Data, Inc. ("Ski Data") is a privately organized Delaware Corporation authorized to conduct business in California, and upon information, that has a principal place of business in California. Since 2017, Ski Data has been operator of certain functions at the Century City Westfield Mall, Beverly Center Mall. Ski Data sells and installs ALPR equipment in parking facilities that is ultimately used in collecting ALPR data. Aside from being directly liable under applicable statutes below, Ski Data is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego as for the mall locations to which it operates, including the Century City Westfield Mall and the Beverly Center Mall. Ski Data is a knowing and willful participant in a joint action, along with other Defendants that own, manage and/or operate the Century City Westfield Mall and the Beverly Center Mall, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

14.    Defendant Sentry Control Systems, LLC is a Delaware Limited Liability Company that has its principal place of business in the state of California. Defendant Sentry is wholly owned by Defendant Ski Data and provides distribution and servicing of Ski Data's products, technology, and services. Where Ski Data is referenced, that shall include Sentry.

15.    Defendants Westfield Property Management, LLC, a Delaware Limited Liability Company and Westfield, LLC, a Delaware Limited Liability Company dba as Westfield Corporation, Westfield Retail Solutions, Inc., a Delaware Corporation (collectively, "Westfield") are each privately organized Delaware Limited Liability Companies authorized to conduct business in California except retail solutions, which is surrendered. Since 2017, Westfield

owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers in Century City and in Westfield UTC and Westfield Mission Valley, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment. Aside from being directly liable under the applicable statutes below, Westfield is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego because it was the principal, that at all times, allowed Ski Data to knowingly provide personal information to third parties without authorization. Westfield is a knowing and willful participant in a joint action, along with the other Defendants that provide service at the Century City Westfield Mall and the Westfield UTC, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

16.     Defendant Stefan Schafner is a natural person who resides and is a citizen of California. Since 2017, and until such time as he was terminated, Schafner owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment located at the Century City Westfield Mall and Beverly Center Mall. Aside from being directly liable under the applicable statutes below, Schafner is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Schafner is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

17.   Defendant Sentry Control Systems, LLC is a Delaware Limited Liability Company dba as Westfield Corporation (collectively, "Sentry") is a privately organized Delaware Limited Liability Company authorized to conduct business in California, fdba as Sentry Control Systems, Inc. a California Corporation.  Since 2017, Sentry owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers at the Century City Westfield Mall, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment, all at the Century City Westfield Mall. Aside from being directly liable under the applicable statutes below, Sentry is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Sentry is a knowing and willful participant in a joint action, along with the other defendants who provide services at the Century City Westfield Mall, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

18.   Defendant Park Assist, LLC is a Delaware Limited Liability Company (collectively, "Park Assist") is a privately organized Delaware Limited Liability Company authorized to conduct business in California. Since on or about 2017, Park Assist owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers at the Third Street Promenade Mall, Galleria Mall, and owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment. Aside from being directly liable under the applicable statutes below, Park Assist is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego as to the conduct that occurred at the Third Street Promenade Mall and the Galleria Mall. Park Assist is

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint pertaining to the Third Street Promenade Mall and the Galleria Mall, which caused injury to Plaintiffs and the Class Members.

19. Defendant Federal Realty Investment Trust is a privately organized California Trust authorized to conduct business in California. Since at least 2017, Federal owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers at the Third Street Promenade Mall, owned and/or operated the physical machines and equipment at the same facility, owned and/or operated the software at the same facility, and owned and/or operated computer equipment that interfaces with the camera equipment, and upon information, owns the Santa Monica Third Street Promenade. Aside from being directly liable under the applicable statutes below, Federal is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Federal is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint as it pertains to the Third Street Promenade Mall, which caused injury to Plaintiffs and the Class Members.

20. Defendants' Brookfield Properties Retail, Inc. dba Brookfield Properties Retail Group, Brookfield Property Reit, Inc., Glendale I Mall Associates, LP (which include California partners upon information and belief), and GGP-Glendale, LLC (collectively, "Brookfield") are each privately organized Delaware Limited Liability Companies or Delaware Limited Partnerships authorized to conduct business in California. For purposes of jurisdiction, because the identity of Glendale I Mall Associates, Limited Partnership includes partners who are citizens of California, the entity is considered a California entity for purposes of jurisdiction. Since 2017, Brookfield owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate

8

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

numbers at the Galleria Mall and 7th and Fig Mall, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment at the Galleria Mall and 7th and Fig Mall. Aside from being directly liable under the applicable statutes below, Brookfield is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Brookfield is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.  The purported display of the purported policy is not conspicuous either in person or on Brookfield's webpage, as required.

21.    Defendants' Caruso Affiliated Holdings, LLC, and its subsidiaries (collectively, "Caruso Entities") are each privately organized California Limited Liability Companies whose principal place of business is in California.  Since 2017, Caruso owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers at the Grove at Farmer's Market, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment at the Grove at Farmer's Market. Aside from being directly liable under the applicable statutes below, Brookfield is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Brookfield is a knowing and willful participant in a joint action, along with the other Defendants who provide services at the Grove at Farmer's Market, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

22.    Defendants Taubman Centers, Inc. is a Michigan Corporation. Taubman Realty Group Limited Partnership is a Delaware Limited Liability

Partnership, and Taubman Company, LLC is a Delaware Limited Liability Company (the three Taubman entities are collectively referred to as "Taubman"). For purposes of jurisdiction, because the identity of Taubman Realty Group Limited Partnership and Taubman Company LLC includes partners who are citizens of California, the entity is considered a California entity for purposes of jurisdiction. Since 2017, Taubman owned and/or operated camera equipment that has photographed Plaintiffs and Class Members' license plate numbers at the Beverly Center Mall, owned and/or operated the physical machines and equipment, owned and/or operated the software, and owned and/or operated computer equipment that interfaces with the camera equipment at the Beverly Center Mall. Aside from being directly liable under the applicable statutes below, Taubman is secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego. Taubman is a knowing and willful participant in a joint action, along with the other Defendants, in the various acts and omissions set forth in this complaint, which caused injury to Plaintiffs and the Class Members.

## FACTUAL BACKGROUND

23.    Plaintiff **Alvaro Navarro** is acting on his own behalf and on behalf of others similarly situated. Several times between April 16, 2019, and April 16, 2020, Mr. Navarro entered the parking facilities for Glendale Galleria Mall at 100 W. Broadway Suite 100, Glendale, CA 91210 ("Glendale Galleria Mall") and obtained a parking ticket. Unknown to him at all times, upon parking at the facility and upon leaving the facility, a license plate image was taken of Mr. Navarro's vehicle that was then transferred into a database and could be searched by any person from several kiosks, or even a web based application that could be downloaded on a smart phone or computer, and accessed by any person in the world.  In other words, the tracking service could be used by any person for any purpose. Mr. Navarro did not provide authorization to any of the Defendants at

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

any time.  As an employee of the United Postal Service, Mr. Navarro was the victim of an attempted murder, and was harmed upon information, by the use of his data.  Mr. Navarro was harmed in that he faced future identity theft by virtue of the widespread unauthorized collection and sharing of his ALPR data, there was a loss of value of his ALPR data, the ALPR data has already been misused and collected without authorization, Mr. Navarro has incurred out of pocket mitigation expenses concerning collection at the Glendale Galleria Mall (and other malls) including the need to credit monitor and obtain credit reports, and he lost the benefit of the bargain by virtue of having his ALPR data used and sold to other corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target him without his consent.

24.    The Brookfield entities obtained and provided Plaintiff Alvaro Navarro's information which includes his name, his license plate number, his address, his travel pattern and geo-location and time of entry and exits, the time he was in a certain facility, the make of his car, photographs of his image ("Private Information"),[2] and has a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.  Plaintiff Alvaro Navarro did not know his information was being collected. Even if he had, Plaintiff Alvaro Navarro would not have entrusted his Private Information to one or more of Park Assist or the Brookfield Entities had he known of the sharing practices of his

---

[2] Park Assist's servers contained Personally Identifiable Information ("PII") of individuals, including Plaintiffs. According to the Federal Trade Commission ("FTC"), PII is "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual."

*See* Federal Trade Commission Privacy Impact Assessment: Redress Enforcement Database (RED) at 3, n.3, FTC (June 2019), https://www.ftc.gov/system/files/attachments/privacy-impact-assessments/redress enforcement_database_red_privacy_impact_assessment_june_ 2019.pdf.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

Private Information and PII with the following entities and categories of third parties: Nordstrom's (and other similar retailers), Bloomingdale's, Gelson's, LexisNexis (and/or similar aggregators of ALPR data, or unknown names affiliated with the foregoing. Park Assist shared Mr. Navarro's PII with the general public through its application and website, which was accessible by any person, and from which data was taken, accessed, and permitted to be used by third persons.

26. From on or about April 16, 2019, to present date, Plaintiff Alvaro Navarro's Private Information and PII including his name, address, DMV record, email address, phone number, was improperly accessed and/or obtained by unauthorized third parties. Investigations have revealed that Park Assist and the Brookfield Entities' representations about what information was exposed and/or shared, is inaccurate at best. Thus, at this time, it is unclear how much Private Information of Plaintiff Navarro's was exposed due to Park Assist and the Brookfield Entities' misconduct.

26. Plaintiff Alvaro Navarro's Private Information was compromised and disclosed as a result of the business practices of Park Assist (who had an application of which any third party could access the data) and the Brookfield Defendants. Plaintiff Alvaro Navarro was required to provide his Private Information and PII to Park Assist and the Brookfield Defendants as a predicate to receiving parking services.

27. As a result of the improper sharing practices by Park Assist and the Brookfield Entities, Plaintiff Alvaro Navarro tried to mitigate its impact, including two hours of time spent reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, and between 1 and 2 hours monitoring online banking to resolve issues related to the improper sharing by the Brookfield Defendants and Park Assist.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

28.     Plaintiff Alvaro Navarro now spends approximately two hours per month reviewing credit monitoring reports and/or checking account statements for irregularities. To date, Plaintiff has spent at least 15-20 hours on these tasks, valuable time Plaintiff Alvaro Navarro otherwise would have spent on other activities, including but not limited to work and/or recreation.  Alvaro Navarro continues to maintain credit monitoring and pay for services.

29.     Plaintiff Alvaro Navarro plans to continue purchasing credit monitoring and identity theft protection services on an ongoing basis to protect himself from identity theft and fraud.

30.     Plaintiff Alvaro Navarro's personal information and PII was provided to Gelson's, Bloomingdale's and Nordstrom's without his authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and other opportunities from these retailers, and other third persons including LexisNexis and other aggregators of data and large databases.

31.     As a result of the improper collection, use and sharing of PII and Private Information, Plaintiff Alvaro Navarro has suffered emotional distress as a result of the release of his Private Information and PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of marketing, identity theft, or fraud.

32.     Plaintiff Alvaro Navarro is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the improper and unauthorized sharing of Personal Information and PII.

33.     Plaintiff Alvaro Navarro suffered actual injury from having his Private Information compromised as a result of the improper use and sharing including caused by the Brookfield Defendants and Park Assist, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Park Assist and the Brookfield Defendants obtained from Plaintiff

Alvaro Navarro; (b) violation of his privacy rights; (c) imminent and impending injury arising from the increased risk of identity theft and fraud.

34. Moreover, subsequent to the campaign and improper sharing of his PII, Plaintiff Navarro also experienced actual identity theft and fraud, including notification that her Private Information was found on the dark web and a significantly increased amount of suspicious, unsolicited phishing telephone calls, text messages, and/or emails.

35. As a result of the improper sharing and use of the Private Information, Plaintiff Alvaro Navarro anticipates spending considerable time and money on an ongoing basis to try and mitigate and address harms caused by the improper sharing. As a result of the improper sharing and use of the Private Information, Plaintiff Alvaro Navarro will continue to be at increased risk of identity theft and fraud for years to come.

36. Plaintiff Alvaro Navarro lost value in his PII because he incurred and paid for parking services at the Glendale Galleria Mall, even though his personal information and PII was marketed to Bloomingdale's, Nordstrom's and sold to others, and/or as part of a package for a set sum of money and/or equivalent value of validation services.

37. Park Assist made and published Plaintiff Alvaro Navarro's PII and made such PII available to the general public and all subscribers of an application, which would take photographs of Mr. Navarro's vehicle. This further was intrusive and caused Mr. Navarro actual harm. The owners and operators of the Glendale Galleria Mall, knowingly were aware and that Park Assist was involved in publishing and making the PII available, to the general public.

38. Plaintiff **Areliz Navarro** is acting on her own behalf and on behalf of others similarly situated. Several times between April 16, 2019, and April 16, 2020, Ms. Navarro entered the parking facilities for Beverly Center Mall at 8500 Beverly Blvd., Los Angeles, CA 90048 ("Beverly Center Mall") and obtained a

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

parking ticket. Unknown to her at all times, upon parking at the facility and upon leaving the facility, a license plate image was taken of Ms. Navarro's vehicle that was transferred to a database and then sent to unauthorized third persons. Ms. Navarro did not provide authorization to any of the Defendants, including the Taubman Entities or Ski Data at any time as to this sharing of PII. Ms. Navarro was harmed in that she faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Navarro has incurred out of pocket mitigation expenses concerning collection at the Beverly Center Mall (and other malls) including the need to credit monitor and obtain credit reports, and she lost the benefit of the bargain by virtue of having her ALPR data used and sold to other corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without his consent.

39.    The Taubman entities obtained and continue to maintain Plaintiff Areliz Navarro's information which includes her name, her license plate number, her address, her travel pattern and geo-location and time of entry and exits, the time she was in a certain facility, the make of her car, photographs of her image ("Private Information"), and Ski Data and the Taubman entities have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff Areliz Navarro did not know her information was being collected. Even if she had, Plaintiff Areliz Navarro would not have entrusted her Private Information to one or more of Taubman entities had she known of the sharing practices of her Private Information and PII with the following entities and categories of third parties: Nordstrom's (and other similar retailers), Bloomingdale's, Gelson's, LexisNexis (and/or similar aggregators of ALPR data).

40.    Plaintiff Areliz Navarro's Private Information was compromised and disclosed as a result of the business practices of Ski Data and the Taubman

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

Defendants. Plaintiff Areliz Navarro was required to provide her Private Information and PII to Ski Data and the Taubman Defendants as a predicate to receiving parking services. Plaintiff Areliz Navarro's PII and Private Information was in turn provided to an unknown third-party server to be held, used and shared. This software was owned by Ski Data, and Ski Data had access to the server that collected the ALPR data. The actual ALPR may not have been maintained on a go-forward basis by Ski Data, but access was provided to known and unknown parties, and ultimately, PII of Plaintiffs and the Class was mis-used.

41.   From on or about April 16, 2019, to present date, Plaintiff Areliz Navarro's Private Information and PII including her name, address, DMV record, email address, phone number, was improperly accessed and/or obtained by unauthorized third parties. Investigations have revealed that the Taubman Defendants and Ski Data's representations about what information was exposed and/or shared, is inaccurate at best. Thus, at this time, it is unclear how much Private Information of Plaintiff Areliz Navarro's was exposed due to Ski Data and the Brookfield Entities' misconduct.

42.   As a result of the improper sharing practices by Ski Data and the Taubman Defendants, Plaintiff Areliz Navarro tried to mitigate its impact, including two hours of time spent reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, and between 1 and 2 hours monitoring online banking to resolve issues related to the improper sharing by Ski Data and the Taubman Defendants.

43.   Plaintiff Areliz Navarro now spends approximately two hours per month reviewing credit monitoring reports and/or checking account statements for irregularities. To date, Plaintiff has spent at least 15-20 hours on these tasks, valuable time Plaintiff Areliz Navarro otherwise would have spent on other activities, including but not limited to work and/or recreation. Areliz Navarro continues to maintain credit monitoring and pay for services.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

44.    Plaintiff Areliz Navarro plans to continue purchasing credit monitoring and identity theft protection services on an ongoing basis to protect herself from identity theft and fraud.

45.    Plaintiff Areliz Navarro's personal Information and PII was provided to Gelson's, Bloomingdale's and Nordstrom's without her authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and other opportunities from these retailers, and other third persons including LexisNexis and other aggregators of data and large databases, all without her consent.

46.    As a result of the improper collection, use and sharing of PII and Private Information, Plaintiff Areliz Navarro has suffered emotional distress as a result of the release of her Private Information and PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of marketing, identity theft, or fraud.

47.    Plaintiff Areliz Navarro is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the improper and unauthorized sharing of Personal Information and PII.

48.    Plaintiff Areliz Navarro suffered actual injury from having her Private Information compromised as a result of the improper use and sharing including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Ski Data and the Taubman Defendants obtained from Plaintiff Areliz Navarro; (b) violation of her privacy rights; and (c) imminent and impending injury arising from the increased risk of identity theft and fraud.

49.    As a result of the improper sharing and use of the Private Information, Plaintiff Areliz Navarro anticipates spending considerable time and money on an ongoing basis to try and mitigate and address harms caused by the improper

sharing.  As a result of the improper sharing and use of the Private Information, Plaintiff Areliz Navarro will continue to be at increased risk of identity theft and fraud for years to come.

50.    Plaintiff Areliz Navarro lost value in her PII because she incurred and paid for parking services at the Beverly Center Mall, even though her personal information and PII was marketed to Bloomingdale's, Nordstrom's and sold to others, and/or as part of a package for a set sum of money and/or equivalent value of validation services.

51.    Plaintiff **Jina Howell** is acting on her own behalf and on behalf of others similarly situated. Several times between April 16, 2019, and April 16, 2020, Ms. Howell entered the parking facilities for Westfield Century City Mall at 1025 Santa Monica Blvd., Los Angeles CA ("Century City Mall") and obtained a parking invoice. When Ms. Howell approached the exit point of the mall parking, she did not have to place the redeemed ticket in the machine, and the parking arm automatically went up. Ms. Howell has been advertised and marketed to without her authorization and has had had her personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes.  When Ms. Howell entered the facilities, the license plate number of her vehicle is printed on the ticket in large bold, upper-case letters. Since parking tickets are often not cared for, unsuspecting drivers are leaving their receipt tickets where anybody could see them and could do further damage if such ticket were to arrive in the hands of the wrong person. Ms. Howell did not provide authorization to any of the Defendants at any time. Ms. Howell was harmed in that she faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Howell has incurred out of pocket mitigation expenses concerning collection at the Century City Mall (and other malls) including the need

18

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

to credit monitor and obtain credit reports, and he lost the benefit of the bargain by virtue of having her ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without his consent.

52.    Ski Data obtained and collected Plaintiff Howell's information which includes her name, her license plate number, her address, his travel pattern and geo-location and time of entry and exits, the time she was in a certain facility, the make of her car, photographs of her image ("Private Information"), and has a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.  Plaintiff Howell did not know her information was being collected. Plaintiff Howell would not have entrusted her Private Information to Ski Data had she known of the sharing practices of her Private Information and PII with the following entities and categories of third parties: Nordstrom's (and other similar retailers), Bloomingdale's, Gelson's, LexisNexis (and/or similar aggregators of ALPR data).

53.    Ms. Howell's credit card was breached as a result of the improper sharing by Westfield Defendants and Ski Data of her Private Information, and specifically an unauthorized charge of $2,000 was made which forced Ms. Howell to obtain a new credit card.

54.    Plaintiff Howell's Private Information was compromised and disclosed as a result of the business practices of Defendant Ski Data.  Plaintiff Howell was required to provide her Private Information and PII to Ski Data as a predicate to receiving parking services. Plaintiff Howell's PII and Private Information was in turn provided to an unknown third party server to be held, used and shared.

55.    From on or about April 16, 2019, to present date, Plaintiff Howell's Private Information and PII including her name, address, DMV record, email address, phone number, was improperly accessed and/or obtained by Ski Data and

the Westfield Parties and sent to a host of unauthorized third parties. Investigations have revealed that Ski Data's representations about what information was exposed and/or shared concerning use of the Century City Mall facility, is inaccurate at best. Thus, at this time, it is unclear how much Private Information of Plaintiff Howell's was exposed due to Ski Data's misconduct.

56.     As a result of the improper sharing practices by Ski Data and the Westfield Defendants, Plaintiff Howell tried to mitigate its impact, including two hours of time spent reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, and between 1 and 2 hours monitoring online banking to resolve issues related to the improper sharing by Ski Data.  Specifically, an unauthorized charge in the amount of $2,000 was made, and Ms. Howell had to obtain a new credit card.

57.     Plaintiff Howell now spends approximately two hours per month reviewing credit monitoring reports and/or checking account statements for irregularities. To date, Plaintiff has spent at least 15-20 hours on these tasks, valuable time Plaintiff Howell otherwise would have spent on other activities, including but not limited to work and/or recreation. Howell continues to maintain credit monitoring and pay for services.

58.     Plaintiff Howell plans to continue purchasing credit monitoring and identity theft protection services on an ongoing basis to protect herself from identity theft and fraud.

59.     Plaintiff Howell's personal Information and PII was provided to Gelson's, Bloomingdale's and Nordstrom's without her authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and other opportunities from these retailers, and other third persons including LexisNexis and other aggregators of data and large databases.  Specifically, Ms. Howell receives various e-mail marketing materials and mail at her address (which

she did not provide to Ski Data or the Westfield Defendants) that markets products and offerings of Gelson's, Bloomingdale's, and Nordstrom's.

60.     As a result of the improper collection, use and sharing of PII and Private Information, Plaintiff Howell has suffered emotional distress as a result of the release of her Private Information and PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud.

61.     Plaintiff Howell is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the improper and unauthorized sharing of Personal Information and PII.

62.     Plaintiff Howell suffered actual injury from having her Private Information compromised as a result of the improper use and sharing including, but not limited to (a) damage to and diminution in the value of her Private Information which is a commodity as reflected by the fact it is sold on the open market or traded for other financial consideration, a form of property that Defendant Ski Data obtained from Plaintiff Howell; (b) violation of her privacy rights; and (c) imminent and impending injury arising from the increased risk of identity theft and fraud.

63.     As a result of the improper sharing and use of the Private Information, Plaintiff Howell anticipates spending considerable time and money on an ongoing basis to try and mitigate and address harms caused by the improper sharing.  As a result of the improper sharing and use of the Private Information, Plaintiff Howell will continue to be at increased risk of identity theft and fraud for years to come.

64.     Plaintiff **Sevindzh Gasanova** is acting on her own behalf and on behalf of others similarly situated. Several times between April 16, 2019, and April 16, 2020, Ms. Gasanova entered the parking facilities for Westfield Century City Mall at 1025 Santa Monica Blvd., Los Angeles CA ("Century City Mall") and

21

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

obtained a parking invoice. Ms. Gasanova, like Ms. Howell, paid for parking services.  When Ms. Gasanova approached the exit point of the mall parking, she did not have to place the redeemed ticket in the machine, and the parking arm automatically went up. Ms. Gasanova has been advertised and marketed to without her authorization, and has had had her personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes.  When Ms. Gasanova entered the facilities, the license plate number of her vehicle is printed on the ticket in large bold, upper-case letters. Since parking tickets are often not cared for, unsuspecting drivers are leaving their receipt tickets where anybody could see them, and could do further damage if such ticket were to arrive in the hands of the wrong person. Ms. Gasanova did not provide authorization to any of the Defendants at any time. Ms. Gasanova was harmed in that she faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Gasanova has incurred out of pocket mitigation expenses concerning collection at the Century City Mall (and other malls) including the need to credit monitor and obtain credit reports, and he lost the benefit of the bargain by virtue of having her ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without his consent.

65.    Ski Data obtained and continue to maintain Plaintiff Gasanova's information which includes her name, her license plate number, her address, his travel pattern and geo-location and time of entry and exits, the time she was in a certain facility, the make of her car, photographs of her image ("Private Information") and has a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.  Plaintiff Gasanova did not

know her information was being collected.  Plaintiff Gasanova would not have entrusted her Private Information to Ski Data and the Westfield Defendants had she known of the sharing practices of her Private Information and PII with the following entities and categories of third parties: Nordstrom's (and other similar retailers), Bloomingdale's, Gelson's, LexisNexis (and/or similar aggregators of ALPR data).

66.     Plaintiff Gasanova's Private Information was compromised and disclosed as a result of the business practices of Defendant Ski Data. Plaintiff Gasanova was required to provide her Private Information and PII to Ski Data as a predicate to receiving parking services. Plaintiff Gasanova's PII and Private Information was in turn provided to an unknown third-party server to be held, used and shared.  Ms. Gasanova sustained several unauthorized charges and breaches to her credit card accounts based on, caused by Ski Data and the Westfield Defendants' unauthorized sharing of her PII.

67.     From on or about April 16, 2019 to present date, Plaintiff Gasanova's Private Information and PII including her name, address, DMV record, email address, phone number, was improperly accessed and/or obtained by unauthorized third parties.  Investigations have revealed that Ski Data's representations about what information was exposed and/or shared, is inaccurate at best. Thus, at this time, it is unclear how much Private Information of Plaintiff Gasanova's was exposed due to Ski Data's misconduct.

68.     As a result of the improper sharing practices by Ski Data and the, Plaintiff Gasanova tried to mitigate its impact, including two hours of time spent reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, and between 1 and 2 hours monitoring online banking to resolve issues related to the improper sharing by Ski Data.

69.     Plaintiff Gasanova now spends approximately two hours per month reviewing credit monitoring reports and/or checking account statements for

irregularities. To date, Plaintiff has spent at least 15-20 hours on these tasks, valuable time Plaintiff Gasanova otherwise would have spent on other activities, including but not limited to work and/or recreation. Gasanova continues to maintain credit monitoring and pay for services.

70.    Plaintiff Gasanova plans to continue purchasing credit monitoring and identity theft protection services on an ongoing basis to protect herself from identity theft and fraud.

71.    Plaintiff Gasanova's personal Information and PII was provided to Gelson's, Bloomingdale's and Nordstrom's without her authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and other opportunities from these retailers, and other third persons including LexisNexis and other aggregators of data and large databases.  Specifically, Ms. Gasanova has received advertisements from Bloomingdale's, Nordstrom's and Gelson's, all without her consent.

72.    As a result of the improper collection, use and sharing of PII and Private Information, Plaintiff Gasanova has suffered emotional distress as a result of the release of her Private Information and PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud.

73.    Plaintiff Gasanova is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the improper and unauthorized sharing of Personal Information and PII.

74.    Plaintiff Gasanova suffered actual injury from having her Private Information compromised as a result of the improper use and sharing including, but not limited to (a) damage to and diminution in the value of her Private Information which is a commodity as reflected by the fact it is sold on the open market or traded for other financial consideration, a form of property that

Defendant Ski Data obtained from Plaintiff Gasanova; (b) violation of her privacy rights; and (c) imminent and impending injury arising from the increased risk of identity theft and fraud.

75.    Moreover, subsequent to the improper sharing of her PII, Plaintiff Gasanova also experienced actual identity theft and fraud, including notification that her Private Information was found on the dark web and a significantly increased amount of suspicious, unsolicited phishing telephone calls, text messages, and/or emails.

76.    As a result of the improper sharing and use of the Private Information, Plaintiff Gasanova anticipates spending considerable time and money on an ongoing basis to try and mitigate and address harms caused by the improper sharing.  As a result of the improper sharing and use of the Private Information, Plaintiff Gasanova will continue to be at increased risk of identity theft and fraud for years to come.

77.    Plaintiff Cristian Rodriguez is acting on his own behalf and on behalf of others similarly situated. Several times between April 16, 2019, and April 16, 2020, Mr. Cristian Rodriguez entered the parking facilities at Fig at 7th Mall located at 735 S. Figueroa St., Los Angeles ("Fig at 7th Mall"). Upon entering and exiting the facility, a license plate image was taken of Mr. Rodriguez's vehicle that was then transferred into a database and could be searched by any person from several kiosks. Mr. Rodriguez has been advertised and marketed to without his authorization and has had had his personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. When Mr. Rodriguez entered the facilities, the license plate number of his vehicle is printed on the ticket in large bold, upper-case letters. Since parking tickets are often not cared for, unsuspecting drivers are leaving their receipt tickets where anybody could see them and could do further damage if such ticket were to arrive in the hands of the wrong person.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

Mr. Rodriguez did not provide authorization to any of the Defendants at any time. Mr. Rodriguez was harmed in that he faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of his ALPR data, the ALPR data has already been misused and collected without authorization, Mr. Rodriguez has incurred out of pocket mitigation expenses concerning collection at the Fig at 7th Mall (and other malls) including the need to credit monitor and obtain credit reports, and he lost the benefit of the bargain by virtue of having his ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without his consent.

78.    Park Assist and the Brookfield entities obtained and continue to maintain Plaintiff Rodriguez's information which includes his name, his license plate number, his address, his travel pattern and geo-location and time of entry and exits, the time he was in a certain facility, the make of his car, photographs of his image ("Private Information"), and has a legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff Rodriguez did not know his information was being collected. Plaintiff Rodriguez would not have entrusted his Private Information to one or more of Park Assist or the Brookfield Entities had he known of the sharing practices of his Private Information and PII with the following entities and categories of third parties: Nordstrom's (and other similar retailers), Bloomingdale's, Gelson's, LexisNexis (and/or similar aggregators of ALPR data).

79.    Plaintiff Rodriguez Private Information was compromised and disclosed as a result of the business practices of Park Assist and the Brookfield Defendants. Plaintiff Rodriguez required to provide his Private Information and PII to Park Assist and the Brookfield Defendants as a predicate to receiving

parking services. Plaintiff Rodriguez's PII and Private Information was in turn provided to an unknown third-party server to be held, used and shared.

80. From on or about April 16, 2019, to present date, Plaintiff Rodriguez's Private Information and PII including his name, address, DMV record, email address, phone number, was improperly accessed and/or obtained by unauthorized third parties.  Investigations have revealed that Park Assist and the Brookfield Entities' representations about what information was exposed and/or shared, is inaccurate at best. Thus, at this time, it is unclear how much Private Information of Plaintiff Rodriguez's was exposed due to Park Assist and the Brookfield Entities' misconduct.

81. As a result of the improper sharing practices by Park Assist and the Brookfield Entities, Plaintiff Rodriguez tried to mitigate its impact, including two hours of time spent reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, and between 1 and 2 hours monitoring online banking to resolve issues related to the improper sharing by the Brookfield Defendants and Park Assist.

82. Plaintiff Rodriguez now spends approximately two hours per month reviewing credit monitoring reports and/or checking account statements for irregularities. To date, Plaintiff has spent at least 15-20 hours on these tasks, valuable time Plaintiff Rodriguez otherwise would have spent on other activities, including but not limited to work and/or recreation. Rodriguez continues to maintain credit monitoring and pay for services.

83. Plaintiff Rodriguez plans to continue purchasing credit monitoring and identity theft protection services on an ongoing basis to protect himself from identity theft and fraud.

84. Plaintiff Rodriguez's personal Information and PII was provided to Gelson's, Bloomingdale's and Nordstrom's without his authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and

other opportunities from these retailers, and other third persons including LexisNexis and other aggregators of data and large databases.

85.    As a result of the improper collection, use and sharing of PII and Private Information, Plaintiff Rodriguez has suffered emotional distress as a result of the release of his Private Information and PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using is Private Information for purposes of identity theft and fraud.

86.    Plaintiff Rodriguez is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the improper and unauthorized sharing of Personal Information and PII.

87.    Plaintiff Rodriguez suffered actual injury from having his Private Information compromised as a result of the improper use and sharing including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Park Assist and the Brookfield Defendants obtained from Plaintiff Rodriguez; (b) violation of his privacy rights; and (c) imminent and impending injury arising from the increased risk of identity theft and fraud.

88.    Moreover, subsequent to the improper sharing of his PII, Plaintiff Rodriguez also experienced actual identity theft and fraud, including notification that his Private Information was found on the dark web and a significantly increased amount of suspicious, unsolicited phishing telephone calls, text messages, and/or emails.

89.    As a result of the improper sharing and use of the Private Information, Plaintiff Rodriguez anticipates spending considerable time and money on an ongoing basis to try and mitigate and address harms caused by the improper sharing. As a result of the improper sharing and use of the Private Information,

Plaintiff Rodriguez will continue to be at increased risk of identity theft and fraud for years to come.

90.    Plaintiff Leilani Ross is acting on her own behalf and on behalf of others similarly situated. Several times between April 16, 2019, and April 16, 2020, Ms. Ross entered the parking facilities at Fashion Valley, 7007 Friars Rd., San Diego, CA 92108 ("Fashion Valley Mall") and Westfield UTC located at 445 La Jolla Village Drive, Suite E-2, San Diego, CA 92122, and Westfield Mission Valley located at 1640 Camino del Rio N., San Diego CA. Upon entering and exiting the facilities, a license plate image was taken of Ms. Ross' vehicle that was then transferred into a database and could be searched by any person from several kiosks. Ms. Ross has been advertised and marketed to without her authorization and has had had her personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes.  When Ms. Ross entered the facilities, the license plate number of her vehicle is printed on the ticket in large bold, upper-case letters. Since parking tickets are often not cared for, unsuspecting drivers are leaving their receipt tickets where anybody could see them and could do further damage if such ticket were to arrive in the hands of the wrong person. Ms. Ross did not provide authorization to any of the Defendants at any time.  Ms. Ross was harmed in that she faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization, Ms. Ross has incurred out of pocket mitigation expenses concerning collection at the Fashion Valley Mall (and other malls) including the need to credit monitor and obtain credit reports, and he lost the benefit of the bargain by virtue of having her ALPR data used and sold to other large corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without his consent.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

91.    Ski Data and the Westfield Entities obtained and continue to maintain Plaintiff Ross' information which includes her name, her license plate number, her address, his travel pattern and geo-location and time of entry and exits, the time she was in a certain facility, the make of her car, photographs of her image ("Private Information"),  and has a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.  Plaintiff Ross did not know her information was being collected.  Plaintiff Ross would not have entrusted her Private Information to Ski Data and the Westfield entities had she known of the sharing practices of her Private Information and PII with the following entities and categories of third parties: Nordstrom's (and other similar retailers), Bloomingdale's, Macy's, LexisNexis (and/or similar aggregators of ALPR data).

92.    Plaintiff Ross' Private Information was compromised and disclosed as a result of the business practices of Ski Data and Westfield entities. Plaintiff Ross was required to provide her Private Information and PII to Ski Data and the Westfield Entities as a predicate to receiving parking services. Plaintiff Ross' PII and Private Information was in turn provided to an unknown third-party server to be held, used and shared.

93.    From on or about April 16, 2019, to present date, Plaintiff Ross' Private Information and PII including her name, address, DMV record, email address, phone number, was improperly accessed and/or obtained by unauthorized third parties.  Investigations have revealed that Ski Data's representations about what information was exposed and/or shared, is inaccurate at best. Thus, at this time, it is unclear how much Private Information of Plaintiff Ross' was exposed due to Park Assist and the Brookfield Entities' misconduct.

94.    As a result of the improper sharing practices by Ski Data and the Westfield entities, Plaintiff Ross tried to mitigate its impact, including two hours of time spent reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, and between 1 and 2 hours

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

monitoring online banking to resolve issues related to the improper sharing by Ski Data and the Westfield Entities.

95.    Plaintiff Ross now spends approximately two hours per month reviewing credit monitoring reports and/or checking account statements for irregularities. To date, Plaintiff has spent at least 15-20 hours on these tasks, valuable time Plaintiff Ross otherwise would have spent on other activities, including but not limited to work and/or recreation. Ross continues to maintain credit monitoring and pay for services.

96.    Plaintiff Ross plans to continue purchasing credit monitoring and identity theft protection services on an ongoing basis to protect herself from identity theft and fraud.

97.    Plaintiff Ross' personal Information and PII was provided to Macy's, Bloomingdale's and Nordstrom's without her authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and other opportunities from these retailers, and other third persons including LexisNexis and other aggregators of data and large databases.

98.    As a result of the improper collection, use and sharing of PII and Private Information, Plaintiff Ross has suffered emotional distress as a result of the release of her Private Information and PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud.

99.    Plaintiff Ross is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the improper and unauthorized sharing of Personal Information and PII.

100. Plaintiff Ross suffered actual injury from having her Private Information compromised as a result of the improper use and sharing including, but not limited to (a) damage to and diminution in the value of her Private

31

Information, a form of property that Park Assist and the Brookfield Entities obtained from Plaintiff Ross; (b) violation of her privacy rights; and (c) imminent and impending injury arising from the increased risk of identity theft and fraud.

101. Moreover, subsequent to the improper sharing of her PII, Plaintiff Ross also experienced actual identity theft and fraud, including notification that her Private Information was found on the dark web and a significantly increased amount of suspicious, unsolicited phishing telephone calls, text messages, and/or emails.

102. As a result of the improper sharing and use of the Private Information, Plaintiff Ross anticipates spending considerable time and money on an ongoing basis to try and mitigate and address harms caused by the improper sharing. As a result of the improper sharing and use of the Private Information, Plaintiff Ross will continue to be at increased risk of identity theft and fraud for years to come.

103. Several times between April 16, 2019, and April 16, 2020, Cristian Rodriguez entered the parking facilities at the Grove at Farmer's Market, located at 6333 W 3rd St., Los Angeles, CA 90036 ("the Grove at Farmer's Market"). Upon entering and exiting the facility, a license plate image was taken of Mr. Rodriguez's vehicle that was then transferred into a database and could be searched by any person from several kiosks. Mr. Rodriguez has been advertised and marketed to without his authorization and has had his personal data shared with a host of unauthorized third persons and entities for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes. The ALPR images taken of Plaintiffs' vehicles have been sent to federal and state law enforcement authorities without a search warrant. As late as June 8, 2019, the ALPR policy was not available on the Grove Mall's internet homepage.

104. The ALPR images/ALPR data taken of Plaintiffs' vehicles have been transmitted to state federal and state law enforcement authorities without a search

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

warrant, and other entities that sell ALPR images/ALPR data in bulk or batch transmissions, and not for legitimate purposes.

105. Plaintiffs are unaware of the true identities and capacities of fictitiously named defendants designated as Does 1-10 but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, every Doe defendant is in some manner responsible for the acts and conduct of the other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred by Plaintiffs. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all the named defendants and those unknown parties sued under fictitious names.

106. Plaintiffs are informed and believe and thereon allege that, at all times relevant hereto, all the defendants together were members of a single unincorporated association, with each member exercising control over the operations of the association. Plaintiffs are informed and believe and thereon allege that, at all times relevant hereto, each of the defendants was the agent, associate, employee and or representative of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the authorized course and scope of this agency, association and employment with the full knowledge and consent of the remaining defendants. Plaintiffs are further informed and believe and thereon allege that each and all the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

107. Plaintiffs are informed and believe and thereon allege that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this complaint. The desired effect of the

33

conspiracy was to defraud and otherwise deprive Plaintiffs of their constitutionally protected rights to property and privacy, and of their rights under other laws as set forth herein. Each of the defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiffs by the defendants as a consequence.

## PRESENTMENT

108.   Plaintiffs have complied with all administrative and substantive requirements for filing suit under the CLRA including by serving a letter via certified mail on each of the Defendants pursuant to the California Civil Code on April 17, 2020.

## GENERAL FACTUAL BACKGROUND

109.   Shopping malls and retailers, slow to catch up to the needs of consumers to be given free parking as an incentive to forgo making purchasing decisions from home, charge parking fees in some instances, even if consumers make significant purchases in shopping malls.

110.   The Westfield Century City shopping center has 20 million customers annually.

111.   In 2017, the defendants operating Westfield Century City Mall embarked on a project called "smart parking," which had not been utilized by any mall in the United States to date.

112.   To carry out smart parking, Ski Data, Westfield, and other persons, installed cameras that photograph and capture the license plate number of all drivers at the entrance and exit at Westfield Century City Mall, and in some instances, the software automatically debits the amount to be paid when leaving and sends the invoice.

[*complaint continued on next page*]

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

FIGURE NO. 1 (license plate redacted)



113.    Plaintiffs and the Class Members do not provide authorization to have their license plates photographed when they enter Westfield Mall Century City, nor is any meaningful notice even given.  *See* Figure No. 1.

114.    Plaintiffs and the Class Members do not provide authorization to have their license plates photographed when they exit Westfield Mall Century City.  *See* Figure No. 2.

115.    The Defendants connect the various cameras located at the entry and exit to their back-office computer systems.  *See* Figure No. 3.

FIGURE NO. 2



35

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

FIGURE NO. 3



116.   From the computer systems, Class Members' information is prepared, and sent to retailers and other unauthorized persons for marketing purposes, tracking purposes, data modeling, and other unauthorized purposes.

117.   From the moment one enters, the driver receives a ticket with the license plate of their vehicle printed in bold.  Such tickets can be found at kiosks or floating around in the public with drivers' license plate numbers unknowingly being disseminated in this additional manner.

118.   The Defendants proclaim through Mr. Louis Schillace, employee of Westfield, that smart parking "enables business operators to use other tools to improve their marketing activities…". *See* https://www.parking-net.com/parking-showcases/Ski Data-ag/Ski Data-make-parking-smarter-at-westfield-century-city.

119.   Further, Mr. Louis Schillace claims that smart parking enables visitors to be part of "targeted groups" and "targeted geo marketing."

120.   Those operating the Beverly Center Mall and the Galleria Mall installed M4 camera-based system.

121.   In addition to the M4 camera-based system, the Defendants utilize the full Software Suite offered by Defendant Park Assist, that includes Park Finder™, SelectRate, Surveillance, Alerts, Insights, and Reserve.

122.   To carry out smart parking at the Galleria, cameras were installed that photograph and capture the license plate number of all drivers at the entrance and exit, and in some instances, the software automatically debits the amount to be paid when leaving and sends the invoice.

123.   On or about February of 2020, the California State Auditor issued a report that state law enforcement agencies are using license plate readers without legally required oversight procedures, which could leave drivers vulnerable to a host of privacy concerns including data breaches and even blackmail.   See https://www.10news.com/news/audit-police-license-plate-readers-at-risk-for-data-breaches-misuse. (ABC News, February 13, 2020).

FIGURE NO. 4 (redacted)



CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

124. Some of Defendants' camera systems photograph cars at each parking stall such as the Glendale Galleria Mall, and Beverly Center Mall.

125. Plaintiffs and the Class Members do not provide authorization to have their license plates photographed when they enter the Malls, nor when they enter the applicable parking stall, nor when the exit the Malls.

126. Plaintiffs and the Class Members do not provide authorization to have their license plates photographed when they exit the Malls.

127. As for the Defendants that utilized technology of stall-based photography, the Defendants connect the various cameras located at each stall and/or the entry and exit point to their computer systems. (*See* Figure No. 5 and 6).

FIGURE NO. 5



CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

FIGURE NO. 6



128.   The particularly shocking and alarming aspect of the Park Assist application featured at Third Street Promenade (at some times during the class period), and the Glendale Galleria is that any time of day, any person in the public from any location can determine whether somebody is parking at the Glendale Galleria, the Third Street Promenade and the  following locations at the push of a button: Portland, Oregon airport; Nashville airport; Austin, Texas airport; Fort Lauderdale airport.

129.   Further posing problems, the visual images do not just pick up license plates, but images of vehicles, minors, adults, and other personal property.  The possible harms are endless.

130.   Figure Nos. 7 through 10 depict vehicles and locations of vehicles at the Glendale Galleria, which is available to any person utilizing the world wide web or a smart phone.

*[complaint continued on next page]*

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

FIGURE NO. 7



FIGURE NO. 8 (randomly chosen license plate)



CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

FIGURE NO. 9

**Your car location**

**Glendale Galleria**
Garage A Level 2

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

FIGURE NO. 10



CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

131. From the computer systems, Class Members' information is processed, prepared, and sent to Defendants, their retailers and other unauthorized third persons.

132. Defendant Park Assist claims that it and its affiliates "…provide parking operators with tools to improve customer satisfaction, create new revenue opportunities, realize greater operational control, capture parker analytics and expand CCTV capabilities." https://www.parking-net.com/parking-industry/park-assist.

133. Further, upon information, this parking enables visitors to be part of "targeted groups" and "targeted geo marketing" and law enforcement agencies both state, local and federal, without their knowledge.

134. From 2017 to the present, each of the named Defendants are responsible for providing some or all the following functions to persons visiting the Century City Westfield Mall, the Third Street Promenade Mall, Fig at 7th, Galleria Mall, the Grove at Farmer's Market, Beverly Center Mall, and Westfield (UTC and Mission Valley):

   a) Customer service (staff to handle collection and use of tickets, respond to calls, complaints, payment processing);

   b) Account maintenance;

   c) Payment processing;

   d) Reports;

   e) Special projects;

   f) SOP's configuration;

   g) System integration and maintenance;

   h) Program Management (a) through (h), are collectively referred to as the "Functions.")

135. From April 17, 2016 to present date, Defendants actually provided information of Class Members to other Unauthorized Parties.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

## ADDITIONAL FACTUAL BACKGROUND

**Westfield Mall**

136. Photographic images of Plaintiffs Jina Howell and Sevindzh Gasanova (and the Classes as defined below) were captured of Plaintiffs Jina Howell and Sevindzh Gasanova, their vehicle (and the Classes' vehicles) at various points of the Westfield Mall located at 1025 Santa Monica Blvd., Los Angeles CA,

137. The photographic images taken of Plaintiffs Jina Howell, Sevindzh Gasanova and the Class, were taken at entry points and exit points, and were date stamped.

138. The photographic equipment then transferred the images and underlying ALPR data to onsite servers owned and operated by Westfield, Ski Data, and other agents who assisted them.

139. Ski Data maintained a remote server which received the data from entry and exit points.

140. The images could be searched and analyzed by Westfield, Ski Data, and other agents and contractors working for them.

141. The ALPR data collected from the Westfield Mall was shared and transferred via FTP transfer (or other electronic means) to several third-party retailers including through a third party intermediate, who thereby provided ALPR data to Bloomingdale's Nordstrom's, Gelson's, and other retailers, for marketing and geo-marketing.

142. The ALPR data collected from the Westfield Mall was shared and transferred via FTP transfer (or other electronic means) to Lexis Nexis and other large data modelers, and data aggregators, and those companies that buy and sell ALPR data.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

143. The ALPR data collected from the Westfield Mall was shared and transferred via FTP transfer (or other electronic means) to other unauthorized third persons, including the department of motor vehicles all without authorization.

144. The ALPR data collected from the Westfield Mall was shared and transferred via FTP transfer (or other electronic means) to law enforcement for purposes other than pursuing illicit activity.

145. The Westfield Entities and Ski Data owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data at the Beverly Center Mall.

**Glendale Galleria Mall**

146. Photographic images of Plaintiff Alvaro Navarro (and the Classes as defined below) were captured of Plaintiff Alvaro Navarro, his vehicle (and the Classes) at various points of the Glendale Galleria Mall located at 100 W. Broadway Suite 100, Glendale, CA 91210.

147. The photographic images taken of Plaintiff Alvaro Navarro and the Class, were taken at parking stalls, entry points and exit points, and were date stamped.

148. Images and underlying ALPR data was transferred to onsite servers owned and operated by Brookfield, Park Assist, and other agents who assisted them.

149. Park Assist maintained a remote server which received the data from entry, exit points, and stall locations

150. The images could be searched and analyzed by Brookfield, Park Assist, and other agents and contractors working for them.

151. The ALPR data collected from the Glendale Galleria Mall was shared and transferred via FTP transfer (or other electronic means) to several third-party

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

retailers including Bloomingdale's Nordstrom's, Gelson's for marketing and geo-marketing.

152. The ALPR data collected from the Glendale Galleria Mall was shared and transferred via FTP transfer (or other electronic means) to Lexis Nexis and other large data modelers, and data aggregators.

153. The ALPR data collected from the Glendale Galleria Mall was shared and transferred via FTP transfer (or other electronic means) to other unauthorized third persons, including the department of motor vehicles.

154. The ALPR data collected from the Glendale Galleria Mall was shared and transferred via FTP transfer (or other electronic means) to law enforcement for purposes other than pursuing illicit activity.

155. Park Assist and the Brookfield Entities owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data at the Glendale Galleria Mall.

**Santa Monica Third Street Promenade Mall**

156. Photographic images of Plaintiff Sevindzh Gasanova (and the Classes as defined below) were captured of Plaintiff Sevindzh Gasanova, her vehicle (and the Classes) at various points of the Santa Monica Third Street Promenade Mall located at 1351 3rd Street Promenade, Santa Monica, CA 90401.

157. The photographic images taken of Plaintiff Sevindzh Gasanova and the Class, were taken at stalls, entry points and exit points, and were date stamped.

158. The photographic equipment then transferred the images and underlying ALPR data to onsite servers owned and operated by Brookfield, Park Assist, and other agents who assisted them.

159. Park Assist maintained a remote server which received the data from entry and exit points.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

160. The images could be searched and analyzed by Brookfield, Park Assist, and other agents and contractors working for them.

161. The ALPR data collected from the Santa Monica Third Street Promenade Mall was shared and transferred via FTP transfer (or other electronic means) to several third-party retailers including Bloomingdales Nordstrom's, Gelson's for marketing and geo- marketing.

162. The ALPR data collected from the Santa Monica Third Street Promenade Mall was shared and transferred via FTP transfer (or other electronic means) to Lexis Nexis and other large data modelers, and data aggregators.

163. The ALPR data collected from the Santa Monica Third Street Promenade Mall was shared and transferred via FTP transfer (or other electronic means) to other unauthorized third persons, including the department of motor vehicles.

164. The ALPR data collected from the Santa Monica Third Street Promenade Mall was shared and transferred via FTP transfer (or other electronic means) to law enforcement for purposes other than pursuing illicit activity.

165. Federal and Park Assist owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data at the Beverly Center Mall.

**Beverly Center Mall**

166. Photographic images of Plaintiff Areliz Navarro (and the Classes as defined below) were captured of Plaintiff Areliz Navarro, her vehicle (and the Classes) at various points of the Beverly Center Mall at 8500 Beverly Blvd., Los Angeles, CA 90048.

167. The photodraphic images taken of Plaintiff Areliz Navarro and the Class, were taken at stalls, entry points and exit points, and were date stamped.

168. The photographic equipment then transferred the images and underlying ALPR data to onsite servers owned and operated by Brookfield, Park Assist, and other agents who assisted them.

169. Park Assist maintained a remote server which received the data from entry and exit points.

170. The images could be searched and analyzed by Brookfield, Park Assist, and other agents and contractors working for them.

171. The ALPR data collected from the Beverly Center Mall was shared and transferred via FTP transfer (or other electronic means) to several third-party retailers including Bloomingdale's Nordstrom's, Gelson's for marketing and geo-marketing.

172. The ALPR data collected from the Beverly Center Mall was shared and transferred via FTP transfer (or other electronic means) to Lexis Nexis and other large data modelers, and data aggregators.

173. The ALPR data collected from the Beverly Center Mall was shared and transferred via FTP transfer (or other electronic means) to other unauthorized third persons, including the department of motor vehicles.

174. The ALPR data collected from the Beverly Center Mall was shared and transferred via FTP transfer (or other electronic means) to law enforcement for purposes other than pursuing illicit activity.

175. The Taubman Entities and Ski Data owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data at the Beverly Center Mall.

**Fig at 7th Mall**

176. Photographic images of Plaintiff Cristian Rodriguez (and the Classes as defined below) were captured of Plaintiff Cristian Rodriguez, his vehicle (and

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

the Classes) at various points of Fig at 7th Mall located at 735 S. Figueroa St., Los Angeles.

177.  The photographic images taken of Plaintiff Rodriguez and the Class, were taken at stalls, entry points and exit points, and were date stamped.

178.  The photographic equipment then transferred the images and underlying ALPR data to onsite servers owned and operated by Brookfield, Park Assist, and other agents who assisted them.

179.  Park Assist maintained a remote server which received the data from entry and exit points.

180.  The images could be searched and analyzed by Brookfield, Park Assist, and other agents and contractors working for them.

181.  The ALPR data collected from the Fig at 7th Mall was shared and transferred via FTP transfer (or other electronic means) to several third-party retailers including Bloomingdale's, Nordstrom's, Gelson's for marketing and geo-marketing.

182.  The ALPR data collected from the Fig at 7th Mall was shared and transferred via FTP transfer (or other electronic means) to Lexis Nexis and other large data modelers, and data aggregators.

183.  The ALPR data collected from the Fig at 7th Mall was shared and transferred via FTP transfer (or other electronic means) to other unauthorized third persons, including the department of motor vehicles.

184.  The Brookfield Entities and Park Assist owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data at the Beverly Center Mall.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

**Americana Mall**

185.   Photographic images of Plaintiff Cristian Rodriguez (and the Classes as defined below) were captured of Plaintiff Cristian Rodriguez, his vehicle (and the Classes) at various points of Grove at Farmer's Market, located at 6333 W 3rd St., Los Angeles, CA 90036.

186.   The photographic images taken of Plaintiff Rodriguez and the Class, were taken at stalls, entry points and exit points, and were date stamped.

187.   The photographic equipment then transferred the images and underlying ALPR data to onsite servers owned and operated by Brookfield, Park Assist, and other agents who assisted them.

188.   Park Assist maintained a remote server which received the data from entry and exit points.

189.   The images could be searched and analyzed by Brookfield, Park Assist, and other agents and contractors working for them.

190.   The ALPR data collected from the Americana Mall was shared and transferred via FTP transfer (or other electronic means) to several third-party retailers including Bloomingdales, Nordstrom's, Gelson's for marketing and geo-marketing.

191.   The ALPR data collected from the Americana Mall was shared and transferred via FTP transfer (or other electronic means) to Lexis Nexis and other large data modelers, and data aggregators.

192.   The ALPR data collected from the Americana Mall was shared and transferred via FTP transfer (or other electronic means) to other unauthorized third persons, including the department of motor vehicles.

193.   The Brookfield Entities and Park Assist owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

images of registration plates and the characters they contain into computer-readable data at the Beverly Center Mall.

**Fashion Valley Mall**

194. Photographic images of Plaintiff Leilani Ross (and the Classes as defined below) were captured of Plaintiff Leilani Ross, her vehicle (and the Classes) at various points of the Fashion Valley Mall, 7007 Friars Rd., San Diego, CA 92108.

195. The photographic images taken of Plaintiff Ross and the Class, were taken at stalls, entry points and exit points, and were date stamped.

196. The photographic equipment then transferred the images and underlying ALPR data to onsite servers owned and operated by Brookfield, Park Assist, and other agents who assisted them.

197. Park Assist maintained a remote server which received the data from entry and exit points.

198. The images could be searched and analyzed by Brookfield, Park Assist, and other agents and contractors working for them.

199. The ALPR data collected from the Fashion Valley Mall was shared and transferred via FTP transfer (or other electronic means) to several third-party retailers including Bloomingdales Nordstrom's, Macy's for marketing and geo-marketing.

200. The ALPR data collected from the Fashion Valley Mall was shared and transferred via FTP transfer (or other electronic means) to Lexis Nexis and other large data modelers, and data aggregators.

201. The ALPR data collected from the Fashion Valley Mall was shared and transferred via FTP transfer (or other electronic means) to other unauthorized third persons, including the department of motor vehicles.

202. Simon, Westfield, and Ski Data owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data at the Beverly Center Mall.

## CLASS ACTION ALLEGATIONS

203.   Plaintiffs bring this action on behalf of themselves, and all others similarly situated, pursuant to pursuant to Fed. R. Civ. Proc. 23(a), 23(b), 23(c)(4), and 23(c)(5).

204.   The proposed classes consist of the following:

### Westfield Mall Subclasses

- All California residents who had their license plate photographed at the Westfield Mall by the Westfield Defendants, Ski Data, or Schafner between April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Westfield Defendants, Ski Data, or Schafner to their retailers including Gelson's, Bloomingdale's, Nordstrom's, or any other entity for marketing purposes from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Westfield Defendants, Ski Data, or Schafner to LexisNexis or any other entity that aggregates or purchases data, and does data modeling, from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Westfield Defendants, Ski Data, or Schafner to any other person who did not receive consent from April 17, 2016, to present date;

### Glendale Galleria Mall Subclasses

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

- All California residents who had their license plate photographed at the Glendale Galleria Mall by the Brookfield Defendants and/or Park Assist between April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Glendale Galleria Mall, Brookfield Defendants and/or Park Assist to their retailers including Gelson's, Bloomingdale's, Nordstrom's, or any other entity for marketing purposes from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Glendale Galleria Mall by the Brookfield Defendants and/or Park Assist to LexisNexis or any other entity that aggregates or purchases data, and does data modeling, from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Glendale Galleria Mall by the Brookfield Defendants and/or Park Assist to any other person who did not receive consent from April 17, 2016, to present date;

**Santa Monica Third Street Promenade Mall Subclasses**

- All California residents who had their license plate photographed at the Santa Monica Third Street Promenade Mall by the Federal Realty Investment Trust and/or Park Assist between April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Federal Realty Investment Trust and/or Park Assist to their retailers including Gelson's, Bloomingdale's, Nordstrom's, or any other entity for marketing purposes from April 17, 2016, to present date;

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

- All California residents who had their license plate, or any of their data, sent by the Federal Realty Investment Trust and/or Park Assist to LexisNexis or any other entity that aggregates or purchases data, and does data modeling, from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Federal Realty Investment Trust and/or Park Assist to any other person who did not receive consent from April 17, 2016, to present date;

### Beverly Center Mall

- All California residents who had their license plate photographed at the Beverly Center Mall by the Taubman Entities or Ski Data between April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Taubman Entities or Ski Data to their retailers including Gelson's, Bloomingdale's, Nordstrom's, or any other entity for marketing purposes from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Taubman Entities or Ski Data to LexisNexis or any other entity that aggregates or purchases data, and does data modeling, from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Taubman Entities or Ski Data to any other person who did not receive consent from April 17, 2016, to present date;

### Fig at 7th Mall

- All California residents who had their license plate photographed at the Fig at 7th Mall by the Brookfield Defendants and/or Park Assist between April 17, 2016, to present date;

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

- All California residents who had their license plate, or any of their data, sent by the Brookfield Defendants and/or Park Assist to their retailers including Gelson's, Bloomingdale's, Nordstrom's, or any other entity for marketing purposes from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Brookfield Defendants and/or Park Assist to LexisNexis or any other entity that aggregates or purchases data, and does data modeling, from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Brookfield Defendants and/or Park Assist to any other person who did not receive consent from April 17, 2016, to present date;

### Americana Mall

- All California residents who had their license plate photographed at the Americana Mall by the Caruso Entities or Park Assist between April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Caruso Entities or Park Assist to their retailers including Gelson's, Bloomingdale's, Nordstrom's, or any other entity for marketing purposes from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Caruso Entities or Park Assist to LexisNexis or any other entity that aggregates or purchases data, and does data modeling, from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Caruso Entities or Park Assist to any other person who did not receive consent from April 17, 2016, to present date;

## Fashion Valley Mall

- All California residents who had their license plate photographed at the Fashion Valley Mall by the Simon Property Group, Inc., and Simon Property Group, L.P., Westfield, Park Assist, or Ski Data between April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Simon Property Group, Inc., and Simon Property Group, L.P. Westfield, Park Assist, or Ski Data to their retailers including Macy's, Bloomingdale's, Nordstrom's, or any other entity for marketing purposes from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Simon Property Group, Inc., and Simon Property Group, L.P., Ski Data, or Park Assist to LexisNexis or any other entity that aggregates or purchases data, and does data modeling, from April 17, 2016, to present date;

- All California residents who had their license plate, or any of their data, sent by the Simon Property Group, Inc., and Simon Property Group, L.P., Ski Data, or Park Assist to any other person who did not receive consent from April 17, 2016, to present date;

205. This action is properly brought as a class action for the following reasons:

    a) The proposed class is so numerous that the joinder of all Class Members is impracticable. While Plaintiffs do not know the exact number and identity of all Class Members, Plaintiffs are informed and believe that there are hundreds of thousands (if not millions) of Class Members. The precise number of Class Members can be ascertained through discovery, which will include Defendants' business records;

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

b) The disposition of Plaintiffs' and the Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

c) The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

d) There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

1) Whether Defendants captured images of Plaintiffs and Class Members without authorization;

2) Whether Defendants transmitted or sold personally identifiable information as a practice, policy, or pattern including, but not limited to, as part and parcel of their functions for individuals parking at the mall;

3) Whether Defendants violated California's Unfair Competition Law, Business & Professions Code §§17200, *et seq.* ("UCL");

4) Whether Defendants violated California's Consumer Legal Remedies Act, Civil Code §§1750, *et seq.* ("CLRA");

5) Whether Defendants have received funds from Plaintiffs and Class Members that they unjustly received;

6) Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

57

7) Whether Plaintiffs and Class Members are entitled to an award of punitive damages, attorneys' fees, and expenses against Defendants; and

8) Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to equitable relief, and if so, the nature of such relief.

e) Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

f) Plaintiffs will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed Class Members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel;

g) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

1) Given the size of Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

2) This action will promote an orderly and expeditious administration and adjudication of the proposed class

58

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

claims, and economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

3) Absent class certification of Plaintiffs' claims, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of its wrongful conduct; and

4) Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

206. Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

207. Injunctive relief is appropriate under Federal Rule of Civil Procedure 23(b)(2). Each of the Defendants have failed to take actions to safeguard Plaintiffs' and class members' Private Information such that injunctive relief is appropriate and necessary. Defendants have acted on grounds that apply generally to the Class (and Subclasses) as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

208. Issue certification is appropriate under Federal Rule of Civil Procedure 23(c)(4). In the alternative, this litigation can be brought and maintained a class action with respect to particular issues, such as each of Defendants' liability with respect to the foregoing causes of action.

209. Plaintiffs seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

## COUNTS

### COUNT I

### VIOLATION OF CALIFORNIA CIVIL CODE § 1798.90.54

### (Unauthorized Access of ALPR Information)

(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants, Including Does 1-10)

210.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

211.   Plaintiff Alvaro Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

212.   Plaintiff Areliz Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

213.   Plaintiff Howell is a natural person, and thus, an "individual" pursuant to § 1798.90.54.

214.   Plaintiff Gasanova is a natural person and thus, an "individual" pursuant to § 1798.90.54.

215.   Plaintiff Rodriguez is a natural person and thus, an "individual" pursuant to § 1798.90.54.

216.   Plaintiff Ross is a natural person and thus, an "individual" pursuant to § 1798.90.54.

217.   Defendant Westfield is a "person" pursuant to §1798.90.5(e) because it and those that it is a comprised of are each a "corporation," "partnership" or "limited liability company."

218.   Defendant Ski Data, Inc. is a "person" pursuant to §1798.90.5(e) because it is a "corporation."

219.   Defendant Sentry is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

220. Stefan Schafner is a "natural person" pursuant to §1798.90.5(e) because he is an individual who lists an address in Thousand Oaks, California.

221. Westfield, LLC is a "person" pursuant to §1798.90.5(e) because it is a "corporation."

222. Defendant Park Assist is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

223. Defendant Federal is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

224. Defendant Brookfield is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

225. Defendant Taubman is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

226. Defendant Caruso is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

227. Defendant Westfield accessed "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and in fact, Westfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data, all located at the Westfield Century City Mall.

228. Defendant Ski Data, Inc. accessed "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Ski Data owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall.

229. Defendant Sentry accessed "ALPR information" pursuant to §1798.90.5 because it collected Personal Information of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Sentry owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall.

230. Stefan Schafner accessed "ALPR information" pursuant to §1798.90.5 because he collected Personal Information or data through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Stefan Schafner owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall.

231. Defendant Park Assist accessed "ALPR information" pursuant to §1798.90.5 because it collected information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and the 5th Street Promenade Mall, and in fact, Park Assist owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and the 5th Street Promenade Mall.

232. Defendant Federal accessed "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

Classes through the use of an "ALPR system" at the 5th Street Promenade Mall, and in fact, Federal owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the 5th Street Promenade Mall.

233. Defendant Brookfield accessed "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and Fig at 7th Mall, and in fact, Brookfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and Fig at 7th Mall.

234. Defendant Taubman accessed "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Beverly Center, and in fact, Taubman owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall.

235. Defendant Caruso accessed "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Grove Mall, and in fact, Caruso owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at Grove Mall.

236. The legislature may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Transunion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

237. The California legislature has defined as "harm," "…including, but not limited to, unauthorized access or use of ALPR information…" pursuant to § 1798.90.54(a).

238. Plaintiff Alvaro Navarro (and the Classes) did not give any of the Defendants "authorization" to access ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

239. Plaintiff Areliz Navarro (and the Classes) did not give any of the Defendants "authorization" to access ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

240. Plaintiff Howell (and the Classes) did not give any of the Defendants "authorization" to access ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

241. Plaintiff Gasanova (and the Classes) did not give any of the Defendants "authorization" to access ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

242. Plaintiff Rodriguez (and the Classes) did not give any of the Defendants "authorization" to access ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

243. Plaintiff Ross (and the Classes) did not give any of the Defendants "authorization" to access ALPR information pursuant to § 1798.90.54(a), and thus harmed Plaintiffs.

244. Plaintiffs were also "harmed" for the independent reasons and bases incorporated herein and stated at ¶¶25-104. Specifically, Plaintiffs paid money for credit monitoring, some of them sustained breaches to their accounts and credit cards as a result of Defendants conduct as specifically alleged, the value of their

PII was diminished, informational value of damages, the use of PII in the case of Mr. Navarro to track is whereabouts, and other harms as pled. Each of Defendants' conduct was knowing, in that each of Defendants knowingly accessed ALPR information without authorization.

245. Each of Defendants' conduct was willful and/or reckless in that Defendants accessed ALPR information without authorization.

246. None of the Defendants are "law enforcement," "transportation agencies," or those who received data "pursuant to Section 2721 of Title 18." §1798.90.5(a)(1), (a)(2), and (a)(3).

247. Pursuant to §1798.90.54(a), Plaintiffs are entitled to, and request "any other sanctions, penalties, or remedies provided by law," and request pursuant to §1798.90.54(b) "a combination of any one or more of the following: (1) actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500). (2) Punitive damages upon proof of willful or reckless disregard of the law. (3) Reasonable attorney's fees and other litigation costs reasonably incurred. (4) Other preliminary and equitable relief as the court determines to be appropriate."

## COUNT II

## VIOLATION OF CALIFORNIA CIVIL CODE § 1798.90.54

## (Unauthorized Use of ALPR Information)

248. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

249. Plaintiff Alvaro Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

250. Plaintiff Areliz Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

251. Plaintiff Howell is a natural person, and thus, an "individual" pursuant to § 1798.90.54.

65

252. Plaintiff Gasanova is a natural person and thus, an "individual" pursuant to § 1798.90.54.

253. Plaintiff Rodriguez is a natural person and thus, an "individual" pursuant to § 1798.90.54.

254. Plaintiff Ross is a natural person and thus, an "individual" pursuant to § 1798.90.54.

255. Defendant Westfield is a "person" pursuant to §1798.90.5(e) because it and those that it is a comprised of are each a "corporation," "partnership" or "limited liability company."

256. Defendant Ski Data, Inc. is a "person" pursuant to §1798.90.5(e) because it is a "corporation."

257. Defendant Sentry is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

258. Stefan Schafner is a "natural person" pursuant to §1798.90.5(e) because he is an individual who lists an address in Thousand Oaks, California.

259. Westfield, LLC is a "person" pursuant to §1798.90.5(e) because it is a "corporation."

260. Defendant Park Assist is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

261. Defendant Federal is a "person" pursuant to §1798.90.5(e) because it is a Delaware Corporation.

262. Defendant Brookfield is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

263. Defendant Taubman is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

264. Defendant Caruso is a "person" pursuant to §1798.90.5(e) because it is a privately organized series of entities.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

265. Defendant Westfield used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and in fact, Westfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data, all located at the Westfield Century City Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

266. Defendant Ski Data, Inc. used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Ski Data owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's and other parties as pled.

267. Defendant Sentry used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Sentry owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras

combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

268. Stefan Schafner used "ALPR information" pursuant to §1798.90.5 because he collected Personal Information or data through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Stefan Schafner owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

269. Defendant Park Assist used "ALPR information" pursuant to §1798.90.5 because it collected information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and the 5th Street Promenade Mall, and in fact, Park Assist owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and the 5th Street Promenade Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties

including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

270.   Defendant Federal used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the 5th Street Promenade Mall, and in fact, Federal owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the 5th Street Promenade Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

271.   Defendant Brookfield used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and Fig at 7th Mall, and in fact, Brookfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and Fig at 7th Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

272.   Defendant Taubman used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Beverly Center, and in fact, Taubman owned or operated a searchable computerized database resulting from

the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's and other parties as pled.

273. Defendant Caruso used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Grove Mall, and in fact, Caruso owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at Grove Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

274. The legislature may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Transunion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

275. The California legislature has defined as "harm," "…including, but not limited to, unauthorized access or use of ALPR information…" pursuant to § 1798.90.54(a).

276. Plaintiff Alvaro Navarro (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

277.   Plaintiff Areliz Navarro (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

278.   Plaintiff Howell (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

279.   Plaintiff Gasanova (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

280.   Plaintiff Rodriguez (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

281.   Plaintiff Ross (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

282.   Plaintiffs were also "harmed" for the independent reasons and bases incorporated herein and stated at ¶¶25-104.

283.   None of the Defendants are "law enforcement," "transportation agencies," or those who received data "pursuant to Section 2721 of Title 18." §1798.90.5(a)(1), (a)(2), and (a)(3).

284.   Each of Defendants' conduct was knowing, in that each of Defendants knowingly used ALPR information without authorization.

285.   Each of Defendants' conduct was willful and/or reckless in that Defendants used ALPR information without authorization.

286.   Pursuant to §1798.90.54(a), Plaintiffs are entitled to, and request "any other sanctions, penalties, or remedies provided by law," and request pursuant to §1798.90.54(b) "a combination of any one or more of the following: (1) actual damages, but not less than liquidated damages in the amount of two thousand five

hundred dollars ($2,500). (2) Punitive damages upon proof of willful or reckless disregard of the law. (3) Reasonable attorney's fees and other litigation costs reasonably incurred. (4) Other preliminary and equitable relief as the court determines to be appropriate."

## COUNT III

## VIOLATION OF CALIFORNIA CIVIL CODE § 1798.90.51(a)

## (Failure to Maintain Reasonable Practices to Protect unauthorized access and use)

287. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

288. Pursuant to § 1798.90.51(a), an ALPR operator "shall do all of the following: (a) [m]aintain reasonable security procedures and practices… to protect ALPR information from unauthorized access, destruction, use modification, or disclosure."

289. Plaintiff Alvaro Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

290. Plaintiff Areliz Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

291. Plaintiff Howell is a natural person, and thus, an "individual" pursuant to § 1798.90.54.

292. Plaintiff Gasanova is a natural person and thus, an "individual" pursuant to § 1798.90.54.

293. Plaintiff Rodriguez is a natural person and thus, an "individual" pursuant to § 1798.90.54.

294. Plaintiff Ross is a natural person and thus, an "individual" pursuant to § 1798.90.54.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

295. Defendant Westfield is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

296. Defendant Ski Data, Inc. is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

297. Defendant Sentry is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" and have some "participation" in an ALPR system, and thus, is an "operator."

298. Stefan Schafner an "ALPR Operator" pursuant to §1798.90.5(c) because he is "involved" or has some "participation" in an ALPR system, and thus, is an "operator."

299. Westfield, LLC is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

300. Defendant Park Assist is "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

301. Defendant Westfield used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and in fact, Westfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data, all located at the Westfield Century City Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data,

and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

302. Defendant Ski Data, Inc. used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Ski Data owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's and other parties as pled.

303. Defendant Sentry used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Sentry owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

304. Stefan Schafner used "ALPR information" pursuant to §1798.90.5 because he collected Personal Information or data through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

fact, Stefan Schafner owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

305.  Defendant Park Assist used "ALPR information" pursuant to §1798.90.5 because it collected information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and the 5th Street Promenade Mall, and in fact, Park Assist owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and the 5th Street Promenade Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

306.  Defendant Federal used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the 5th Street Promenade Mall, and in fact, Federal owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the 5th Street Promenade Mall.  The ALPR Information was "used" because it was shared with various retail entities,

data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

307. Defendant Brookfield used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and Fig at 7th Mall, and in fact, Brookfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and Fig at 7th Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

308. Defendant Taubman used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Beverly Center, and in fact, Taubman owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's and other parties as pled.

309.  Defendant Caruso used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Grove Mall, and in fact, Caruso owned

or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at Grove Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.

310. The legislature may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Transunion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

311. The California legislature has defined as "harm," "…including, but not limited to, unauthorized access or use of ALPR information…" pursuant to § 1798.90.54(a).

312. Plaintiff Alvaro Navarro (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

313. Plaintiff Areliz Navarro (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

314. Plaintiff Howell (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

315. Plaintiff Gasanova (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

316. Plaintiff Rodriguez (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

317.   Plaintiff Ross (and the Classes) did not give any of the Defendants "authorization" to use ALPR information pursuant to § 1798.90.54(a), and thus, harmed Plaintiffs.

318.   Plaintiffs were also "harmed" for the independent reasons and bases incorporated herein and stated at ¶¶25-104.

319.   None of the Defendants are "law enforcement," "transportation agencies," or those who received data "pursuant to Section 2721 of Title 18." §1798.90.5(a)(1), (a)(2), and (a)(3).

320.   Each of Defendants' conduct was knowing, in that each of Defendants knowingly used ALPR information without authorization.

321.   Each of Defendants' conduct was willful and/or reckless in that Defendants used ALPR information without authorization.

322.   Pursuant to §1798.90.54(a), Plaintiffs are entitled to, and request "any other sanctions, penalties, or remedies provided by law," and request pursuant to §1798.90.54(b) "a combination of any one or more of the following: (1) actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500). (2) Punitive damages upon proof of willful or reckless disregard of the law. (3) Reasonable attorney's fees and other litigation costs reasonably incurred. (4) Other preliminary and equitable relief as the court determines to be appropriate."

**COUNT IV**

**VIOLATION OF CALIFORNIA CIVIL CODE §§ 1798.90.51(b); 1798.90.52**

**(Failure to Implement Code Compliant Privacy Policy and maintain a record)**

323.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

324.   Pursuant to § 1798.90.51(b)(1), an ALPR operator shall:

78

(b)(1)  Implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties.   The usage and privacy policy shall be available to the public in writing, and, if the ALPR operator has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.

(2)  The usage and privacy policy shall, at a minimum, include all of the following:

(A) The authorized purposes for using the ALPR system and collecting ALPR information.

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information.   The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(E)  The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(G) The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

325. Each of the named Defendants did not maintain a "record of access" in violation of §1798.90.52, nor did they require that ALPR information only be used for the authorized purposes described in the usage and privacy policy.

326. Plaintiff Alvaro Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

327. Plaintiff Areliz Navarro is a natural person and thus, an "individual" pursuant to § 1798.90.54.

328. Plaintiff Howell is a natural person, and thus, an "individual" pursuant to § 1798.90.54.

329. Plaintiff Gasanova is a natural person and thus, an "individual" pursuant to § 1798.90.54.

330. Plaintiff Rodriguez is a natural person and thus, an "individual" pursuant to § 1798.90.54.

331. Plaintiff Ross is a natural person and thus, an "individual" pursuant to § 1798.90.54.

332. Defendant Westfield is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

333. Defendant Ski Data, Inc. is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

334. Defendant Sentry is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" and have some "participation" in an ALPR system, and thus, is an "operator."

335. Stefan Schafner an "ALPR Operator" pursuant to §1798.90.5(c) because he is "involved" or has some "participation" in an ALPR system, and thus, is an "operator."

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

336.  Westfield, LLC is an "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

337.  Defendant Park Assist is "ALPR Operator" pursuant to §1798.90.5(c) because it and those that it is a comprised of are "involved" or have some "participation" in an ALPR system, and thus, is an "operator."

338.  Defendant Westfield used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and in fact, Westfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data, all located at the Westfield Century City Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled.  Westfield does not have a policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

339.  Defendant Ski Data, Inc. used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Ski Data owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's and other parties as pled. Ski Data does not have a policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

340. Defendant Sentry used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information of Plaintiffs and the Classes through the use of an "ALPR system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Sentry owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled. Sentry does not have a policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

341. Stefan Schafner used "ALPR information" pursuant to §1798.90.5 because he collected Personal Information or data through the use of an "ALPR

system" at the Westfield Century City Mall and the Beverly Center Mall, and in fact, Stefan Schafner owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Westfield Century City Mall and the Beverly Center Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled. Schafner does not have a policy compliant with each element of § 1798.90.51(b)(1), in that he fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

342. Defendant Park Assist used "ALPR information" pursuant to §1798.90.5 because it collected information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and the 5th Street Promenade Mall, and in fact, Park Assist owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and the 5th Street Promenade Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled. Park Assist does not have a policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as

pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

343. Defendant Federal used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the 5th Street Promenade Mall, and in fact, Federal owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the 5th Street Promenade Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled. Federal does not have a policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

344. Defendant Brookfield used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Galleria Mall and Fig at 7th Mall, and in fact, Brookfield owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall and Fig at 7th Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled. Brookfield does not have a

84

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

345. Defendant Taubman used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Beverly Center, and in fact, Taubman owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at the Galleria Mall.  The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's and other parties as pled.  Taubman does not have a policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

346. Defendant Caruso used "ALPR information" pursuant to §1798.90.5 because it collected Personal Information or data of Plaintiffs and the Classes through the use of an "ALPR system" at the Grove Mall, and in fact, Caruso owned or operated a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data located at Grove Mall. The ALPR Information was "used" because it was shared with various retail entities, data modelers, those companies

who traffic in ALPR data, and other unknown parties including Nordstrom's, Gelson's, Macy's, Bloomingdale's, and other parties as pled. Caruso does not have a policy compliant with each element of § 1798.90.51(b)(1), in that it fails to ensure or disclose use and sharing of ALPR information consistent with respect for individuals' privacy and civil liberties as pled herein and does not disclose the authorization necessary to obtain access, nor properly disclose the persons whom ALPR information is shared with.

347. Plaintiffs were also "harmed" for the independent reasons and bases incorporated herein and stated at ¶¶25-104.

348. None of the Defendants are "law enforcement," "transportation agencies," or those who received data "pursuant to Section 2721 of Title 18." §1798.90.5(a)(1), (a)(2), and (a)(3).

349. Each of Defendants' conduct was knowing, in that each of Defendants knowingly used ALPR information without authorization, and without a code compliant policy.

350. Each of Defendants' conduct was willful and/or reckless in that Defendants used ALPR information without authorization, and without a code compliant policy.

351. Pursuant to §1798.90.54(a), Plaintiffs are entitled to, and request "any other sanctions, penalties, or remedies provided by law," and request pursuant to §1798.90.54(b) "a combination of any one or more of the following: (1) actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500). (2) Punitive damages upon proof of willful or reckless disregard of the law. (3) Reasonable attorney's fees and other litigation costs reasonably incurred. (4) Other preliminary and equitable relief as the court determines to be appropriate."

## COUNT V

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,

## CIVIL CODE §§1750, *ET SEQ.*

(Asserted by Plaintiffs and the Class against all Defendants, including DOES 1-10)

352.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint

353.   Plaintiff Alvaro Navarro is a natural person and a consumer of parking services at the Malls.

354.   Plaintiff Areliz Navarro is a natural person and a consumer of parking services at the Malls.

355.   Plaintiff Howell is a natural person and a consumer of parking services at the Malls.

356.   Plaintiff Gasanova is a natural person and a consumer of parking services at the Malls.

357.   Plaintiff Rodriguez is a natural person and a consumer of parking services at the Malls.

358.   Plaintiff Ross is a natural person and a consumer of parking services at the Malls.

359.   Defendants Ski Data, Inc., Stefan Schafner, Westfield, LLC, Westfield Property Management, LLC, Sentry Control Systems, LLC, Park Assist, LLC, Federal Realty Investment Trust, Brookfield Properties Retail, Inc. dba Brookfield Properties Retail Group, Brookfield Property Reit, Inc., Glendale I Mall Associates, LP, and GGP-Glendale, LLC, Taubman Centers, Inc., Taubman Realty Group Limited Partnership, Taubman Company, LLC, Park Assist, LLC, Federal Realty Investment Trust, Caruso Affiliated Holdings, LLC, are each a

"person" as defined by Civil Code §1761(c). Plaintiffs and the Class Members are each a consumer within the meaning of Civil Code §1761(d).

360. The CLRA applies to Defendants' conduct because it extends to transactions that are intended to result in the sale or lease of goods or services to consumers or do result in such sales or leases.

361. The use of the parking places is a service in that a ticket is issued giving a person a right to use a space which will be credited when money is placed in an account.

362. The harm and injury to Plaintiffs is of a personal nature because privacy is an inherently personal right and impacts personal liberty and has a measurable value. Plaintiffs also had to pay for parking as pled above.

363. Defendants had a duty to truthfully disclose to parking users how they truly intended to operate the smart parking: by improperly disclosing personally identifiable information of Plaintiffs and the Class Members to others. Defendants failed to disclose this fact to parking users and subscribers including Plaintiffs. Defendants had a duty to not send ALPR information to third parties for the purposes of sending marketing and advertising materials to Plaintiffs without their authorization, to perform other data harvesting and modeling, and to use Plaintiffs' information for other marketing and data purposes. Defendants had a duty to not capture photographs of the Plaintiffs' and Class members' license plate images without consent.

364. Defendants had exclusive knowledge of material facts not known to Plaintiffs and the Class Members. Specifically, the Defendants operate the Malls in a manner that unjustly enriches Defendants by using and discloses ALPR information of Plaintiffs and the Class Members contrary to law and for improper purposes. Defendants, however, actively concealed these material facts and did not provide Plaintiffs or the Class Members proper notice of their actual intentions for use and disclosure of Plaintiffs' or Class Members' ALPR information.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

365.    The facts, which Defendants misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiffs' and the Class Members' decisions about whether to use the parking facilities (when such use was known) and pay invoices rendered by or for Defendants. Defendants are liable under the CLRA for these material misrepresentations and omissions.

366.    Additionally, by their conduct described in this Complaint, Defendants have violated Civil Code §1770(a)(5), (7), (9), (14), (16) and (19).

367.    Defendants had a duty to disclose the omitted facts because they had exclusive knowledge of material facts not known to Plaintiffs and the Class Members (that they were sharing ALPR in violation of the law), because they actively concealed material facts, and because they did not provide Plaintiffs and the Class Members proper notice of the illegal and improper sharing of ALPR information, and because they otherwise suppressed true material facts.

368.    Under Civil Code §1780, Plaintiffs and the Class Members seek appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages, and any other relief the Court deems proper.

369.    Here, in addition to the statutory obligation creating a duty not to improperly share PII, Plaintiffs as drivers who parked in the parking facilities, and who entrusted their movements and information to the Defendants, were in a special relationship with the Defendants. Therefore, the economic loss rule does not bar Plaintiffs' negligence claim.

370.    Plaintiffs were damaged in an amount according to proof at the time of trial.  Specifically, Plaintiffs have pled entitled to damages for the independent reasons and bases incorporated herein, and stated at ¶¶25-104.  Plaintiffs suffered the damages pled in ¶¶25-104.  Plaintiffs also sustained damages based on paying for parking.

371.    Additionally, any of the Class Members that are senior citizens or disabled persons, as defined in Civil Code §§ 1780(b)(1) and 1781(f) and (g), may seek and be awarded up to an additional $5,000 for physical, emotional, or economic damage.

## COUNT VI

## VIOLATION OF THE UNFAIR COMPETITION LAW,

## BUS. & PROF. CODE §§17200, *ET SEQ.*

(Asserted by Plaintiffs and the Class against all Defendants and DOES 1-10)

372.    Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

373.    Defendants have engaged in a pattern and practice of acts of unfair competition in violation of the California's UCL, including the practices alleged herein.

374.    By capturing license plate images without authorization and improperly providing the Plaintiffs' and other Class Members' ALPR information to third parties in violation of California Consumer Legal Remedies Act, Civil Code §§1750, the Defendants engaged in "unlawful, unfair or fraudulent business acts or practices."  Such acts were done and performed in order to collect information for the purpose of sending marketing and advertising materials to Plaintiffs without their authorization, to perform other data harvesting and modeling, and to use Plaintiffs' information for other marketing, tracking, and data purposes. Defendants committed and continues to commit and engage in "unlawful, unfair or fraudulent business acts or practices" as defined in Bus. & Prof. Code §§17200, *et seq*.

375.    Business & Professions Code §17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

unfair competition, and Bus. & Prof. Code §17203 provides that a court may grant injunctive and equitable relief to such persons.  Specifically, there is a market for ALPR data from which several large corporations' profit and trade.  Defendants' unlawful collection and use of the ALPR data has diluted the value of the ALPR data.

376.   The unlawful conduct of Defendants, alleged herein, are acts of unfair competition under Bus. & Prof. Code §§17200, et seq., for which Defendants are liable and for which this Court should issue equitable and injunctive relief, including restitution, pursuant to Bus. & Prof. Code §17203.

377.   Through their conduct, Defendants have engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendants' use of such unfair business practices constitutes unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

378.   Defendants' conduct as alleged herein is unlawful, unfair, and fraudulent.

379.   Defendants' conduct as alleged herein is "unlawful" in that, among other things, it violates the duties they owe to Plaintiffs and the Class Members under California Consumer Legal Remedies Act, Civil Code §§1750 and the CLRA.

380.   Defendants' conduct as alleged herein is also "unfair" because, among other things, it was designed to deprive Plaintiffs and the Class Members of their constitutionally protected rights and their property for less than adequate consideration.

381.   Defendants' scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead. Defendants had actual knowledge of the illicit and reckless plans they possessed and concealed from Plaintiffs and the Class Members to obtain and misuse their personal and private information.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

Defendant Conduent has continued to take steps to perpetuate these deceitful practices against the Plaintiffs and the Class Members, and other members of the public at large.

382.   Unless enjoined, Defendants will continue to harm the Plaintiffs, the other Class Members, and the general public. Plaintiffs and the Class Members have suffered injuries in fact as a result of Defendants' conduct, as more specifically alleged above.

383.   The capture and use of a person's private information invades concrete interests" and thus, confers injury in fact standing.  In addition, here there was (1) risk of future identity theft in the manner by which the information was used and how license plate images were printed on each invoice, (2) there was a loss of value of PII, (3) the PII has already been misused, (4) that Plaintiffs have paid out of pocket mitigation expenses in credit monitoring, and (5) each of the Plaintiffs lost the benefit of the bargain.

384.   Each of the Plaintiffs were injured by Defendants' improper dissemination of his/her ALPR information. The unlawful disclosure of protected information pursuant to Section 1798, and the statutory damages attendant thereto, constitutes a clear de facto injury.  Plaintiffs were injured in that their ALPR information was provided in a host of scenarios. Finally, Plaintiffs were injured in that, sooner or later, their ALPR information will be misused in that other third parties will use such ALPR to market to him, data mine, model, sell to him/her or others, or track his/her locations, or misuse his/her ALPR in other ways.

385.   As a result of Defendants' unfair business practices, they have reaped unfair benefits and illegal profits at the expense of the Plaintiffs and the Class Members. Defendants should be made to disgorge its ill-gotten gains and restore such monies to Plaintiff and the Class Members. Defendants' unfair business practices furthermore entitle Plaintiff and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders

that Defendants cease its complained-of practices and account for, disgorge, and restore to Plaintiffs and the Class Members the compensation unlawfully obtained from them.

386. The Defendants' improper collection, use, and dissemination of the ALPR data forms the basis for restitutionary disgorgement of any sales revenues and/or profit derived from sale/access/rental/sharing of the data, and/or disgorgement of revenues shared, or equipment consulting fees, or fees from the parking based on sharing or profiting from the ALPR data.

387. Plaintiffs are persons who suffered injury in fact and have lost money or property as a result of Defendants unfair competition. Specifically, Plaintiffs have pled their injuries for the independent reasons and bases incorporated herein, and stated at ¶¶25-104. Plaintiffs sustained injuries as identified in ¶¶25-104. Plaintiffs also sustained damages based on having to pay for parking pursuant to the applicable transactions referenced.

## COUNT VII

## NEGLIGENCE, INCLUDING NEGLIGENCE *PER SE*

(By Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants, and DOES 1-10)

388. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

389. Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable and ordinary care in their own actions so as not to create an unreasonable risk of injury to them. That duty arose generally, as well as from, among other things, state, and local laws, ordinances and regulations that require Defendants to operate the parking facilities in a manner that does not damage the public. These laws include but are not limited to the above cited privacy and consumer protection statutes.

390. Defendants have engaged in a pattern and practice of acts of unfair competition in violation of California's UCL, including the practices alleged herein.

391. Defendants breached their duty to Plaintiffs and the Class, by among other things, failing to collect, maintain, and disseminate ALPR information in accordance with the above-reference statutes.

392. Defendants also owed a duty to Plaintiffs and the Class Members to not share their ALPR information in violation of California Consumer Legal Remedies Act, Civil Code §§1750. Nevertheless, Defendants did share ALPR information of Plaintiffs and the Class in a myriad of ways in violation of California Consumer Legal Remedies Act, Civil Code §§1750 as described above. That violation was a substantial factor in bringing about harm to Plaintiffs and the Class.

393. Defendants in the exercise of reasonable care, knew, or should have known, the transmissions of ALPR information would damage Plaintiffs and the Class.

394. In addition, Defendants' violations of the above-cited statutes, ordinances, and/or regulations resulted in precisely the harm to Plaintiffs and the Class that the laws listed above were signed to prevent, and Plaintiffs and the Class are members of the class of persons for whose protection those laws were adopted.

395. As a foreseeable and proximate result of Defendants' negligent acts, Plaintiffs and the Class Members were injured, including by having their ALPR information disseminated to unauthorized parties as pled herein.

396. It was additionally foreseeable to Defendants that failure to timely and adequately provide notice of how ALPR Information is being used would result in Plaintiffs, the Class and Subclass members not being afforded the ability to timely safeguard their identities.

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

397. This injury was directly and substantially caused by Defendants' negligence, as alleged above.

398. Plaintiffs were damaged as a direct result of Defendants' transmissions of ALPR information, and based on Defendants' violations and conduct, Defendants are responsible for statutory damages in the amount of no less than $2,500 per provision of each of Plaintiffs' and Class Members' PII to each of the Unauthorized Parties.

399. The statutory damages that Defendants are liable for pursuant to the preceding paragraph, are not "purely economic losses," in that the California Legislature has devised a measure of statutory damages pursuant to California Consumer Legal Remedies Act, Civil Code §§1750 that measures a reasonable remedy based on the property interest and protection of personally identifiable information, and individual's privacy.

400. Plaintiffs have asserted independent torts under the CLRA (cause of action II), the Unfair Competition Law (cause of action III), and California Civil Code § 1798.90.54 (cause of action I), which render a claim for negligence wholly independent of any economic loss suffered.

401. As for any non-statutory/non-injunctive relief remedies, there is a special relationship between Plaintiffs on the one hand, and Defendants, on the other hand, in that:

- The parking transactions and policies concerning ALPR were intended to affect the Plaintiffs, and specifically, the "end and aim" of the operation of the parking facilities is for the benefit of Plaintiffs, the Class, and the public;

- It was foreseeable that Plaintiffs and the Class could be harmed based on the improper collection, maintenance, and transmission of ALPR to third parties and the other conduct described by Plaintiffs in this Complaint;

95
CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

- There is a high degree of certainty that Plaintiffs and the class suffered injury as specified in the Complaint;

- There is a causal connection and closeness between the Defendants' conduct and the injury suffered by Plaintiffs and the Class, in that but for the Defendants' transmission of ALPR information there would have been no injury suffered;

- Blame should be attached to the Defendants' conduct because Defendants knowingly transmitted ALPR information in violation of state privacy laws, and further, Defendants knew the practices were unlawful;

- Future harm can be prevented as a policy matter by operating the parking facilities in a manner that protects ALPR information and discloses how ALPR information is to be used going forward.

402.    As a result of Defendants' unfair business practices, they have reaped unfair benefits and illegal profits at the expense of the Plaintiffs and the Class Members. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiffs and the Class Members. Defendants' unfair business practices furthermore entitle Plaintiffs and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendants cease their complained-of practices and account for, disgorge, and restore to Plaintiffs and the Class Members the compensation unlawfully obtained from them. Pursuant to the California Constitution only, and not the United States Constitution, Plaintiffs seek for themselves, and on behalf of the Class disgorgement of profits obtained by the unlawful transmissions of ALPR information, and declaratory relief and injunctive relief that Defendants be prohibited from further unlawful transmissions of ALPR information.

403.    Plaintiff reincorporates the appreciable, nonspeculative, and present harm they have sustained as pled at ¶¶25-104 herein.

404.   Plaintiffs are entitled to compensatory and consequential damages suffered as a result of the unauthorized access and use of ALPR data.

405.   Plaintiffs are also entitled to injunctive relief requiring each of Defendants to strengthen their monitoring and disclosure procedures, submit to future annual audits of the ALP systems and monitoring procedures, and immediately provide robust and adequate credit monitoring to all Class members, and any other relief the Court deems just and proper.

## CAUSE OF ACTION VIII
## VIOLATION OF ARTICLE I, § 1 OF THE CALIFORNIA CONSTITUTION (RIGHT TO PRIVACY)
(By All Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)

406.   Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

407.   Article I, § 1 of the California Constitution ensures individuals' inalienable rights to privacy.

408.   Plaintiffs and Class Members had a reasonable expectation of privacy.  For one, *California Civ. Code § 1798* was enacted to ensure it.  Other privacy statutes too, in California, were enacted to ensure it.  Moreover, the Defendants' policies manifest an intent to maintain the privacy of those who park, at a bare minimum, does not reduce from the reasonable expectation of privacy of vehicle owners and operators who do not expect those visiting a shopping mall to expose their PII to dissemination. A reasonable expectation of privacy implies notice of that one's photograph will not be taken and authorization at the point of entry, that the comings and goings, and precise locations of Plaintiffs will not be

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

tracked and recorded. The tracking of Plaintiffs and the Class' precise entry time and locations is tracked, repeatedly.

409. In any event, Plaintiffs and Class Members had a reasonable expectation of privacy that, when a vehicle parks in places of public gathering, its owner's PII will not be captured for broad dissemination without authorization, and then broadly disseminated, to third parties, including but not limited to unauthorized parties, for advertising, to locate persons, and to further a conglomeration of big data.

410. The privacy rights of Plaintiffs and Class Members, in and to their PII, are serious, underscored by statute, the active participation in relevant Legislative proceedings by the Electronic Frontier Foundation, and the enactment of laws to reflect such concerns. By their conduct described above, these established, serious privacy rights were seriously invaded by the Defendants.

411. As pled, the actionable invasions of privacy are sufficiently serious in nature, scope and actual or potential impact to constitute an egregious breach of societal norms.   Specifically,

- <u>Nature of Potential/Actual Impact</u>.   As pled, there is an unauthorized access of data and sharing of data with marketers and other third parties that profit on data that effects a significant number of California residents and likely hundreds of thousands of persons.

- <u>Scope of Potential/Actual Impact</u>. The scope affects private data including name, travel pattern location, and other data that can be used to locate persons and track their movements.

412. "Taken in the aggregate, ALPR data can paint an intimate portrait of a driver's life and even chill First Amendment protected activity. ALPR technology can be used to target drivers who visit sensitive places such as health

centers, immigration clinics, gun shops, union halls, protests, or centers of religious worship." https://www.eff.org/pages/what-alpr.

413.   "In 2019 alone, just 82 agencies collected more than 1 billion license plate scans using ALPRs. Yet, 99.9% of this surveillance data was not actively related to an investigation when it was collected. Nevertheless, law enforcement agencies stockpile this data, often for years, and often share the data with hundreds of agencies around the country.  This means that law enforcement agencies have built massive databases that document our travel patterns, regardless of whether we're under suspicion. With a few keystrokes, a police officer can generate a list of places a vehicle has been seen, with few safeguards and little oversight."  *See* https://www.eff.org/deeplinks/2021/04/data-driven-2-california-dragnet-new-dataset-shows-scale-vehicle-surveillance.

414.   By the aforementioned acts and omissions, Defendants have violated the privacy rights of Plaintiffs and other Class Members. As a consequence, Plaintiffs and the Class Members have suffered, and seek hereby from Defendants, damages, injunctive relief, and reasonable notice that they are being photographed. Plaintiffs and Class Members additionally seek attorneys' fees, and costs, as may be allowed.

## RESERVATION OF RIGHTS TO ADD NEW CLAIMS

417.   Plaintiffs intend to seek leave to add a claim for intrusion upon seclusion and public disclosure of private facts.  Out of abundance of caution, Plaintiffs would rather file a motion on regular notice than assume they were given leave to add new causes of action that were not previously dismissed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each Class Member, pray for judgment against Defendants as follows:

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

A. That this action and the proposed class be certified and maintained as a class action, appointing Plaintiffs as representatives of the Class, and appointing firm representing Plaintiffs as counsel for the Class;

B. For actual damages, restitution, and all other appropriate legal and equitable and injunctive relief;

C. For declaratory relief;

D. For pre-judgment and post-judgment interest;

E. For punitive and exemplary damages;

F. For attorneys' fees and costs pursuant, *inter alia*, Code of Civil Procedure §1021.5, Civil Code §§1788.17 and 1788.30(c), and California Civ. Code § 1798.

G. For appropriate injunctive relief (including equitable and preliminary relief);

H. For statutory damages in the amount of no less than $2,500 for each violation of California Civ. Code § 1798; and

I. For such other and further relief as this Court may deem just and proper.

DATED: December 20, 2021       Respectfully submitted,

/s/ *Blake J. Lindemann*
Blake J. Lindemann
California Bar No. 255747
E-mail: blake@lawbl.com
Donna R. Dishbak
California Bar No. 259311
E-mail: donna@lawbl.com
**LINDEMANN LAW FIRM, APC**
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone No: 310-279-5269
Facsimile No: 310-300-0267

*Attorneys for Plaintiffs and the Proposed Classes*

100
CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members hereby demand a trial by jury on all causes of action so triable.


DATED: December 20, 2021          Respectfully submitted,

                                  /s/ *Blake J. Lindemann*
                                  Blake J. Lindemann
                                  California Bar No. 255747
                                  E-mail:  blake@lawbl.com
                                  Donna R. Dishbak
                                  California Bar No. 259311
                                  E-mail:  donna@lawbl.com
                                  **LINDEMANN LAW FIRM, APC**
                                  433 N. Camden Drive, 4th Floor
                                  Beverly Hills, CA 90210
                                  Telephone No: 310-279-5269
                                  Facsimile No: 310-300-0267

                                  *Attorneys for Plaintiffs and the Proposed Classes*

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

I, the undersigned, declare: I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210.

On December 20, 2021, I served the foregoing document as follows:

**CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT**

[X] by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such electronic filing to counsel of record for all parties by operation of the Court's CM/ECF System.

[  ] by U.S. Mail in the ordinary course of business to the non-CM/ECF participants indicated on the attached Manual Notice List. I am readily familiar with the Firm's practice for the collection and processing of correspondence for mailing with the Postal Service and that the correspondence would be deposited with same that same day in the ordinary course of business.

[  ] by electronically serving the foregoing by electronic mail to the e-mail addresses agreed by the parties for service, pursuant to Fed. R. Civ. Proc. 5 and the parties' agreement.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on December 20, 2021, at Beverly Hills, California.

*/s/ Nataly Grande*

—————————————————————

NATALY GRANDE

CORRECTED SECOND AMENDED CLASS ACTION COMPLAINT