SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
kraygor@sheppardmullin.com
VALERIE E. ALTER, Cal. Bar No. 239905
valter@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6917
Telephone:  (310) 228-3700
Facsimile:  (310) 228-3701

Attorneys for Defendants
TAUBMAN CENTERS, INC.,
TAUBMAN REALTY GROUP LIMITED
PARTNERSHIP, and TAUBMAN
COMPANY, LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALVARO NAVARRO, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>SKI DATA, INC. a Delaware Corporation, *et al.*,<br><br>　　　　Defendants. | Case No.  20-cv-7370-SVW (SKx)<br><br>**THE TAUBMAN DEFENDANTS':**<br><br>**(1)  NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Concurrently filed with (1) Statement of Uncontroverted Facts and Conclusions of Law, (2) Declaration Of William Knarre, (3) Request For Judicial Notice, and (4) [Proposed] Judgment and [Proposed Alternative] Order*]<br><br>Hearing<br>Date:　January 24, 2022<br>Time:　1:30 p.m.<br>Ctrm.:　10A, Hon. Stephen V. Wilson |

-1-

4879-9165-1076.8

TO THE ABOVE-CAPTIONED COURT AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on January 24, 2022, or as soon thereafter as this matter may be heard in Courtroom 10A of the above-captioned Court, located at the First Street Courthouse, 350 W. First Street, Los Angeles, California 90012, the Honorable District Judge Stephen W. Wilson presiding, Defendants Taubman Centers, Inc., Taubman Realty Group Limited Partnership, and Taubman Company, LLC (collectively referred to herein as "**Taubman**") will and hereby do move for an order for summary judgment on all claims for relief pleaded in Plaintiffs' *Corrected Second Amended Complaint* filed in this action on December 20, 2021 [ECF Dkt. No. 189] (the "*Corrected SAC*") or, in the alternative, partial summary judgment.[1]

Specifically, Taubman seeks an order summarily adjudicating each of Plaintiff Areliz Navarro's ("**Ms. Navarro**") claims against Taubman on the ground that the undisputed evidence is that Taubman only photographed Ms. Navarro's license plate (if it even did that).[2]  The undisputed evidence is clear that Taubman did not compile information on Ms. Navarro, much less sell or otherwise use that information for marketing purposes.  As each claim for relief asserted against Taubman depends on Ms. Navarro's allegation that Taubman collected and then sold or otherwise used her personal information for marketing purposes, and as no other Plaintiffs plead any claims against Taubman, Ms. Navarro's entire *Corrected SAC* should be summarily adjudicated against her and all Plaintiffs and in favor of Taubman.

---

[1]  On December 20, 2021, Plaintiffs filed a *Corrected Second Amended Complaint* [ECF Dkt. No. 189], which superseded their *Second Amended Complaint* filed on August 30, 2021 [ECF Dkt. No. 131].  The *Corrected Second Amended Complaint* ("*Corrected SAC*") now is the operative pleading in this action.  Plaintiffs' *Corrected SAC* did not make any substantive changes to the allegations pleaded in the *Second Amended Complaint* as they relate to the Taubman defendants.

[2]  Ms. Navarro is the only Plaintiff who asserts any claims against Taubman.  She is the only plaintiff who claims she parked in the parking structure at the Beverly Center Mall.  *See* Paragraphs 38-50 and 166-167 of the *Corrected SAC* [ECF 189].

4879-9165-1076.8

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying *Declaration of William Knarre* in support, the accompanying *Request for Judicial Notice*, the accompanying *Statement of Uncontroverted Facts and Conclusions of Law*, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider in connection with the hearing on this matter.

This Motion is made pursuant to the discussion between the parties and before the Court on November 22, 2021 and pursuant to the briefing schedule set by the Court on November 22, 2021.  Taubman, together with the other Defendants, further attempted to meet and confer pursuant to C.D. CAL. LOCAL RULE 7-3, but Plaintiffs' counsel initially ignored the requests, and then refused to conduct a timely meet and confer.

Dated:  December 22. 2021          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By          */s/ Kent R. Raygor*
            KENT R. RAYGOR

            Attorneys for Defendants
            TAUBMAN CENTERS, INC., TAUBMAN
            REALTY GROUP LIMITED PARTNERSHIP,
            and TAUBMAN COMPANY, LLC

-3-

4879-9165-1076.8

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................8

II.    FACTS ...............................................................................................9

    A.    The ALPR Systems Used At The Beverly Center Mall. ........................9

    B.    Ms. Navarro's Visit To The Beverly Center.............................................11

III. ARGUMENT ........................................................................................15

    A.    Standard Governing A Motion For Summary Judgment.........................15

    B.    Taubman Is Entitled To Summary Judgment Because Taubman Did Not Engage In Any Of The Wrongdoing That Ms. Navarro Alleges.....................................................................................................16

    C.    Taubman Is Entitled To Summary Judgment On The First Through Seventh Claims For Relief Because Taubman Did Not Harm Or Damage Ms. Navarro. .........................................................................17

        1.    Ms. Navarro Must Prove Actual Harm In Connection With Each Of Her First Through Seventh Claims For Relief. ...............17

            a.    Ms. Navarro Must Prove Actual Harm In Connection With Her First Through Fourth Claims For Relief For Alleged Violation Of The ALPR Statute. ..........................17

            b.    Ms. Navarro Also Must Prove Actual Harm In Connection With Her Fifth And Sixth Claims For Relief For Violation Of The CLRA And The UCL............20

            c.    Ms. Navarro Also Must Prove Actual Damages In Connection With Her Seventh Claim For Relief For Negligence. .......................................................................21

        2.    The Undisputed Material Facts Establish That Taubman Did Not Harm Or Injure Ms. Navarro. .................................................21

    D.    Taubman Is Entitled To Summary Judgment On Ms. Navarro's Eighth Claim For Relief For Violation Of The California Constitution Because Taubman Did Not Commit A Serious Invasion Of Ms. Navarro's Privacy. .......................................................24

IV.    CONCLUSION ...................................................................................26

4879-9165-1076.8

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ...............................................................................................15

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ...............................................................................................15

*Chickasaw Nation v. United States*
534 U.S. 84 (2001) .................................................................................................20

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*
710 F.3d 946 (9th Cir. 2013) .................................................................................17

*In re Deborah C.*
30 Cal. 3d 125 (1981) (en banc) ............................................................................24

*In re Facebook Privacy Litigation*
572 Fed. Appx. 494 (9th Cir. 2014) ......................................................................23

*In re Facebook, Inc.*
402 F. Supp. 3d 767 (N.D. Cal. 2019) .............................................................21, 23

*Gonzales v. Uber Techs., Inc.*
305 F. Supp. 3d 1078 ............................................................................................25

*Heavenly Hana L.L.C. v. Hotel Union & Hotel Indus. of Haw. Pension Plan*
891 F.3d 839 (9th Cir. 2018) .................................................................................18

*Hill v. Nat'l Coll. Athletic Ass'n*
7 Cal. 4th 1 (1994) ............................................................................................24, 25

*Hollingsworth v. Tenn. Wildlife Res. Agency*
423 F. Supp. 3d 521 (W.D. Tenn. 2019) ...............................................................25

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................25

*In re iPhone Application Litig.*
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .........23

*Jacobs Farm/Del Cabo, Inc. v. Western Farm Serv., Inc.*
190 Cal. App. 4th 1502 (2010) ..............................................................................21

*Judd v. Weinstein*
967 F.3d 952 (9th Cir. 2020) .................................................................................17

*K.C. v. Superior Court*
24 Cal. App. 5th 1001 (2018) ................................................................................18

-5-

*Lorenzana v. Superior Court of L.A. County*
    9 Cal. 3d 626 (1973)................................................................................24

*Pac. Coast Fed. of Fishermen's Ass'n v. Glaser*
    945 F.3d 1076 (9th Cir. 2019)................................................................17

*People v. John Joseph Burrough*
    Case No. C088032, 2020 WL 1270123 (Cal. App. Ct. Mar. 17 2020)..............24

*Pioneer Elecs., Inc. v. Superior Court*
    40 Cal. 4th 360 (2007)............................................................................24

*Slaven v. BP America, Inc.*
    973 F.2d 1468 (9th Cir. 1992).................................................................20

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
    903 F. Supp. 2d 942 (S.D. Cal. 2012).................................................20, 23

*Svenson v. Google Inc.*
    No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ..............23

*TransUnion LLC v. Ramirez*
    141 S. Ct. 2190 (2021)............................................................................18

*Triton Energy Corp. v. Square D Co.*
    68 F.3d 1216...........................................................................................15

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*
    1 Cal. 3d 586 (1970)...............................................................................21

*United States v. Diaz-Castaneda*
    494 F.3d 1146 (9th Cir. 2007).................................................................24

*Wilens v. TD Waterhouse Grp., Inc.*
    120 Cal. App. 4th 746 (2003)...................................................................20

*Wong v. Jing*
    189 Cal. App. 4th 1354 (2010).................................................................23

*In re Yahoo Mail Litig.*
    7 F. Supp. 3d 1016 (N.D. Cal. 2014)........................................................25

**Statutes**

CAL. CIV. CODE §§ 1798.90.5-1798.90.55 ........................................................15, 18

CAL. CIV. CODE § 1798.90.54(a) ...............................................................18, 19, 20

California's Unfair Competition Law...........................................................passim

CONSUMER LEGAL REMEDIES ACT..................................................................15

4879-9165-1076.8

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................................19

CALIFORNIA CONSTITUTION Article I, § 1 ................................................................16

FED. R. CIV. P. 56 ................................................................................................15

FED. R. CIV. P. 56(c) ..........................................................................................15

Senate Bill 34 ......................................................................................................19

Senate Bill 34, 2015-2016 Reg. Sess. (2014) ......................................................19

Senate Bill 34, 2015-2016 Reg. Sess. (2015) ......................................................20

4879-9165-1076.8

# I.

# **INTRODUCTION**

The Court should grant summary judgment in favor of Defendants Taubman Centers, Inc., Taubman Realty Group Limited Partnership, and Taubman Company, LLC (collectively referred to herein as "**Taubman**") and against Plaintiff Areliz Navarro ("**Ms. Navarro**).

Ms. Navarro contends that she visited the Beverly Center Mall in Los Angeles, where Taubman allegedly photographed her license plate, and then allegedly used that license plate information to compile Ms. Navarro's "information which includes her name, her license plate number, her address, her travel pattern and geo-location and time of entry and exits, the time she was in a certain facility, the make of her car, photographs of her image."  [*Corrected Second Amended Complaint* ("***Corrected SAC***") [ECF 189] ¶ 39.][3]  According to Ms. Navarro, Taubman then provided her personal information to various third-parties "without her authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and other opportunities from these retailers."  [*Id.* ¶ 45.]

The problem with Ms. Navarro's claims is that Taubman has no information about her at all—it does not even know her license plate number, much less her name (apart from being named as a Plaintiff in this lawsuit) or address, or anything else about her.  The undisputed facts establish that:

- Taubman does not use license plate data from the Beverly Center Mall to connect or associate any license plate data to or with any particular individual. [*Statement of Uncontroverted Facts* ("**SUF**") # 2.]

- Taubman does not—and in fact, cannot—collect names, addresses, dates of birth, social security numbers, telephone numbers, e-mail addresses, DMV

---

[3]  Ms. Navarro is the only Plaintiff who asserts any claims against Taubman.  She is the only plaintiff who claims she parked in the parking structure at the Beverly Center Mall.  *See* Paragraphs 38-50 and 166-167 of the *Corrected SAC* [ECF 189].

4879-9165-1076.8

information, credit information, or any other personal identification information, nor does it geo-track using license plate data. [SUF ## 3, 4, 7.]

- Taubman does not use license plate data for marketing purposes, or to obtain information about consumer demographics, preferences, or credit status.  [SUF ## 5, 6.]

- Taubman has not sold or otherwise transferred license plate data to any third party, other than on the rare occasion when a law enforcement agency requests some such data pursuant to legal process.  [SUF  ## 8-11.]

As each of Ms. Navarro's claims against Taubman depends on her assertion that Taubman obtained and then sold or otherwise used her personal information for marketing purposes, her entire *Corrected SAC* fails, and Taubman is entitled to summary judgment.  Alternatively, if the Court concludes that any Claim for Relief asserted by Ms. Navarro survives, Taubman requests that the Court grant partial summary judgment as to the remaining Claims for Relief.

## II.

## FACTS

**A.    The ALPR Systems Used At The Beverly Center Mall.**

There are two license plate character recognition systems used at the Beverly Center Mall.  The first was acquired from defendant SkiData, Inc. (also known as "Sentry Control Systems") ("**Skidata**"), and the other from defendant Park Assist LLC ("**Park Assist**").  [SUF # 1.]  Signs notifying customers of the use of this ALPR technology are posted at each entrance to the parking structure at the Beverly Center Mall.  [*Declaration Of William Knarre* ("**Knarre Decl.**") ¶ 24.]  The policy concerning the ALPR system at the Beverly Center Mall can be found at: https://beverlycenter.com/visit-hours/license-plate-recognition. [*Id.* and **EXHIBIT A** thereto.]

The Skidata system is used to determine whether the parking fee for a particular vehicle has been paid, and if so, whether the vehicle has left the parking

-9-

4879-9165-1076.8

structure. [*Knarre Decl*. ¶ 6.]  It uses a camera and an algorithm to ascertain what characters (numbers and letters) constitute the license plate number on a vehicle's rear license plate as the vehicle enters the parking structure at the Beverly Center Mall, and temporarily stores that data in a local server at the Beverly Center Mall.  [*Id.* ¶¶ 4, 5.]  When the vehicle leaves the Beverly Center Mall, the Skidata system uses another camera to attempt again to determine the characters appearing on the vehicle's rear license plate.  [*Id.* ¶ 6.]  The Skidata system does not take a photograph of the license plate, and the data it records is saved only for seven days.  [*Id.* ¶¶ 5-6.]

The Park Assist system helps tell customers entering the parking structure at the Beverly Center Mall where open parking stalls might remain and to help a customer find his or her vehicle if the customer has forgotten where it is parked.  [*Id.* ¶ 8.]  The Park Assist system performs these functions using cameras that are mounted above the driving lanes in the parking structure, such that each camera captures one or two parking stalls.  [*Id.* ¶ 9.]  Like the Skidata system, the Park Assist system relies on algorithms.  [*Id.*]  The system determines whether a particular parking spot is occupied or empty, and also which characters (numbers and letters) constitute the license plate number on a vehicle's rear license plate as it is parked in a parking stall.  The license plate data is temporarily stored in a local server at the Beverly Center Mall.  [*Id.*]  The Park Assist system additionally takes and temporarily stores on a local server at the Beverly Center Mall a photograph of the parking stalls within each camera's field of view.  The data input is refreshed every three (3) minutes so parking space availability data is kept up to date.  [*Id.*]

Taubman does not use and has never used either the Skidata or the Park Assist system employed at the Beverly Center Mall to connect or associate any license plate characters collected by the system to or with any particular individual.  [SUF # 2.]  Taubman does not collect and has never collected names, addresses, dates of birth, social security numbers, telephone numbers, e-mail addresses, DMV information, credit information, or any other personal identification information from the license

-10-

4879-9165-1076.8

plate data.  [SUF # 3.][4]  It does not geo-track anyone, and has never geo-tracked anyone, either.  [SUF # 7.]  As a result, and not surprisingly, Taubman likewise does not use and has never used the license plate data for marketing purposes.  [SUF # 5.]  It does not use and has never used the data to obtain consumer or demographic information, determine the preferences or location of any customer, or determine the credit status of any customer.  [SUF # 6.]  Taubman has never transferred, much less sold, license plate data to any third party—whether a Beverly Center Mall tenant or otherwise—except for the rare occasion when a law enforcement agency requests some such data pursuant to a search warrant.  [SUF ## 8, 9, 10, 11.]

**B.      Ms. Navarro's Visit To The Beverly Center.**

Ms. Navarro is one of six (6) plaintiffs asserting claims against seventeen defendants, arising out of the alleged photographing of Plaintiffs' license plates at eleven shopping malls throughout southern California.  She is the only plaintiff who asserts claims against Taubman.

Ms. Navarro alleges that she visited the Beverly Center Mall, and that her license plate was photographed without her knowledge.  [*Corrected SAC*, ¶ 38.]  She further contends:  "a license plate image was taken of Navarro's vehicle that was transferred to a database and then sent to unauthorized third persons."  [*Id.*]  Ms. Navarro does not plead any facts to explain when or how or to whom such data allegedly was transferred.

Taubman has searched its servers for the Skidata and Park Assist systems to determine if there is any information concerning someone named Areliz Navarro.  Her name does not appear in the servers for the automatic license plate recognition ("**ALPR**") systems used in the parking structure, or anywhere in Taubman's records,

---

[4] Nor could Taubman collect such information.  Taubman has no way of using license plate characters to determine the name, address, or any other identification information concerning who might be associated with the vehicle bearing those license plate characters.  [SUF # 4.]  On the contrary, the systems are used only to determine whether a parking fee has been paid and to help customers locate vacate parking spots and find their own cars if lost.  [*Knarre Decl.* ¶ 11.]

-11-

4879-9165-1076.8

other than in relation to her being a party to this lawsuit; Taubman does not even know what Ms. Navarro's license plate number might be or what vehicle she might drive.  [SUF ## 12-18.]  Moreover, even if Ms. Navarro's license plate were in Taubman's data, as noted above Taubman does not transfer license plate data to any third party.  [SUF ## 8-11, 19-21.]

Ms. Navarro's contention—a mere conclusion not supported by any facts—that Taubman "obtained and continue[s] to maintain Plaintiff Areliz Navarro's information which includes her name, her license plate number, her address, her travel pattern and geo-location and time of entry and exits, the time she was in a certain facility, the make of her car, photographs of her image . . ." is equally baseless. [*Corrected SAC* ¶ 39.  *See also id.* at ¶ 41 (alleging that Ms. Navarro's "Information and PII including her name, address, DMV record, email address, phone number, was improperly accessed and/or obtained by unauthorized third parties").]  As explained above, Taubman does not link, and indeed cannot link, the license plate data it has to individual consumers, much less use it for marketing purposes or share or sell it to third parties.  [SUF ## 2-11.]

Finally, Ms. Navarro contends that she was harmed because:

"[S]he faced future identity theft by virtue of the widespread unauthorized collection and sharing of her ALPR data, there was a loss of value of her ALPR data, the ALPR data has already been misused and collected without authorization,  Navarro has incurred out of pocket mitigation expenses concerning collection at the Beverly Center Mall (and other malls) including the need to credit monitor and obtain credit reports, and she lost the benefit of the bargain by virtue of having her ALPR data used and sold to other corporations that capitalize on the value of ALPR data, create data models, creating mining models, and otherwise obtain information to target her without his [*sic*] consent."

[*Corrected SAC* ¶ 38; *see also id.* at ¶¶ 42, 43 (alleging time spent reviewing credit reports and financial statements), ¶ 44 (purchasing credit monitoring); ¶ 46 (emotional distress); ¶ 48 ("actual injury" in the form of "(a) damage to and diminution in the value of her Private Information, a form of property that Ski Data and the Taubman Defendants obtained from Plaintiff Areliz Navarro; (b) violation of her privacy rights;

-12-

4879-9165-1076.8

and (c) imminent and impending injury arising from the increased risk of identity theft and fraud.").] She further contends that her "personal Information and PII was provided to Gelson's, Bloomingdale's and Nordstrom's without her authorization for the purposes of marketing, geo-targeting and profiling, credit modeling for credit and other opportunities from these retailers, and other third persons including LexisNexis and other aggregators of data and large databases, all without her consent." [*Corrected SAC* ¶ 45.] Notably, however, Ms. Navarro uses the passive voice here, and does not specifically assert that ***Taubman*** provided data to any third-party entity, nor does she plead facts to support such a conclusion, because these allegations are false. As noted above, Taubman does not connect and has never connected license plate data to anything that would identify a particular individual, does not transfer or sell, and has never transferred or sold, that data to any third party except in response to a valid subpoena or warrant, and certainly does not use and has never used that data for marketing purposes. [SUF ## 2-11.]

### C.      Ms. Navarro's Allegations Against Taubman Are False.

| MS. NAVARRO'S ALLEGATIONS - *CORRECTED SAC* | TAUBMAN'S RESPONSE |
| --- | --- |
| Taubman, through use of the ALPR systems at the Beverly Center Mall's parking structure (hereinafter, the "**Parking Structure**"), obtained and keeps Ms. Navarro's name, license plate number, address, travel pattern, geo-location, make of car, and photograph. [¶ 39.] | Ms. Navarro's name does not appear in Taubman's records or in the servers for the ALPR systems used in the Parking Structure, nor is there any indication that those servers ever contained any information concerning her name, other than in relation to this lawsuit once it was filed and then only to note she is a party to this lawsuit. [SUF # 12-17.] Taubman has no record of anyone named Areliz Navarro ever having parked in the Parking Structure. [*Id.*] Taubman does not know her license plate number nor what vehicle she drives. [SUF # 15.] Taubman does not have access to any address or other contact information for her. [SUF # 18.] Taubman has never obtained, nor does it maintain, Ms. Navarro's name, address, travel pattern, geo-location, or photographs. [SUF # 17.] |
| Taubman, through use of the ALPR systems at the Parking Structure, took photos of Ms. Navarro. [¶¶ 166, 167.] | Ms. Navarro's photo appears nowhere in Taubman's records or in the servers for the ALPR systems used in the Parking Structure, nor does Taubman have a record of ever having captured a photograph of Ms. Navaro. [SUF ## 15, 17.] |

-13-

4879-9165-1076.8

| | |
|---|---|
| Taubman provided Ms. Navarro's time of entry into and exit from the Parking Structure, name, license plate number, address, travel pattern, geo-location, make of car, and photograph obtained by the ALPR systems at the Parking Structure to vendors, companies, retailers, and other third parties for marketing purposes. [¶¶ 1, 39, 45, 171, 272, 308, 345.] | Taubman has never used the ALPR systems at the Parking Structure (a) for any marketing purposes, whether for the Beverly Center Mall as a whole, any retailer or service provider located in it, or anyone else, (b) to send marketing materials to anyone, or (c) to identify any customers of the Beverly Center Mall. [SUF ## 2-7.]  Nor has Taubman ever provided such data to anyone else for such purposes, including, but not limited to, Nordstrom, Bloomingdale's, or Gelson's or any retailer or service provider in the Beverly Center Mall or elsewhere.  [SUF ## 8-11; *Knarre Decl.* ¶ 18.]  Taubman has never transferred or disclosed the characters displayed on Ms. Navarro's license plate, an image of her vehicle, or her time of entry into or exit from the Parking Structure to any third person.  [SUF ## 17, 19.] |
| Taubman provided Ms. Navarro's time of entry into and exit from the Parking Structure, name, license plate number, address, travel pattern, geo-location, make of car, and photograph obtained by the ALPR systems at the Parking Structure to third parties for tracking, data modeling, and data harvesting purposes.  [¶¶ 1, 38, 45, 50, 172, 272, 308, 345.] | Taubman has never used the ALPR systems at the Parking Structure (a) to collect consumer or demographic information, (b) to determine the preferences or location of any customer, (c) to determine the credit status of any customer, or (d) for data harvesting or data modeling purposes.  [SUF ## 6, 10.]  Nor has Taubman ever provided such data to anyone else for such purposes, including, but not limited to, Lexis-Nexis, the Department of Motor Vehicles, or any other large data aggregator.  [SUF ## 8-11, *Knarre Decl.* ¶ 18.]  Taubman does not and in fact cannot geo-track, geo-target, geo-market, or geo-locate anyone through use of or as a result of use of the ALPR systems in the Parking Structure.  [SUF # 7.] |
| Taubman sold Ms. Navarro's ALPR data collected at the Parking Structure to other corporations that capitalize on the value of ALPR data, create data models, create mining models, and target her. [¶¶ 38, 50.] | Taubman has never sold any data collected by the ALPR systems used at the Parking Structure to anyone.  [SUF # 11.] |
| The information collected by Taubman through use of the ALPR systems at the Parking Structure is used to identify, target,  and track Ms. Navarro. [¶¶ 1, 38-45, 50 171-174, 272, 308, 345.] | Neither of the ALPR systems used in the Parking Structure connects or associates any license plate characters collected by them to any particular individual or any individual's personal identification information for Taubman.  [SUF # 2.]  Taubman does not tie any license plate data to any particular person or name.  [SUF ## 2-3.]  No names, addresses, dates of birth, social security numbers, telephone numbers, e-mail addresses, DMV information, credit information, travel pattern, geo-location, or any other personal identification information is ever collected |

-14-

| | by or on behalf of Taubman by the ALPR systems used at the Parking Structure. [SUF ## 3, 4, 6, 7.] |
|---|---|
| Taubman shared Ms. Navarro's ALPR data collected from the ALPR systems used at the Parking Structure with law enforcement authorities without a search warrant and for purposes other than pursuing illicit activity. [¶¶ 104, 174.] | The only time Taubman has provided any data collected by the ALPR systems used at the Parking Structure to a third party is on the rare occasion when a law enforcement agency requests some such data pursuant to a search warrant in investigating possible criminal activity in or around the Parking Structure or the Beverly Center Mall. [SUF # 8.] Taubman has no record of any law enforcement entity ever asking to see anything concerning someone named Areliz Navarro. [SUF # 21.] |

## III.

## ARGUMENT

### A.   Standard Governing A Motion For Summary Judgment.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247 (1986). Rule 56 likewise "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216. 1221 (9th Cir. 1995).

Ms. Navarro attempts to assert eight claims against Taubman—four for violation of California's Automated License Plate Recognition ("**ALPR**") law [CAL. CIV. CODE §§ 1798.90.5-1798.90.55] and one each for violation of California's CONSUMER LEGAL REMEDIES ACT ("**CLRA**"), violation of California's Unfair Competition Law ("**UCL**"), negligence (including negligence *per se*), and violation of

-15-

4879-9165-1076.8

Article I, Section 1 of the CALIFORNIA CONSTITUTION (right to privacy).  Each of these claims is meritless, and judgment should be entered in Taubman's favor.

**B.      Taubman Is Entitled To Summary Judgment Because Taubman Did Not Engage In Any Of The Wrongdoing That Ms. Navarro Alleges.**

The thrust of the entire *Corrected SAC* is that Taubman somehow improperly collected Ms. Navarro's private information—the information contained in her DMV record plus geo-location information—and impermissibly shared it with third parties. [*Corrected SAC* ¶¶ 39, 41.]  Ms. Navarro fails to plead any facts to explain *how* Taubman went from a mere photograph of her license plate in a database to a detailed personal dossier, and with good reason.  Taubman does not associate license plate data with individuals, and does not use it to obtain or collect names, addresses, dates of birth, social security numbers, telephone numbers, e-mail addresses, DMV information, credit information, geo-tracking or geo-location information, or any other personal identification information concerning customers of the Beverly Center Mall, or for marketing or any other purpose.  [SUF ## 2-7.]  Taubman is not even capable of obtaining such information.  [SUF # 4.]  It does not transfer, let alone sell, the license plate data it has to any third party for any purpose, either, with the sole exception being a transfer to a law enforcement agency to comply with a warrant. [SUF ## 8-11.]

With regard to Ms. Navarro's license plate information in particular, Taubman does not even have a record of Ms. Navarro in its database, other than as a Plaintiff in this lawsuit, and does not know what her license plate number might be or what vehicle she might drive.  [SUF ## 12-18.]  Moreover, even if Ms. Navarro's license plate number is in Taubman's database, it would not matter.  Taubman does not transfer license plate data to any third party, or link that data to individual consumers for marketing or any other purpose.  [SUF ## 8-11, 19.]

Ms. Navarro cannot provide any admissible evidence supporting her claims against Taubman, as none exists.  Because it is undisputed that Taubman did not

-16-

transfer Ms. Navarro's license plate number or any other information about her to any third party, Taubman is entitled to summary judgment as to the entire *Corrected SAC*.

**C.     Taubman Is Entitled To Summary Judgment On The First Through Seventh Claims For Relief Because Taubman Did Not Harm Or Damage Ms. Navarro.**

Each of the first through seventh claims for relief asserted in the *Corrected SAC* requires that Ms. Navarro prove actual harm or damages.  She cannot prove harm or damage because the undisputed evidence establishes that Taubman did not sell or otherwise transfer or sell her information to any third party, much less use Ms. Navarro's information for marketing, demographic, research, identification, or other such purposes.  [SUF ## 8-11, 19.]

**1.     Ms. Navarro Must Prove Actual Harm In Connection With Each Of Her First Through Seventh Claims For Relief.**

**a.     Ms. Navarro Must Prove Actual Harm In Connection With Her First Through Fourth Claims For Relief For Alleged Violation Of The ALPR Statute.**

"In interpreting the language of a statute, our task is to construe [the Legislature's] intent, and doing so requires us to 'begin, as always, with the language of the statute.'" *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 958 (9th Cir. 2013) (citing *Duncan v. Walker*, 533 U.S. 167, 172 (2001)) (internal quotation marks omitted).  Courts begin with the statute's plain language because "statutory language typically is the best and most reliable indicator of the Legislature's intended purpose." *Judd v. Weinstein*, 967 F.3d 952, 956 (9th Cir. 2020).  When looking at statutory language, "unless otherwise defined, 'words will be interpreted as taking their ordinary, contemporary, common meaning.'" *Chubb Custom Ins. Co.*, 710 F.3d at 958 (citation omitted).  The court "may consult dictionary definitions in an attempt to capture the common contemporary understandings of a word." *Pac. Coast Fed. of Fishermen's Ass'n v. Glaser*, 945 F.3d

-17-

4879-9165-1076.8

1076, 1084 (9th Cir. 2019).  Courts additionally may "examine the legislative history . . . and other traditional aids of statutory interpretation in order to ascertain [legislative] intent."  *Heavenly Hana L.L.C. v. Hotel Union & Hotel Indus. of Haw. Pension Plan*, 891 F.3d 839, 844 (9th Cir. 2018).

The plain language of the ALPR Statute is clear that Ms. Navarro must prove that she was actually harmed by a violation thereof.  Baldly making unsupported conclusions of speculative, potential future harm will not suffice.  The ALPR Statute provides a private right of action "[i]n addition to any other sanctions, penalties, or remedies provided by law" for "an individual *who has been harmed by a violation of this title*, including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system . . . ."  CAL. CIV. CODE § 1798.90.54(a) (emphasis added).[5]  Only if such an  individual can show such actual harm may he or she "bring a civil action in any court of competent jurisdiction against a person who knowingly caused the harm."  *Id*.  While the Legislature *could* elevate the mere violation of a statute to a redressable injury, *see*, *e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021), it did not do so here.  On the contrary, the ALPR statute requires "harm" derived from a "violation"—not just a violation— whether that violation was by unauthorized access or use of ALPR information, or something else entirely.  Because the Legislature used the words "harm" *and* "violation" in the same clause in section 1798.90.54(a) (*id.*, "an individual who has been *harmed by a violation* of this title" (emphasis added)), those words—"harm" and "violation"—cannot be interpreted to mean the same thing.  *See*, *e.g.*, *K.C. v. Superior Court*, 24 Cal. App. 5th 1001, 1012 n.4 (2018) ("[W]here the Legislature uses two

---

[5]  This section is not, as Ms. Navarro has contended in the past [*see*, *e.g.*, ECF 146, at 10:24-11:2], a definition of the word "harm."  Section 1798.90.5, not section 1798.90.54, of the ALPR Statute provides the "definitions" that "shall apply for purposes of" the ALPR Statute.  Section 1798.90.54 upon which Ms. Navarro relies merely explains the *types* of violations for which a private right of action might exist, *if* the plaintiff has suffered actual harm.

-18-

4879-9165-1076.8

different words in the same sentence, we assume it intended the words to have different meanings.").

Harm means more than a mere statutory violation. "Harm" means "injury, loss, damage; material or tangible detriment." [*Request for Judicial Notice* ("**RJN**"), Ex. A, definition for "*harm*", BLACK'S LAW DICTIONARY (11th ed. 2019). *See also* RJN, Ex. B, definition for "*harm*", Merriam-Webster Dictionary.com, https://www.merriam-webster.com/dictionary/harm (last accessed December 17, 2021) ("Harm" means "to damage or injure physically or mentally: to cause harm."); RJN, Ex. C, definition for "*harm*", Dictionary.com, https://www.dictionary.com/browse/harm (last accessed December 17, 2021) ("to do or cause harm to; injure; damage; hurt").] This means something more than a mere violation. Like the statute says, one must be actively "harmed by a violation." CAL. CIV. CODE § 1798.90.54(a).

Indeed, the legislative history of the ALPR Statue confirms the Legislature's intent that "harm" mean something more than a mere violation. Senate Bill 34, the original legislative bill that became the ALPR Statute, was introduced in the California Senate on December 1, 2014, with the following language:

> "In addition to any other sanctions, penalties, or remedies provided by law, an individual who has been harmed by a violation of this title may bring a civil action in any court of competent jurisdiction against a person who knowingly caused ***that violation***."

[RJN, Ex. D, Senate Bill 34, 2015-2016 Reg. Sess. (2014) (introduced), https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160SB34 (emphasis added).] However, the Bill then was amended seven months later in the California Assembly, on July 2, 2015, to strike the words "**that violation**" and replace them with "**the harm**", which is the language that the finally enacted version of the Bill now employs:

4879-9165-1076.8

> "In addition to any other sanctions, penalties, or remedies provided by law, an individual who has been harmed by a violation of this title, including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system, may bring a civil action in any court of competent jurisdiction against a person who knowingly caused ~~that violation~~ the harm."

[RJN, Ex. E, Senate Bill 34, 2015-2016 Reg. Sess. (2015) (as amended by the Comm. on Privacy & Consumer Prot.), https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160SB34; compare the enacted version of statute, CAL. CIV. CODE § 1798.90.54(a).]  This change is significant because there would be no reason to remove the word "violation" and replace it with "harm" if the Legislature intended that a mere violation of the ALPR Statute would be sufficient to sustain a civil action for damages.  The Legislature's "earlier express rejection of certain statutory language counsels strongly against interpreting the statute in a manner consistent with the rejected language." *See Slaven v. BP America, Inc.*, 973 F.2d 1468 (9th Cir. 1992); *Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001).  Thus, actual, suffered harm—not merely a violation of the statute—is clearly required to state a claim for violation of the ALPR Statute.

**b.      Ms. Navarro Also Must Prove Actual Harm In Connection With Her Fifth And Sixth Claims For Relief For Violation Of The CLRA And The UCL.**

Fifth Claim for Relief:  The CLRA "does not create an automatic award of statutory damages upon proof of an unlawful act.  Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 754 (2003).  Thus, Ms. Navarro must prove (a) "a tangible increased cost or burden" to her, and (b) that violation of the CLRA "caused the harm."  *See In re Sony Gaming*

-20-

4879-9165-1076.8

*Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012) (internal citations omitted).

Sixth Claim for Relief:  Like a CLRA plaintiff, a UCL plaintiff also must show actual loss of "money or property" to pursue a UCL claim.  *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 803-04 (N.D. Cal. 2019).  Plaintiffs' *Corrected SAC* even concedes the injury requirement for a UCL claim.  [*See* ECF 189 (*Corrected SAC*), ¶ 375 ("[A]n action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result[.]").]

> **c.    Ms. Navarro Also Must Prove Actual Damages In Connection With Her Seventh Claim For Relief For Negligence.**

The elements of negligence are duty, breach, causation, and damages.  Even where negligence is presumed, the plaintiff still must allege injury.  *Jacobs Farm/Del Cabo, Inc. v. Western Farm Serv., Inc.*, 190 Cal. App. 4th 1502, 1526 (2010).  "[M]ere threat of future harm, not yet realized, is not enough."  *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970).  A plaintiff must demonstrate an actual injury and there is no action for negligence "if no damages have been sustained."  *Id*.

> **2.    The Undisputed Material Facts Establish That Taubman Did Not Harm Or Injure Ms. Navarro.**

Ms. Navarro asserts that she suffered *de facto* harm as a result of alleged violations of various portions of the ALPR statute.  [*Corrected SAC* ¶¶ 236, 239, 274, 277, 310, 313, 345, 351.]  But, as explained above, the ALPR Statute requires *actual* harm, not *assumed* harm.  Nevertheless, Ms. Navarro merely asserts the following for Claim 1:

> "Plaintiffs were also 'harmed' for the independent reasons and bases incorporated herein and stated at ¶¶25-104.  Specifically, Plaintiffs paid

-21-

4879-9165-1076.8

money for credit monitoring, some of them sustained breaches to their accounts and credit cards as a result of Defendants [*sic*] conduct as specifically alleged, the value of their PII was diminished, informational value of damages, the use of PII in the case of Mr. [Alvaro] Navarro to track is [*sic*] whereabouts, and other harms as pled."

[*Corrected SAC* ¶¶ 244.][6]  [*See also id.* ¶ 282 (alleging for <u>Claim 2</u> that "Plaintiffs were also 'harmed' for the independent reasons and bases incorporated herein and stated at ¶¶25-104");[7] ¶ 318 (same for <u>Claim 3</u>); ¶ 347 (same for <u>Claim 4</u>); ¶ 370 (alleging for <u>Claim 5</u> that "Plaintiffs have pled entitled [*sic*] to damages for the independent reasons and bases incorporated herein, and stated at ¶¶ 25-104" and "suffered the damages pled in ¶¶25-104);[8] ¶ 403 (alleging for <u>Claim 6</u> that "Plaintiff reincorporates the appreciable, nonspeculative, and present harm they have sustained as pled at ¶¶25-104 herein.").][9]

Ms. Navarro, however, was not forced to pay for "credit monitoring," nor was the "value" of her personal identification information (PII) diminished, by any action by Taubman.  On the contrary, as explained above, Taubman does not even have a record of Ms. Navarro in its database, or know what her license plate number might be.  [SUF ## 12-18.]  But even if Ms. Navarro's license plate were in its database, Taubman did not cause any damage or injury to Ms. Navarro.  Taubman does not use the license plate data it obtains to collect names, addresses, dates of birth, social security numbers, telephone numbers, e-mail addresses, DMV information, credit information, or any other personal identification information concerning customers of the Beverly Center Mall, for marketing purposes or any other purpose.  [SUF ## 2-7.]

---

[6] Plaintiffs refer to "¶¶25-104", but those paragraph numbers come from the no-longer-operative *Second Amended Complaint* [ECF Dkt. No. 131].  The operative paragraph numbers from the now-operative *Corrected Second Amended Complaint* filed by Plaintiffs on December 20, 2021 [ECF Dkt. No. 189] are "¶¶ 23-102".

[7] *See* footnote 6, *ante*.

[8] *See* footnote 6, *ante*.

[9] *See* footnote 6, *ante*.

4879-9165-1076.8

It does not sell or otherwise transfer license plate data to any third party except for law enforcement pursuant to legal process. [SUF ##8-11.] It does it geo-locate, geo-target, or geo-track anyone. [SUF # 7.] Thus, if Ms. Navarro were forced to pay for credit monitoring, or if the value of her personal identification information (PII) somehow was diminished, Taubman did not cause any such an injury.

Such allegations are not actionable damages anyway. *See, e.g., In re Sony Gaming Networks and Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d at 966 ("Plaintiffs' allegations that the heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury under the UCL . . . and/or the CLRA."); *In re Facebook, Inc.*, 402 F. Supp. 3d at 784, 804 (finding that a "privacy injury", dissemination of personal information, an increased risk of identity theft, and, being "deprived the economic value of their personal information" did not give rise to standing under the UCL); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) ("Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL" and thus cannot give rise to a claim for liability based on diminution in value).[10] Nor can Ms. Navarro recover for emotional distress [*Corrected SAC* ¶ 46]. *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010) ("to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious,'" and "severe.").

---

[10] *In re Facebook Privacy Litigation*, 572 Fed. Appx. 494, 494 (9th Cir. 2014), does not require a different conclusion. That case held that the loss of the sales value of disclosed personal information sufficiently conferred standing *for breach of contract and fraud claims*. But even there, the Ninth Circuit "affirm[ed] the district court's dismissal of plaintiffs' UCL claim because plaintiffs failed to allege that they 'lost money or property as a result of the unfair competition.'" *Id.* at 496. *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015), likewise involved a claim for breach of contract. There is no breach of contract claim at issue in the present action.

-23-

Thus, Taubman is entitled to summary judgment on Ms. Navarro's first through seventh claims for relief.

**D.** **Taubman Is Entitled To Summary Judgment On Ms. Navarro's Eighth Claim For Relief For Violation Of The California Constitution Because Taubman Did Not Commit A Serious Invasion Of Ms. Navarro's Privacy.**

The right to privacy under the California Constitution "protects an individual's *reasonable* expectation of privacy against a *serious* invasion." *Pioneer Elecs., Inc. v. Superior Court*, 40 Cal. 4th 360, 370 (2007) (emphasis in original). An "insubstantial impact on privacy interests" is insufficient to show a constitutional violation. *Hill v. Nat'l Coll. Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994).

"What constitutes a 'reasonable' expectation of privacy depends on the circumstances and is measured by common habits in the use of . . . business properties." *In re Deborah C.*, 30 Cal. 3d 125, 137 (1981) (en banc). Courts thus have limited the expectation of privacy in public places, finding, for example, that individuals "had no reasonable expectation of anonymity on Chico's public sidewalks and streets". *Id. See also Lorenzana v. Superior Court of L.A. County*, 9 Cal. 3d 626, 629 (1973) ("A sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there."). The same has been held of license plates visible in public places. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1151-53 (9th Cir. 2007) (holding that people have no reasonable expectation of privacy in license plates because they are located on the exterior of the vehicle, in plain view, and specifically intended to convey information about a vehicle to law enforcement authorities). *See also People v. John Joseph Burrough*, Case No. C088032, 2020 WL 1270123, at *6 (Cal. App. Ct. Mar. 17 2020) (unpub) (citing several federal circuit cases finding motorists had no reasonable expectation of privacy in license plates).

-24-

4879-9165-1076.8

As noted above, Taubman does not even have a record of Ms. Navarro in its database, or know what her license plate number might be. [SUF ## 12-18.] It did not obtain any information about Ms. Navarro, much less use information about her for marketing purposes, or transfer information about her to a third party. [SUF ## 8-19, 21.] Thus, the only remaining basis for Ms. Navarro's claim for violation of the constitutional right to privacy is that Taubman recorded Ms. Navarro's license plate number or photographed her license plate at the parking garage at the Beverly Center Mall. Ms. Navarro has no subjective expectation of privacy in her public license plate in a public mall parking lot. *Diaz-Castaneda*, 494 F.3d at 1151-53. Moreover, the mere use of a camera is not the equivalent of tracking Ms. Navarro's movements, which Taubman did not do. *Hollingsworth v. Tenn. Wildlife Res. Agency*, 423 F. Supp. 3d 521, 531 (W.D. Tenn. 2019) (rejecting "Plaintiff's argument that Defendants' use of a surveillance camera [surreptitiously placed on Plaintiff's property] to track his movements is analogous to the impermissible use of other forms of technology like GPS to track a citizen's movements.").

Even assuming, for the sake of argument only, that Ms. Navarro maintained a reasonable expectation of privacy in the image of her public license plate in a public place, her claim still fails. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. "Even disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *Gonzales*, 305 F. Supp. 3d at 1092 (finding potential disclosure of home addresses of users and drivers were not an invasion of privacy); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (finding Yahoo's scanning and analyzing of emails was not an invasion of privacy); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding that disclosures of device identifiers, personal data, and geolocation information to third parties was not an invasion of privacy).

-25-

4879-9165-1076.8

Taubman's use of ALPR technology to facilitate payment for parking or help find a parking spot or lost care is not an egregious breach of social norms as a matter of law.

## IV.

## CONCLUSION

For the reasons explained above, summary judgment should be granted in favor of the Taubman Defendants and against Plaintiff Areliz Navarro on all Claims for Relief pled by her in the *Corrected Second Amended Complaint*. As no other Plaintiffs plead any claims against the Taubman Defendants, summary judgment also should be granted in favor of the Taubman Defendants and against all Plaintiffs on all Claims for Relief pled by them in their *Corrected Second Amended Complaint*. Alternatively, if the Court concludes that any Claim for Relief survives, the Court should grant partial summary judgment as to the remaining Claims for Relief.

Dated: December 22. 2021        SHEPPARD MULLIN RICHTER & HAMPTON LLP

By        */s/ Kent R. Raygor*
          KENT R. RAYGOR

          Attorneys for Defendants TAUBMAN
          CENTERS, INC., TAUBMAN REALTY
          GROUP LIMITED PARTNERSHIP, and
          TAUBMAN COMPANY, LLC

-26-

4879-9165-1076.8