Gregory S. Korman (SBN 216931)
gregory.korman@katten.com
Meegan I. Maczek (SBN 260609)
meegan.maczek@katten.com
Camille A. Brooks (SBN 307859)
camille.brooks@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile: 310.788.4471

Attorneys for Defendants
Westfield Property Management LLC;
and Westfield, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALVARO NAVARRO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SKI DATA, INC., et al.,<br><br>Defendants. | Case No.   2:20-cv-07370-SVW-SK<br><br>**THE WESTFIELD DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declarations in Support; Separate Statement; Request for Judicial Notice; and Proposed Judgment*]<br><br><u>Hearing</u><br>Date:  January 24, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 10A<br><br>**Hon. Stephen V. Wilson** |

2:20-cv-07370-SVW-SK

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**To the Court, all parties, and their counsel of record:**

**Please take notice** that, on January 24, 2022 at 1:30 p.m., or as soon thereafter as this matter may be heard, before the Honorable Stephen V. Wilson in Courtroom 10A of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West 1st Street, Los Angeles, CA 90012, defendants Westfield Property Management LLC and Westfield, LLC (together, "Westfield") will and hereby do move pursuant to Federal Rule of Civil Procedure 56 for summary judgment or, alternatively, partial summary judgment on each claim asserted in the Corrected Second Amended Complaint ("SAC") by plaintiffs Alvaro Navarro, Areliz Navarro, Jina Howell, Sevindzh Gasanova, Cristian Rodriguez, and Leilani Ross (collectively, "Plaintiffs").[1]

Summary judgment is warranted for several reasons. First, Plaintiffs' claims regarding the Westfield Mission Valley shopping center are subject to summary judgment. Plaintiff Leilani Ross alleges her vehicle license plate number was captured by the automated license plate recognition ("ALPR") system at Westfield Mission Valley. However, there is no ALPR system at Westfield Mission Valley, and never has been one.

Second, all eight of Plaintiffs' claims are subject to summary judgment because Plaintiffs cannot establish causation and harm, elements required for each claim. Plaintiffs allege they were harmed by the ALPR systems in the public mall parking garages because, now that their publicly visible license plate numbers were photographed, they face potential or actual identity theft or unauthorized credit card transactions. There is no causal link between this alleged harm and photographing and logging publicly visible vehicle license plate numbers. Moreover, contrary to Plaintiffs' allegations, Westfield does not sell, share, or use any ALPR data for marketing or promotion. There is no harm in photographing and maintaining publicly

---

[1] Only three plaintiffs—Jina Howell, Sevindzh Gasanova, and Leilani Ross—allege claims against Westfield.

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

visible vehicle license plate numbers.

Third, Plaintiffs' four claims for violation of California's ALPR Act are subject to summary judgment because Westfield did not violate the ALPR Act and Plaintiffs suffered no requisite statutory harm. Westfield followed the statute, but more important, the ALPR Act requires actual harm and Plaintiffs have suffered none from Westfield's ALPR systems. Plaintiffs' claim for liquidated damages under the ALPR Act is separately subject to summary judgment because Plaintiffs did not suffer any actual damages, a statutory condition to be eligible for liquidated damages.

Fourth, Plaintiffs' claim for violation of California's CLRA is subject to summary judgment because Westfield did not violate the statute or cause Plaintiffs' harm. The ALPR system is not an unfair or deceptive practice intended to induce the payment of parking services; it is a way to make parking a smoother, more pleasant experience for mall-goers. And Plaintiffs were not harmed by either the ALPR policies, which they did not review, or the license plate captures, which were not shared with or sold to any retailers or marketers.

Fifth, Plaintiffs' claim for violation of California's UCL is subject to summary judgment because Plaintiffs lack UCL standing and Westfield did not engage in any unlawful, unfair, or fraudulent business practice.

Sixth, Plaintiffs' negligence claim is subject to summary judgment because Westfield did not breach any duty of care to Plaintiffs and Plaintiffs cannot establish any non-speculative harm.

Seventh, Plaintiffs' Constitutional privacy claim is subject to summary judgment because Plaintiffs have no legally protected privacy right in their license plate numbers, no reasonable expectation of privacy in the circumstances, and Westfield did not engage in any conduct constituting a serious invasion of privacy. It captured license plate data to improve the parking experience for customers at the shopping center.

This Motion is based on this Notice of Motion, the attached Memorandum of

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Points and Authorities, the Separate Statement of Uncontroverted Facts and Conclusions of Law, the Declarations of Louis Schillace, Ryan Perry, David Doyle, Gregory S. Korman, and Camille Brooks and attached exhibits, the Request for Judicial Notice, the pleadings and papers on file in this action, such other and further matters of which this Court may or must take judicial notice, and such arguments as may be considered by the Court at the hearing on this matter.

This Motion is made following Westfield's attempts to hold a conference of counsel pursuant to Local Rule 7-3. While it is likely that no such conference was required, given the manner in which the briefing on this motion was ordered by the Court, in an abundance of caution Westfield's counsel attempted to coordinate the conference with Plaintiffs' counsel on behalf of themselves and the other moving defendants. (Declaration of Camille Brooks ("Brooks Decl.") ¶¶ 2–5, Ex. A.) Plaintiffs' counsel failed to respond and then refused to hold the conference by the required deadline. (*Id.*) Westfield attempted to comply with Local Rule 7-3 in good faith. *See Hart v. Gaione*, No. 05-6110, 2006 WL 1431480, at *2 (C.D. Cal. May 18, 2006) (finding defense counsel "did, in good faith, attempt to comply with Local Rule 7-3 before filing the instant motion" where they made multiple attempts to hold a meet-and-confer conference but plaintiffs' counsel refused to participate). Moreover, Westfield's counsel has conferred with Plaintiffs' counsel on several occasions regarding the factual and legal defects in Plaintiffs' complaints, including the Local Rule 7-3 conferences for Westfield's motions to dismiss the Complaint, First Amended Complaint, and Second Amended Complaint. (Brooks Decl. ¶ 6.)

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

Dated: December 22, 2021

**KATTEN MUCHIN ROSENMAN LLP**
Gregory S. Korman
Meegan I. Maczek
Camille A. Brooks

By:    */s/ Gregory S. Korman*
       Attorneys for Defendants Westfield
       Property Management LLC; and
       Westfield, LLC

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  Introduction ...................................................................................................1

II.  Undisputed Material Facts...............................................................................2

    A.  Westfield Century City Shopping Center .....................................................2

        1.  Plaintiffs Howell and Gasanova allege they visited Westfield Century City..........................................................................................2

        2.  Westfield Century City's ALPR system..........................................2

        3.  Westfield Century City's ALPR data is not sold, shared, or used for marketing purposes ..........................................................3

        4.  Westfield Century City's ALPR Policy is posted on its website ......................................................................................3

    B.  Westfield UTC Shopping Center ..................................................................5

        1.  Plaintiff Ross alleges she visited Westfield UTC............................5

        2.  Westfield UTC's ALPR system.......................................................5

        3.  Westfield UTC's ALPR data is not sold, shared, or used for marketing purposes ..............................................................6

        4.  Westfield UTC's ALPR Policy is posted on its website ................6

    C.  Westfield Mission Valley Shopping Center .................................................7

        1.  Plaintiff Ross alleges she visited Westfield Mission Valley ...........7

        2.  Westfield Mission Valley has no ALPR system ............................7

III.  Summary Judgment Standard............................................................................8

IV.  Summary Judgment Is Warranted on Plaintiff Ross's Claims against Westfield Mission Valley Because that Center Has No ALPR System ..............8

V.  Summary Judgment Is Warranted on All Plaintiffs' Claims Because Photographing and Storing Publicly Visible License Plate Numbers Did Not Cause Plaintiffs any Harm...................................................................9

i                                       2:20-cv-07370-SVW-SK

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

VI.   Summary Judgment Is Warranted on All Plaintiffs' ALPR Claims ....................9

    A.   Plaintiffs Have Suffered No Statutory Harm.........................................10

    B.   Westfield Did Not Violate the ALPR Act ............................................12

    C.   Plaintiffs' Liquidated Damages Claim Should Be Summarily Adjudicated .............................................................................................13

VII.  Summary Judgment Is Warranted on Plaintiffs' CLRA Claim .......................14

    A.   Westfield Did Not Violate the CLRA....................................................15

    B.   Plaintiffs Were Not Harmed by Any Unfair or Deceptive Act by Westfield ...............................................................................................15

    C.   Plaintiffs' Damages Claim Should Be Summarily Adjudicated Because Their CLRA Notice Was Deficient ...........................................16

VIII. Summary Judgment Is Warranted on Plaintiffs' UCL Claim ...........................16

    A.   Plaintiffs Lack Proposition 64 Standing ...............................................16

    B.   Plaintiffs' Unlawful-Prong UCL Claim Fails Because Westfield Did Not Violate Any Other Law...............................................................18

    C.   Plaintiffs' Fraudulent-Prong UCL Claim Fails Because Westfield Did Nothing Deceptive .......................................................................18

    D.   Plaintiffs' Unfairness-Prong UCL Claim Fails Because Any Harm Was Wholly Avoidable...................................................................18

IX.   Summary Judgment is Warranted on Plaintiffs' Negligence Claim .................19

    A.   Westfield Did Not Breach Any Duty of Care to Plaintiffs.....................20

    B.   Plaintiffs Suffered No Cognizable, Nonspeculative Harm as a Result of Westfield's Supposed Negligence............................................20

X.    Summary Judgment Is Warranted on Plaintiffs' Constitutional Privacy Claim .................................................................................................................21

XI.   Conclusion.......................................................................................................23

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Countryside Bank FSB*,
    No. 12-0417, 2012 WL 6577553 (S.D. Cal. Dec. 17, 2012)..............................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................8

*Antman v. Uber Techs., Inc.*,
    No. 15-01175, 2018 WL 2151231 (N.D. Cal. May 10, 2018) ..........................18

*Archer v. United Rentals, Inc.*,
    195 Cal. App. 4th 807 (2011) ...........................................................................17

*Blue Ridge Ins. Co. v. Stanewich*,
    142 F.3d 1145 (9th Cir. 1998) ...........................................................................8

*Brown v. Prop. & Cas. Ins. Co.*,
    No. 20-186, 2021 WL 5989745 (E.D. Cal. Dec. 17, 2021)...............................13

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014).................................................................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................8

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ..........................................................................18

*Doe v. Chao*,
    540 U.S. 614 (2004)..........................................................................................14

*Dyna-Med, Inc. v. Fair Emp. & Hous. Com.*,
    43 Cal. 3d 1379 (1987) .....................................................................................11

*Fabozzi v. StubHub, Inc.*,
    No. 11-4385, 2012 WL 506330 (N.D. Cal. Feb. 15, 2012)...............................19

*In re First T.D. & Inv., Inc.*,
    253 F.3d 520 (9th Cir. 2001) ............................................................................11

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ..........................................................................21, 22

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)...................................................................22

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) .................................................................................17

*Harmon v. Hilton Grp.*,
No. 11-03677, 2011 WL 5914004 (N.D. Cal. Nov. 28, 2011), *aff'd*
554 F. App'x 634 (9th Cir. 2014) ...........................................................................19

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ...........................................................................................21, 22

*Holly v. Alta Newport Hosp., Inc.*,
No. 19-07496, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020)..............................17

*Home Depot, U.S.A., Inc. v. Contractors' State License Bd.*,
41 Cal. App. 4th 1592 (1996) .................................................................................14

*Huynh v. Quora, Inc.*,
No. 18-07597, 2020 WL 7408230 (N.D. Cal. June 1, 2020) .................................20

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013)................................................................15, 17

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ............................................................................................16

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th
Cir. 2007) ................................................................................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...................................................................................................8

*Meyer v. Sprint Spectrum L.P.*,
45 Cal. 4th 634 (2009) ............................................................................................15

*Noel v. Bank of Am.*,
No. 12-4019, 2012 WL 5464608 (N.D. Cal. Nov. 8, 2012)...................................20

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Outboard Marine Corp. v. Superior Court,*
52 Cal. App. 3d 30 (1975) ..................................................................................16

*Roybal v. Equifax,*
No. 05-1207, 2008 WL 4532447 (E.D. Cal. Oct. 9, 2008) ................................16

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
903 F. Supp. 2d 942 (S.D. Cal. 2012) ..........................................................19, 20

*Strojnik v. Bakersfield Convention Hotel I, LLC,*
436 F. Supp. 3d 1332 (E.D. Cal. 2020) .......................................................19, 20

*United States v. Diaz-Castaneda,*
494 F.3d 1146 (9th Cir. 2007) ...........................................................................21

*Workman v. Dearborn Nat'l Life Ins. Co.,*
434 F. Supp. 3d 799 (C.D. Cal. 2020) ...............................................................11

*In re Yahoo Mail Litig.,*
7 F. Supp. 3d 1016 (N.D. Cal. 2014).................................................................22

**Statutes**

5 U.S.C. § 552a .........................................................................................................14

15 U.S.C. § 1681, *et seq.* .........................................................................................20

15 U.S.C. § 1692, *et seq.* .........................................................................................20

Cal. Bus. & Prof. Code §17200, *et seq.*.............................................................18, 20

Cal. Bus. & Prof. Code § 17204 .............................................................................16

Cal. Bus. & Prof. Code § 17529.5 ..........................................................................11

Cal. Civ. Code § 1750, *et seq.* ................................................................................15

Cal. Civ. Code § 1770.............................................................................................15

Cal. Civ. Code § 1780.............................................................................................15

Cal. Civ. Code § 1782.............................................................................................16

Cal. Civ. Code § 1786.50........................................................................................11

Cal. Civ. Code § 1788, *et seq.* ................................................................................20

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Cal. Civ. Code § 1798.90.5 ...................................................................................9, 10

Cal. Civ. Code § 1798.90.51 .................................................................................10, 12

Cal. Civ. Code § 1798.90.52 .................................................................................10, 12

Cal. Civ. Code § 1798.90.53 ......................................................................................10

Cal. Civ. Code § 1798.90.54 .............................................................................10, 11, 13

Cal. Civ. Code § 2955.5 .............................................................................................11

Cal. Veh. Code § 5200 ...............................................................................................21

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................8

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Three plaintiffs—Jina Howell, Sevindzh Gasanova, and Leilani Ross (together, "Plaintiffs")—allegedly visited three Westfield shopping centers. They assert eight causes of action against Westfield Property Management LLC and Westfield, LLC (together, "Westfield") based on Westfield's alleged use of automated license plate recognition ("ALPR") systems at the centers. Plaintiffs have been unable to plead a plausible claim against Westfield despite three opportunities and a willingness to fabricate allegations. Now, based on the evidence, Plaintiffs' claims fail definitively. Summary judgment is warranted.

Leilani Ross's ("Ross") claims about the Westfield Mission Valley shopping center should be summarily adjudicated because they are groundless. Ross did not encounter an ALPR system or have her license plate number printed on a ticket at Westfield Mission Valley because Westfield Mission Valley does not have an ALPR system. Parking is and has always been open, unsecured, and free; there are no tickets to pull.

Jina Howell ("Howell") and Sevindzh Gasanova's ("Gasanova") claims about the Westfield Century City shopping center and Ross's claims about the Westfield UTC shopping center should be summarily adjudicated as well. While those shopping centers, at least, have ALPR systems, those systems are not actionable. The alleged capture of Plaintiffs' license plate numbers at these centers did not cause Plaintiffs any harm. The ALPR systems are for customer parking convenience, expediting the parking experience. Contrary to Plaintiffs' imagined allegations, Westfield does not sell or share, and has never sold or shared, ALPR data with third parties for marketing or promotional purposes. Not that ALPR data would be useful for that purpose, as it is just license plate numbers without any personally identifying information; there is no name, address, or social security number—just a publicly visible license plate number. And if Plaintiffs were genuinely concerned about ALPR usage and their license plate numbers, they could have just checked the websites for each shopping center. That is

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

where Westfield's ALPR policies are posted, just as the ALPR statute requires.

Westfield's ALPR systems did not cause Plaintiffs any harm. There is no material fact dispute otherwise. Respectfully, the Court should grant Westfield's motion for summary judgment.

## II. UNDISPUTED MATERIAL FACTS

### A. Westfield Century City Shopping Center

#### 1. Plaintiffs Howell and Gasanova allege they visited Westfield Century City

Plaintiffs Howell and Gasanova allegedly visited the Westfield Century City shopping center ("Westfield Century City") in Los Angeles several times between April 16, 2019 and April 16, 2020. (Uncontroverted Fact ("UF") 1.) They claim their vehicle's license plate numbers were collected at Westfield Century City. (Corrected Second Amended Complaint ("SAC") ¶¶ 51, 64.) No other plaintiffs claim to have visited Westfield Century City. (UF 2.)

#### 2. Westfield Century City's ALPR system

In around 2017, Westfield Century City added two ALPR systems to its parking structures to make the parking experience more convenient for customers. (UF 3.) Westfield Century City's owner purchased an ALPR system from Sentry/Skidata that operates at the entrances and exits of the parking garages. (UF 4.) When a car approaches the barrier arm on the way in or way out, its rear license plate is photographed and converted into computer-readable data, along with the time the car entered and exited, plus the ticket number. (UF 4.) No other information is captured or stored. (UF 5.)

Westfield Century City's owner added a second ALPR system from Park Assist. (UF 6.) The Park Assist system helps customers find parking with red lights for occupied spaces and green lights for open spaces. (UF 7, 8.) The Park Assist system also photographs the license plate numbers of parked cars to help customers who forgot where they parked to locate their cars. (UF 6, 8.) There are no self-service

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

kiosks to search for vehicles. (UF 9.) The only information captured by the ALPR system is the license plate number and the date and time the car entered or exited the parking space. (UF 10.)

Except for registered users of the Westfield Smart Parking program, the ALPR data from vehicles at Westfield Century City is not linked to any individual. (UF 13.) Neither Westfield Century City's owner nor its personnel or vendors has any way to identify any specific person through the ALPR system. (UF 14.) Neither Howell nor Gasanova is enrolled in the Smart Parking program. (UF 11.)[2]

### 3.   Westfield Century City's ALPR data is not sold, shared, or used for marketing purposes

No customer license plate information is sold or has ever been sold to anyone for marketing or promotion purposes. (UF 15.) No customer license plate information is used or has ever been used for marketing or promotion purposes. (UF 16.) Instead, the information captured by the ALPR system may be used and accessed only by the groups listed and for the purposes stated in Westfield Century City's ALPR policy. (UF 21.) Westfield Century City's owner maintains a log of everyone who accesses the ALPR system and the reason for access. (UF 17.)

### 4.   Westfield Century City's ALPR Policy is posted on its website

Westfield Century City's "Automated License Plate Recognition (ALPR) Usage and Privacy Policy" ("Westfield Century City's ALPR Policy") governs Westfield Century City's ALPR system and information captured. (UF 18.) It has been posted on Westfield Century City's website since at least April 1, 2019, before Plaintiffs claimed to have visited the shopping center, and has not materially changed.

---

[2] Westfield's Smart Parking program is a voluntary convenience program that requires a customer to enroll, create an account, provide their license plate number(s) and payment card, and accept additional terms and conditions. (UF 11.) When enrolled, the customer's payment card is billed automatically upon exiting the parking garage. (UF 11.) The customer information obtained from the Smart Parking program is not used for any purpose other than to complete a Smart Parking transaction. (UF 12.) No customer information is sold or used for marketing or promotion. (UF 12.)

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

(UF 19.)[3] It can be accessed in two places on the website: first, from the first dropdown menu at the top of the page entitled "Center Info"; and second, from the bottom of the page. (UF 20.)

Westfield Century City's ALPR Policy states, in part:

**A. Purpose**
ALPR information may be accessed and used to:
- Help customers find their vehicles;
- Prevent customers from paying an incorrect fee;
- Prevent people from parking in unauthorized or restricted parking stalls; and
- Reduce customer wait time when entering and exiting the property.

**B. Access and Use of the ALPR System(s)**
The following parties are authorized to access and use the ALPR System(s):
- SKIDATA, Inc./Sentry Control Systems Personnel
- LAZ Parking Management Personnel
- Park Assist Personnel
- Center Management and Concierge Personnel; and
- Center Security Personnel

Authorized users undergo training on the operation and proper use of the ALPR system(s).

**C. System Monitoring**
[Westfield] and its ALPR system vendors utilize physical access controls, digital permission controls, and other technological, procedural, and operational security measures to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure. In addition, ALPR system vendors conduct periodic audits of the ALPR system(s) in order to ensure the accuracy of the system(s).

**D. Information Sharing**
[Westfield] and the authorized users identified above do not sell ALPR information. They do not share ALPR information except with

---

[3] The only change has been to reflect that Westfield Century City's parking operator changed from ABM to LAZ. (Declaration of Louis Schillace ("Schillace Decl.") ¶ 20.)

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

each other for the purposes stated above, or as obligated by law, or as necessary for law enforcement to respond to an emergency …

(Schillace Decl. ¶ 18, Ex. A.)

In addition to the ALPR policy, since at least April 1, 2019, before Plaintiffs claim to have visited the shopping center, Westfield Century City has had additional prominent disclosures throughout its parking garages advising customers that their license plate numbers may be photographed. (Schillace Decl. ¶¶ 25–28.)

### B.    Westfield UTC Shopping Center

#### 1.    Plaintiff Ross alleges she visited Westfield UTC

Plaintiff Ross claims that she visited the Westfield UTC shopping center ("Westfield UTC") in San Diego several times between April 16, 2019 and April 16, 2020. (UF 22.) Ross claims her vehicle's license plate number was captured and transferred into a database at Westfield UTC. (SAC ¶ 90.) No other plaintiff claims to have visited Westfield UTC. (UF 23.)

#### 2.    Westfield UTC's ALPR system

Westfield UTC has had an ALPR system since early 2019. (UF 24.) Westfield UTC's owner purchased the ALPR system from Sentry/Skidata; it operates at the entrances and exits of the parking areas. (UF 25.) When a car approaches the barrier gate arm on its way in or out, the rear license plate is photographed and converted into computer-readable data, along with the time the car entered and exited and the ticket number. (UF 25.) No other information is captured or stored. (UF 26.) The ALPR system does not and has never printed the customer's license plate number on their ticket. (UF 27.) Westfield UTC does not have and never has had kiosks that would allow anyone to search for vehicles by license plate number. (UF 28.)

The ALPR data from vehicles at Westfield UTC is not linked to any individual. (UF 29.) Neither Westfield UTC's owner nor its personnel or vendors has any way to identify any specific person through the ALPR system. (UF 30.) Personnel at Westfield UTC do not and are not able to assist customers with finding their cars by

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

looking up license plate numbers in the ALPR system. (UF 31.)[4]

### 3. Westfield UTC's ALPR data is not sold, shared, or used for marketing purposes

No customer license plate information is sold or has ever been sold to anyone for marketing or promotion purposes. (UF 32.) No customer license plate information is used or has ever been used for marketing or promotion purposes. (UF 33.) Instead, the information captured by the ALPR system may be used and accessed only by the groups listed and for the purposes stated in Westfield UTC's ALPR policy. (UF 38.) Westfield UTC's owner maintains a log of everyone who accesses the ALPR system and the reason for access. (UF 34.)

### 4. Westfield UTC's ALPR Policy is posted on its website

Westfield UTC's "Automated License Plate Recognition (ALPR) Usage and Privacy Policy" ("Westfield UTC's ALPR Policy") governs Westfield UTC's ALPR system and information captured. (UF 35.) It has been posted on Westfield UTC's website since at least April 1, 2019, before Ross says she visited the center, and has not changed. (UF 36.) It can be accessed in two places on the website: first, from the first dropdown menu at the top of the page entitled "Center Info"; and second, from the bottom of the page. (UF 37.)

Westfield UTC's ALPR Policy states, in part:

**A. Purpose**
ALPR information may be accessed and used to:
- Prevent customers from paying an incorrect fee; and
- Reduce customer wait time when exiting the property.

**B. Access and Use of the ALPR System(s)**
The following parties are authorized to access and use the ALPR System(s):
- SKIDATA, Inc./Sentry Control Systems Personnel;

---

[4] Westfield UTC also has a red-light/green-light system purchased from Indect that helps customers identify open and occupied parking spaces. (Declaration of Ryan Perry ("Perry Decl.") ¶ 5.) The Indect system does not have license plate reading functionality so it is not an ALPR system. (*Id.*)

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

- LAZ Parking Management Personnel; and
- INDECT Personnel

**C. System Monitoring**

[Westfield] and its ALPR system vendors utilize physical access controls, digital permission controls, and other technological, procedural, and operational security measures to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure. In addition, ALPR system vendors conduct periodic audits of the ALPR system(s) in order to ensure the accuracy of the system(s).

**D. Information Sharing**

[Westfield] and the authorized users identified above do not sell ALPR information. They do not share ALPR information except with each other for the purposes stated above, or as obligated by law, or as necessary for law enforcement to respond to an emergency …

(Perry Decl. ¶ 13, Ex. A.)

### C.    Westfield Mission Valley Shopping Center

#### 1.    Plaintiff Ross alleges she visited Westfield Mission Valley

Plaintiff Ross claims that she visited the Westfield Mission Valley shopping center ("Westfield Mission Valley") in San Diego several times between April 16, 2019 and April 16, 2020. (UF 39.) Ross claims her vehicle's license plate number was captured and transferred into a database at Westfield Mission Valley. (SAC ¶ 90.) She also alleges her license plate number was printed on her parking ticket in bold, upper-case letter. (*Id.*) No other plaintiff claims to have visited Westfield Mission Valley. (UF 40.)

#### 2.    Westfield Mission Valley has no ALPR system

Westfield Mission Valley does not have an ALPR system. (UF 41.) It does not have barrier arms or issue parking tickets; it has open, unsecured, and free parking, which would be obvious to any person who actually visited the center. (UF 41.)

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

### III. SUMMARY JUDGMENT STANDARD

Rule 56 entitles a party to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then the burden shifts to the nonmoving party, who must do more than merely rely on the allegations of its pleadings, *id.*, and do more than "simply show that there is some metaphysical doubt as to the material facts …" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "The mere existence of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). If the opponent's evidence is "merely colorable" or is not "significantly probative," summary judgment must be granted. *Id.* at 250–51. "If the factual context makes the non-moving party's claim implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998).

### IV. SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF ROSS'S CLAIMS AGAINST WESTFIELD MISSION VALLEY BECAUSE THAT CENTER HAS NO ALPR SYSTEM

Plaintiff Ross's claims against Westfield Mission Valley are based on an ALPR system that does not exist. Ross's allegations that an ALPR system at Westfield Mission Valley captured her license plate data and that data was shared are utter fabrications. (SAC ¶¶ 15, 90.) Westfield Mission Valley has no ALPR system and never had one. (UF 41.) The fundamental factual basis for Plaintiffs' allegations against Westfield Mission Valley is false. There is no liability, causation, or harm. As such, Ross's claims against Westfield Mission Valley should be summarily adjudicated.

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310,788.4400 tel  310,788.4471 fax

**V.    SUMMARY JUDGMENT IS WARRANTED ON ALL PLAINTIFFS' CLAIMS BECAUSE PHOTOGRAPHING AND STORING PUBLICLY VISIBLE LICENSE PLATE NUMBERS DID NOT CAUSE PLAINTIFFS ANY HARM**

Each one of Plaintiffs' claims requires causation and harm. Plaintiffs allege a parade of *theoretical* harms—potential identity theft, actual identity theft, credit monitoring, unauthorized credit card charges. (SAC ¶¶ 51, 53, 64, 66, 90.) But Westfield did not cause any of them by using an ALPR system.

Westfield Mission Valley has no ALPR system at all, so no ALPR data was even captured let alone shared. Westfield Century City and Westfield UTC do have ALPR systems, at least, but they do not and cannot do anything with the data that could harm Plaintiffs in the ways alleged. Plaintiffs' publicly visible license plate numbers are completely anonymous; no individual person can be identified from their license plate data. (UF 5, 10, 13, 14, 26, 29, 30.) What is more, Westfield does not sell ALPR data to anyone. (UF 15, 32.) Nor does it share or use ALPR data for marketing or promotional purposes. (UF 16, 33.) Thus, the alleged factual bases for Plaintiffs' harm are false.

Simply put, taking pictures of publicly visible license plate numbers and keeping track of when that license plate number entered and exited a shopping center parking area cannot and did not lead to identity theft or unauthorized credit card charges or any other theoretical harms of which Plaintiffs complain. There is thus no material dispute of fact regarding causation and harm on any of Plaintiffs' eight claims.

**VI.    SUMMARY JUDGMENT IS WARRANTED ON ALL PLAINTIFFS' ALPR CLAIMS**

As a starting point, no California law prohibits companies like Westfield from photographing its visitors' publicly visible license plates. The ALPR Act, Cal. Civ. Code § 1798.90.5, *et seq.*, certainly does not prohibit the practice. It just regulates operators or end-users of ALPR systems, which are searchable computerized databases resulting from cameras that convert license plates into computer-readable

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

data. Cal. Civ. Code § 1798.90.5(d). It requires persons that operate ALPR systems ("ALPR operators") and persons that use or access an ALPR system ("ALPR end-users") to maintain reasonable security procedures and practices and implement a usage and privacy policy available on their website (if they have one) or to the public in writing. Cal. Civ. Code §§ 1798.90.5(a)&(c), 1798.90.51, 1798.90.53. It also requires ALPR operators to maintain a record of access. Cal. Civ. Code § 1798.90.52.

Bare violations of the ALPR Act are not actionable. The ALPR Act creates a private right of action only in favor of "an individual who has been *harmed* by a violation" of the statute and only against a "person who knowingly caused the *harm*." Cal. Civ. Code § 1798.90.54(a) (emphases added). Plaintiffs allege four separate ALPR Act "counts": (1) unauthorized access of ALPR information (SAC ¶¶ 211–247); (2) unauthorized use of ALPR information (*id.* ¶¶ 249–286); (3) failure to maintain reasonable practices to protect unauthorized use and access (*id.* ¶¶ 288–322); and (4) failure to implement a Code compliant privacy policy and maintain records (*id.* ¶¶ 324–351). All four counts should be summarily adjudicated because Plaintiffs were not harmed by any violation of the statute.

## A.    Plaintiffs Have Suffered No Statutory Harm

Plaintiffs' ALPR Act claims fail because they were not harmed by any conduct by Westfield. An indispensable requirement to prevail on an ALPR Act claim is actual harm. A private right of action is only available to a person who has suffered actual harm and only available against someone who caused actual harm. A claim may be brought by "an individual who has been *harmed* by a violation of this title" and against "a person who knowingly caused the *harm*." Cal. Civ. Code § 1798.90.54(a) (emphases added). The legislature's double-use of the word "harm" must be given its "usual, ordinary import," and "significance" should be accorded "to every word."

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Dyna-Med, Inc. v. Fair Emp. & Hous. Com.*, 43 Cal. 3d 1379, 1386–87 (1987).[5] To allow a bare statutory violation to state a claim for relief would render the double-use of the word "harm" meaningless and read it out of the statute, a prohibited approach to statutory interpretation. *See id.* at 1387 ("A construction making some words surplusage is to be avoided").

The actual harm requirement is manifest from the statutory text, so resort to legislative history is not required. But consulting the legislative history only cements that conclusion that harm is a statutory element. Indeed, an earlier draft imposed liability on those who merely "knowingly caused that [statutory] *violation*." (Declaration of Gregory S. Korman ¶ 2, Ex. A at 18, 22 (emphasis added); Request for Judicial Notice ¶ 1.) As ultimately enacted, the statute deleted the reference to causing a statutory "violation" and replaced it with the word "harm." Cal. Civ. Code § 1798.90.54(a).[6]

Hence, actual harm is a condition to any private right of action under the ALPR Act. Without harm, Plaintiffs' ALPR Act claims fail, regardless of whether or not Westfield violated the act. And Plaintiffs suffered no harm as a result of Westfield's ALPR systems. To be sure, Plaintiffs include a list of what might be harms in another

---

[5] "When a federal court interprets a California statute, California's rules of statutory construction and interpretation apply." *Workman v. Dearborn Nat'l Life Ins. Co.*, 434 F. Supp. 3d 799, 802 (C.D. Cal. 2020) (citing *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 257 (9th Cir. 2001)).

[6] California knows exactly how to create a private right of action that does not require actual harm. Plenty of statutes operate this way, and they all lack the "harmed by" or "knowingly caused the harm" language found in the ALPR Act. *See, e.g.*, Cal. Civ. Code § 1786.50(a) (Investigative Consumer Reporting Agencies Act provides a private right of action to a "consumer who is the subject of the report" against a reporting agency or user "that fails to comply with any requirement under this title"); Cal. Bus. & Prof. Code § 17529.5(b) (recipient of unsolicited commercial email advertisement "may bring an action against a person or entity that violates any provision of this section"). In contrast, when the California legislature uses the "harmed by" language, the plaintiff has to show harm. *See* Cal. Civ. Code § 2955.5(c) (allows person "harmed by a violation of this section[,]" concerning hazard insurance coverage disclosures, to obtain injunctive relief, damages, and attorney's fees); *Alexander v. Countryside Bank FSB*, No. 12-0417, 2012 WL 6577553, at *3 (S.D. Cal. Dec. 17, 2012) (dismissing section 2955.5 claim because plaintiffs "have not alleged any facts showing that they were harmed by any violation of this section").

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

context. But they are not harms caused by anything Westfield did here. Even in the complaint, there are no "facts connecting any alleged tracking, targeted marketing/advertising, and mitigation measures to conduct committed by [Westfield]." (Dkt. 130 at 3.) And for good reason: Westfield never shared Plaintiffs' personally identifying information with any third parties, so the harms of which Plaintiffs complain never materialized.

Westfield Mission Valley did not capture Ross's ALPR data; it doesn't even have an ALPR system. (UF 41.) Westfield Century City and Westfield UTC did not sell, share, or use Plaintiffs' ALPR data with any retailers, marketers, or data collectors. (UF 15, 16, 32, 33.) Access is limited to personnel involved with parking at the centers. (UF 21, 38.) And crucially, the ALPR systems have only license plate numbers and entry and exit times and those license plate numbers are not connected to Plaintiffs. (UF 5, 10, 13, 14, 26, 29, 30.) License plate numbers cannot be used to steal identities or make unauthorized credit card transactions; if they could, then anyone who saw anyone else's license plate number could steal that person's identity or use their credit card. The world does not work that way. Plaintiffs also point to "mitigation" measures they pre-emptively undertook to avoid identity theft. Again, that conduct is disconnected from anything Westfield did because license plate numbers do not result in identity theft. Summary judgment of the four ALPR claims is warranted on this ground.

## B.    Westfield Did Not Violate the ALPR Act

Not only did Plaintiffs suffer no actual harm, but even their bare assertions of statutory violations founder because Westfield did not violate the ALPR Act. Plaintiffs' first count alleges that Westfield violated the act because it collected and accessed Plaintiffs' ALPR data at Westfield Century City without Plaintiffs' authorization. (SAC ¶¶ 229, 240.) This assertion is just legally wrong. No authorization by Plaintiffs is required for any purpose under the ALPR Act. *Compare* Cal. Civ. Code §§ 1798.90.51, 1798.90.52. Westfield did not need Plaintiffs'

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310,788.4400 tel   310.788.4471 fax

"authorization" to photograph their license plate or access their ALPR data.

Plaintiffs' second and third counts allege that Westfield violated the act by sharing ALPR data with "various retail entities, data modelers, those companies who traffic in ALPR data, and other unknown parties." (SAC ¶¶ 265, 301.) This is factually false. Westfield does not share ALPR data with any such entities. (UF 15, 16, 19, 21, 32, 33, 36, 38.)

Plaintiffs' fourth count alleges that Westfield did not maintain a record of access and its ALPR policies do not comply with the act. (SAC ¶¶ 325, 338.) Again, this is false. Westfield Mission Valley is neither an ALPR operator or end-user, so it does not need an ALPR policy or record of access. (UF 41.) And Westfield Century City and Westfield UTC both *do* maintain logs of all access to ALPR data. (UF 17, 34.) And their ALPR policies comply with section 1789.90.51, setting forth (a) the purpose of access (i.e., reduce customer wait time when exiting the property); (b) the parties who have access; (c) system monitoring and access controls; and (d) that the information is not sold and is shared only with the parties identified, for the purposes identified, except also law enforcement in an emergency. (*See* UF 19, 36; Schillace Decl. ¶ 18, Ex. A; Perry Decl. ¶ 13, Ex. A.)

### C.     Plaintiffs' Liquidated Damages Claim Should Be Summarily Adjudicated

Plaintiffs are ineligible for the ALPR Act's *liquidated* damages remedy because they did not suffer any prerequisite *actual* damages. Thus, their liquidated damages claim should be summarily adjudicated pursuant to Rule 56(a). *Brown v. Prop. & Cas. Ins. Co.*, No. 20-186, 2021 WL 5989745, at *18 (E.D. Cal. Dec. 17, 2021) (finding "there is no evidence supporting a claim for punitive damages, and that [defendant] is entitled to summary judgment on a claim for such damages").

The plain language of the ALPR Act's remedies provision requires Plaintiffs to have suffered *actual* damages before they can recover liquidated damages. The ALPR Act authorizes a court to award: "Actual damages, but not less than liquidated

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

damages in the amount of two thousand five hundred dollars ($2,500)." Cal. Civ. Code § 1798.90.54(b)(1). The natural reading of this language, authorizing an award of actual damages but setting a floor for the amount, under ordinary rules of grammar, compels this conclusion. *See Home Depot, U.S.A., Inc. v. Contractors' State License Bd.,* 41 Cal. App. 4th 1592, 1602 (1996) ("ordinary rules of grammar [] must be applied unless they lead to an absurd result"). Indeed, conditioning liquidated damages on the existence of actual damages aligns with the Supreme Court's reading of a similarly structured remedies provision in the federal Privacy Act. *See Doe v. Chao*, 540 U.S. 614, 620 (2004).

That Privacy Act analyzed in *Doe* exposes the federal government to claims for "actual damages sustained by the individual … but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Doe*, 540 U.S. at 619 (emphasis added; quoting 5 U.S.C. § 552a(g)(4)). According to the Supreme Court, a "straightforward textual analysis" shows that "[w]hen the statute gets to the point of guaranteeing the $1,000 minimum, it … has provided expressly for liability to such victims for 'actual damages sustained.'" *Id.* at 620. To read the statute as providing a $1,000 guaranteed recovery, as Plaintiffs try to read the ALPR Act, ignores that the statute does not speak of "entitlement to recovery[] in a freestanding, unqualified way, but in a limited way, by reference to enumerated damages." *Id.* at 621.

Plaintiffs have not suffered any actual damages as a result of any violation by Westfield of the ALPR Act. The only money they allegedly expended—out-of-pocket costs to pre-emptively monitor against identify theft—has no plausible connection to Westfield's photography of Plaintiffs' publicly visible license plates, which are not tied to identity and are not plausible contributors to identity theft. Because there are no damages, Plaintiffs' request for liquidated damages should be summarily adjudicated. (*See* SAC ¶¶ 247, 286, 322, 351.)

**VII.    SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFFS' CLRA CLAIM**

Like Plaintiffs' ALPR Act claim, the CLRA claim is subject to summary

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

judgment because Westfield did not engage in any unfair or deceptive act in connection with the sale of a good or service and Westfield did not harm Plaintiffs. Plaintiffs also failed to comply with the CLRA's pre-lawsuit notice requirements, which is fatal to their CLRA damages claim.

### A.    Westfield Did Not Violate the CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *See* Cal. Civ. Code § 1770(a). Plaintiffs allege that Westfield violated the CLRA by "improperly disclosing [Plaintiffs'] personally identifiable information" and failing to "disclose this fact" to Plaintiffs. (SAC ¶ 363.) As set forth above, Westfield did not have, much less disclose, Plaintiffs' personally identifiable information. (UF 5, 10, 13, 14, 26, 29, 30.) It only had their publicly visible license plate numbers and the dates and times those license plate numbers entered and exited the parking areas; that's it. (UF 5, 10, 26.) Moreover, Westfield does not "improperly disclose" ALPR information; it's not shared with any third parties or used for marketing or promotion. (UF 15, 16, 32, 33.) And, of course, Westfield's ALPR policies were posted on each shopping center's website, just as the ALPR Act requires.  (UF 19, 36.)

### B.    Plaintiffs Were Not Harmed by Any Unfair or Deceptive Act by Westfield

The CLRA requires causation and harm. "[I]n order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 64 (2009); *see* Cal. Civ. Code § 1780(a) (consumer must suffer "damages as a result of the use or employment … of a method, act, or practice declared to be unlawful by Section 1770"). Plaintiffs were not harmed by anything Westfield did. They cannot establish any causal connection between their alleged losses (e.g., money they spent to buy identity theft monitoring) and Westfield's practices. Moreover, Plaintiffs do not allege

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

that they reviewed or relied on the ALPR policies in deciding to park at Westfield's shopping centers, a necessary step to Plaintiffs claiming they were misled by those policies. *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1018–20 (N.D. Cal. 2013) (granting summary judgment on plaintiffs' CLRA claim where plaintiffs did not read or rely on alleged misrepresentations in defendant's policies).

### C.      Plaintiffs' Damages Claim Should Be Summarily Adjudicated Because Their CLRA Notice Was Deficient

Damages are not available under the CLRA without a valid pre-lawsuit notice sent 30 days before a lawsuit is filed. Cal. Civ. Code § 1782(a); *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975) ("literal application of the notice provisions" set forth in section 1782(a) is required). Instead of giving the statutory notice, Plaintiffs sent their CLRA notice letter *the same day they filed this lawsuit*. (UF 42.) Not only was it untimely, the notice was also substantively deficient because it failed to include any specific assertion of wrongful conduct by Westfield. *See Roybal v. Equifax*, No. 05-1207, 2008 WL 4532447, at *10–11 (E.D. Cal. Oct. 9, 2008). Because the CLRA notice was untimely and defective, Plaintiffs' claim for damages is subject to summary judgment. *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007).

## VIII. SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFFS' UCL CLAIM

### A.      Plaintiffs Lack Proposition 64 Standing

To have standing to assert their UCL claim, Plaintiffs must establish that they "suffered injury in fact and lost money or property *as a result of* the [alleged] unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (a party must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*" for UCL standing). Plaintiffs cannot make the required showing of causation.

Plaintiffs cannot connect any of the purported harms—potential or actual identity theft, credit monitoring, loss of value in personally identifiable information,

16                    2:20-cv-07370-SVW-SK

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

unauthorized credit card transactions—to Westfield's collection of ALPR data. Anonymized license plate data is not personally identifiable information, and moreover, courts have "consistently rejected" attempts to treat even genuinely personally identifiable information as "money or property" under the UCL. *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (citing cases) (dismissing UCL claim against Facebook for scanning user messages); *see also Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (plaintiffs failed to show injury-in-fact based on "unlawful collection and recordation of their personal information, an invasion of their right of privacy").

Nor can Plaintiffs establish why credit card monitoring was reasonable or necessary, as the collection of anonymized license plate numbers is wholly untethered to credit card information or social security numbers. *See Holly v. Alta Newport Hosp., Inc.*, No. 19-07496, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) (rejecting "conclusory allegations concerning [] mitigation or remediation efforts" where plaintiff "has not provided any supporting factual allegations or alleged how any credit monitoring was reasonable and necessary"). No one can use vehicle license plate numbers, which are visible for the world to see, to steal someone's identity or make an unauthorized credit card transaction. Moreover, Westfield did not sell, share, or use ALPR data either externally or internally for marketing or promotion. (UF 15, 16, 32, 33.)

Plaintiffs allege they paid for parking but there is no causal connection between paying to park in parking garages and the (allegedly) unfair business practice of collecting and sharing license plate numbers. (SAC ¶¶ 374, 387.) To establish causation, Plaintiffs would need to prove they checked Westfield's website for an ALPR usage and privacy policy, reviewed the policy, paid for parking as a result of what the policy said, learned the policy had false information, and would not have parked at the centers but for the policy. *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 & 857 (2008) (plaintiff who paid for book lacked standing because he did not

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

allege that "acts of unfair competition induced him to keep a book he otherwise would have returned during the free trial period"); *iPhone Application Litig.*, 6 F. Supp. 3d at 1018–20 (granting summary judgment on plaintiffs' UCL claim where plaintiffs did not read or rely on alleged misrepresentations in defendant's policies). Plaintiffs have not done anything close.

### B. Plaintiffs' Unlawful-Prong UCL Claim Fails Because Westfield Did Not Violate Any Other Law

For their unlawful-prong UCL claim, Plaintiffs rely on the defendants' alleged violation of the CLRA. (SAC ¶ 379.) This claim fails because the CLRA claim fails. *See Antman v. Uber Techs., Inc.*, No. 15-01175, 2018 WL 2151231, at *12 (N.D. Cal. May 10, 2018) ("if there is no predicate unlawful violation, there is no UCL 'unlawful' claim").

### C. Plaintiffs' Fraudulent-Prong UCL Claim Fails Because Westfield Did Nothing Deceptive

For their fraudulent-prong UCL claim, Plaintiffs allege that Westfield concealed their "illicit and reckless plan … to obtain and misuse [Plaintiffs'] personal and private information." (SAC ¶ 381.) There was no illicit plan to conceal. Westfield Mission Valley has no ALPR system. (UF 41.) Westfield Century City and Westfield UTC had posted ALPR policies online before Plaintiffs visited those centers and Westfield never shared or sold or "misused" their publicly visible license plate numbers for any purpose other than enhancing parking convenience. (UF 19, 36.) There was no fraudulent conduct by Westfield such that reasonable "members of the public are likely to be deceived." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

### D. Plaintiffs' Unfairness-Prong UCL Claim Fails Because Any Harm Was Wholly Avoidable

For their unfair-prong UCL claim, Plaintiffs allege that Westfield's conduct was "unfair" because "it was designed to deprive Plaintiffs … of their constitutionally

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

18                                    2:20-cv-07370-SVW-SK

protected rights and their property for less than adequate consideration." (SAC ¶ 380.) Plaintiffs do not have any constitutionally protected rights in their publicly visible license plate numbers. *See infra* § VI.E. Westfield's ALPR systems are for parking convenience, not tracking or marketing. (UF 3, 15, 16, 32, 33.) Either way, Plaintiffs could have avoided whatever harm they claim by simply looking at the ALPR usage and privacy policies on each shopping center's website. (UF 19, 36.) Had they done so, Plaintiffs would have known that ALPR data was being captured, what Westfield does with ALPR data, and who has access to it. *See Harmon v. Hilton Grp.*, No. 11-03677, 2011 WL 5914004, at *10 (N.D. Cal. Nov. 28, 2011) ("any supposed 'harm' could easily have been avoided by a reasonable consumer in light of [defendant's] disclosures"), *aff'd* 554 F. App'x 634 (9th Cir. 2014); *Fabozzi v. StubHub, Inc.*, No. 11-4385, 2012 WL 506330, at *8 (N.D. Cal. Feb. 15, 2012) ("because of Stubhub's disclosures that consumers may pay above face value for tickets purchased through its site, any consumer who wanted to avoid paying more than face value could simply have" compared prices). The avoidable hypothetical harm Plaintiffs claim to have suffered by fully disclosed practices is outweighed by the parking convenience to customers, negating this claim.

In sum, Plaintiffs' UCL claim is subject to summary judgment because they lack standing and Westfield did not engage in any unfair competition.

## IX. SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFFS' NEGLIGENCE CLAIM

Under California law, the elements of a negligence cause of action are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 959 (S.D. Cal. 2012). Negligence per se does not supply the duty of care; it's just an evidentiary presumption. A negligence per se claim still requires that "either the courts or the Legislature must have created a duty of care." *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1344 (E.D. Cal. 2020). Plaintiffs have failed to sufficiently allege any of these elements.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   Westfield Did Not Breach Any Duty of Care to Plaintiffs

Plaintiffs' negligence claim is based on Westfield's alleged violation of the CLRA and UCL. (SAC ¶¶ 390, 392.) Plaintiffs allege that Westfield breached its duty to Plaintiffs by "failing to collect, maintain, and disseminate ALPR information in accordance" with these acts. (SAC ¶ 391.) Because Westfield did not violate the CLRA or UCL, Plaintiffs' negligence claim is properly subject to summary judgment. *See Noel v. Bank of Am.*, No. 12-4019, 2012 WL 5464608, at *6 (N.D. Cal. Nov. 8, 2012) (plaintiffs' negligence per se claim "premised on asserted violations of the FDCPA, FCRA, UCL, and RFDCPA" failed because "each of her claims under those laws fails as pled").

Additionally, Plaintiffs cannot rely on the ALPR Act to supply a duty of care. Commercial shopping center owners and managers do not owe Plaintiffs a duty not to photograph their publicly visible license plate numbers. Nothing suggests the California legislature enacted the ALPR Act, CLRA, and UCL "as a separate duty of care to give rise to an independent negligence claim under state laws." *Strojnik*, 436 F. Supp. 3d at 1344. But even if there was a duty of care, Westfield did not breach it, as the ALPR Act allows Westfield to operate ALPR systems at shopping centers.

### B.   Plaintiffs Suffered No Cognizable, Nonspeculative Harm as a Result of Westfield's Supposed Negligence

"Under California law, appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *In re Sony Gaming*, 903 F. Supp. 2d at 962. Plaintiffs suffered no such harm. Their allegations about future identity theft, loss of value in their license plate information, and mitigation expenses like credit monitoring are "speculative harm or the threat of future harm" that normally is insufficient "to create a cause of action for negligence." *Id.*; *Huynh v. Quora, Inc.*, No. 18-07597, 2020 WL 7408230, at *6 (N.D. Cal. June 1, 2020) ("lost personal information and risk of future harm … are speculative, not appreciable, and not present"); (Dkt. 130 at 4.) Plaintiffs cannot causally link this supposed harm and Westfield's conduct. Capturing

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

anonymous, publicly visible license plate numbers to create a smoother parking experience without selling them or using them for marketing cannot cause these alleged harms.

## X.   SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFFS' CONSTITUTIONAL PRIVACY CLAIM

To prove a violation of the California Constitution's right to privacy, Plaintiffs must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by [Westfield] constituting a serious invasion of privacy." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 990 (2011). Plaintiffs cannot meet any of these elements.

First, Plaintiffs have no legally protected privacy right in their license plate numbers. (*See* SAC ¶¶ 409–410.) License plate numbers can be seen by everyone. Indeed, license plates are not private by law: the government *requires* them to be visible. *See* Cal. Veh. Code § 5200(a) (requiring license plates "be attached to the vehicle for which they were issued, one in the front and the other in the rear"). There is no privacy interest in the "precise entry time and locations" of license plates either (SAC ¶ 408), because Plaintiffs' license plates are not linked to Plaintiffs' identities in any way in Westfield's systems. (UF 5, 10, 13, 14, 26, 29, 30.)

Second, Plaintiffs had no reasonable expectation of privacy in the circumstances. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Here, Plaintiffs had no objectively reasonable expectation of privacy in their publicly displayed license plate numbers. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1151 (9th Cir. 2007) ("We agree that people do not have a subjective expectation of privacy in their license plates, and that even if they did, this expectation would not be one that society is prepared to recognize as reasonable."). Any time anyone in greater Los Angeles or San Diego leaves the house their license plate is seen by thousands or tens of thousands of other

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

drivers. No reasonable person would expect people to avert their eyes from such impersonal, government-mandated, publicly displayed information.

Moreover, Westfield posted its ALPR policies on the Century City and UTC websites, which were available to Plaintiffs. (UF 19, 36.) These policies clearly informed Plaintiffs how the ALPR technology is used at each shopping center, including who could have access to or use such information. This advance notice eliminates any *reasonable* expectation of privacy. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037 (N.D. Cal. 2014) (the reasonableness analysis "must take into account" "advance notice" to plaintiffs and "whether [plaintiffs] had the opportunity to consent to or reject the very thing that constitutes the invasion") (quotation marks and citation omitted); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018) (finding no reasonable expectation of privacy where "Plaintiff consented to the sharing of his geolocation data with perfect strangers (Lyft riders)").[7]

Third, nothing Westfield did "constitute[s] an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37; (Dkt. 130 at 4.) "Even disclosure of very personal information [such as social security numbers and home addresses] has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038 (citing cases). Photographing a publicly visible license plate is no invasion of privacy at all, much less a serious one. Westfield captures license plate numbers for the parking convenience of its customers. Westfield did not and does not share license plate numbers with retailers, the DMV, marketers, or unspecified law enforcement agencies.[8] (UF 15, 16, 19, 21, 32, 33, 36, 38.) Westfield does not even use the license plate data for its own internal marketing, which would still not constitute any

---

[7]  Though certainly not required, signage at Westfield Century City's parking garages made it obvious that license plate numbers were being photographed at that center. (Schillace Decl. ¶¶ 25–28.)

[8]  ALPR data is only shared with law enforcement agencies as required by law or if necessary to respond to an emergency. (*See* UF 19, 36; Schillace Decl. ¶ 18, Ex. A; Perry Decl. ¶ 13, Ex. A.)

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

egregious breach of privacy. (UF 16, 33); *see Folgelstrom*, 195 Cal. App. 4th at 992 (retailer's "obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements" is "not an egregious breach of social norms, but routine commercial behavior").

Westfield did not violate Plaintiffs' Constitutional right to privacy, or any other law.

## XI.   CONCLUSION

For these reasons, Westfield respectfully requests summary judgment on all of Plaintiffs' claims.

Respectfully submitted,

Dated: December 22, 2021

**KATTEN MUCHIN ROSENMAN LLP**
Gregory S. Korman
Meegan I. Maczek
Camille A. Brooks

By:  */s/ Gregory S. Korman*
Attorneys for Defendants Westfield Property Management LLC; and Westfield, LLC

THE WESTFIELD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT